# EXHIBIT A

**Defendant's Agency Disciplinary Action**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**
**BEFORE THE STATE BOARD OF DENTISTRY**

| | |
|---|---|
| **Commonwealth of Pennsylvania Bureau of Professional and Occupational Affairs**<br><br>**vs.**<br><br>**Blanche Durand Grube, DMD, Respondent** | **Case Nos. 18-46-02952**<br>**18-46-012074** |

## NOTICE

A disciplinary action has been filed against you. You may lose your license, certificate, registration, permit, authorization or approval to practice your profession or occupation. You may be subject to civil penalties of up to $10,000 for each violation, and the imposition of costs of investigation.

If you wish to defend against the charges in the attached Order to Show Cause or to present evidence to mitigate any penalty that may be imposed, the procedures for doing so are explained in the Order to Show Cause.

All proceedings are conducted under the Administrative Agency Law, 63 Pa.C.S. Chapter 31, and the General Rules of Administrative Practice and Procedure.

You have the right to retain an attorney. Although you may represent yourself without an attorney, you are advised to seek the help of an attorney. You also have the right to have an interpreter provided should you request one.

You are directed to respond to the charges by filing a written answer within thirty (30) days of the date on the most recent Certificate of Service associated with this Order to Show Cause. IF YOU DO NOT FILE AN ANSWER, DISCIPLINARY ACTION MAY BE TAKEN AGAINST YOU WITHOUT A HEARING. Any answer submitted in this matter must be filed with the Prothonotary for the Department of State via one of the following methods:

| **By Mail:** | **By Facsimile:** | **By E-mail:** |
|---|---|---|
| Prothonotary<br>Department of State<br>2601 N Third St<br>PO Box 2649<br>Harrisburg, PA 17105-2649 | (717) 772-1892 | ra-prothonotary@pa.gov |

You must also send a separate copy of your answer and any other pleadings or documents related to this case to the prosecuting attorney named in the Order to Show Cause.

Prothonotary Filed On:
Dec 06 2022 02:45 PM
Department of State

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**
**BEFORE THE STATE BOARD OF DENTISTRY**

| | |
|---|---|
| **Commonwealth of Pennsylvania Bureau of Professional and Occupational Affairs**<br><br>**vs.**<br><br>**Blanche Durand Grube, DMD Respondent** | **Case Nos. 18-46-02952**<br>**18-46-012074** |

**ORDER TO SHOW CAUSE**

***AND NOW***, this 6th day of December 2022, **Blanche Durand Grube, DMD** ("Respondent") is hereby **ORDERED TO SHOW CAUSE** why the State Board of Dentistry ("Board"), upon consideration of the Factual Allegations and the applicable law, should not suspend, revoke or otherwise restrict Respondent's license, impose a civil penalty, or impose the costs of investigation. This action is brought pursuant to the Dental Law, act of May 1, 1933, P.L. 216, No. 76, ("Act"), *as amended*, 63 P.S. §§ 120-130L; 63 Pa.C.S. Chapter 31 ("Chapter 31"), 63 Pa.C.S. §§ 3101-3118; and will be conducted in accordance with the Administrative Agency Law ("AAL"), 2 Pa.C.S. §§ 501-508, 701-704; Chapter 31; and the General Rules of Administrative Practice and Procedure ("GRAPP"), 1 Pa. Code §§ 31.1-35.251.

**IT IS FURTHER ORDERED** that Respondent file an Answer to this Order to Show Cause in writing within thirty (30) days of the date on the most recent Certificate of Service associated with this Order to Show Cause, in accordance with Rule 35.37 of GRAPP, 1 Pa. Code § 35.37.

DOS Prothonotary:
Dec 06 2022

## FACTUAL ALLEGATIONS

1. Respondent holds the following license to practice as a dentist in the Commonwealth of Pennsylvania: license no. DS023621L.

2. Respondent's Dental license was originally issued on August 26, 1983 and is current through March 31, 2023.

3. Respondent also holds the following Anesthesia Permit- Restricted I in the Commonwealth of Pennsylvania: license no. DP023621A.

4. Respondent's Anesthesia Permit – Restricted I was originally issued on November 4, 1999 and is current through March 31, 2023.

5. Absent further action by the Board, the Respondent's licenses may be renewed, reactivated or reinstated upon the filing of the appropriate documentation and payment of the necessary fees.

6. At all times pertinent to the factual allegations, Respondent held a license to practice as a dentist in the Commonwealth of Pennsylvania.

7. Respondent's last known address on file with the Board is: 810 Green Ridge Street, Scranton, PA 18509.

8. The Commonwealth has incurred **FORTY FIVE THOUSAND SEVEN HUNDRED TWENTY SEVEN DOLLARS AND SIXTY CENTS ($45,727.60)** in costs during the investigation of this matter.

9. Respondent entered into a dentist-patient relationship with each of the following individuals:[1] Patients one (1) through forty- two (42).

---

[1] The Commonwealth has prepared an identity key to the Order to Show Cause which will be served on Respondent and provides the name of each individual identified as a patient.

[illegible] Dec 06 2022

10. Respondent rendered dental services and/ or treatment to patients one (1) through forty-two (42) in the Commonwealth of Pennsylvania.

**COUNT ONE – UNPROFESSIONAL CONDUCT – PATIENT 42**

11. Paragraphs 1 through 10 are incorporated by reference.

**PATIENT PRESENTATION:**

12. On or about December 3, 2015 Respondent commenced a dentist-patient relationship with Patient 42.

13. Patient 42 was a 51-year-old female who reported a history of the following:

(a) Anemia,

(b) Abnormal EKG,

(c) Not being under the care of a physician,

(d) Not aware whether she had any allergies,

(e) Blurred or tunnel vision,

(f) Bleeding Gums.

**TREATMENT AT ISSUE:**

14. Respondent departed from, or failed to conform to, the standards of acceptable and prevailing dental practice in treating Patient 42 as referenced below.

15. Respondent extracted endodontically treated teeth # 13 and 19.

16. No clinical documentation existed justifying the need for extracting teeth # 13 and 19.

17. Respondent removed porcelain fused to metal (PFM) crowns on teeth # 2, 15, 18, and 19 and replaced with non-metallic crowns.

18. No clinical documentation existed justifying the removal of the PFM crowns on teeth # 2, 15, 18, and 19.

19. Implants at the areas of teeth # 5, 15, 18, and 19 were removed.

20. No clinical documentation existed justifying the removal of the implants at teeth # 5, 15, 18, and 19.

21. Implants previously placed in the area teeth # 29, 30, and 31 were removed without clinical justification.

22. During the removal of implants in the area of teeth # 29, 30, and 31, the mental nerve was damaged, resulting in paresthesia (numbness or tingling) of the lower left lip.

23. The proximity of the mental nerve to the aforementioned implants was evident radiographically.

24. Removal of patient 42's implants, if indicated, should have been referred to an oral and maxillofacial surgeon to lessen the likelihood of an adverse outcome.

25. Respondent did not refer the patient to an oral and maxillofacial surgeon to manage the paresthesia, once suffered.

26. Paresthesia can sometimes be reversed if addressed promptly.

27. In the absence of a referral to an oral and maxillofacial surgeon, the paresthesia suffered by Patient 42 is likely permanent.

28. Respondent performed a procedure upon Patient 42 at teeth # 1, 16, 17, 20, and 32 that Respondent refers to as "Cavitation Surgery," which involves one or more of the following invasive or surgical procedures:

(a) Elevation of a flap.

(b) Penetration of cortical bone.

(c) Removal of tissue that Respondent refers to as "pathological tissue."

29. Cavitation Surgery is not:

(a) A procedure recognized or identified in the professions of dentistry or medicine by this specific terminology or by any other synonymous terms.

(b) Of any therapeutic benefit for any condition or disease.

30. The procedures offered to Patient 42 by Respondent were clinically unnecessary, invasive, and offered no dental benefit.

31. Based upon the foregoing Factual Allegations, the Board is authorized to suspend or revoke, or otherwise restrict Respondent's license under Section 4.1(a) of the Act, 63 P.S. § 123.1; or impose a civil penalty under Section 10.1 of the Act, 63 P.S. § 129.1, or 63 Pa.C.S. § 3108(b)(4); and/or impose the costs of investigation under 63 Pa.C.S. § 3108(b)(5), because Respondent violated the Act at Section 4.1(a)(8), 63 P.S. § 123.1(a)(8), by engaging in unprofessional conduct, including departure from, or failure to conform to, the standards of acceptable and prevailing dental practice.

**COUNT TWO – UNPROFESSIONAL CONDUCT – PATIENT 41**

32. Paragraphs 1 through 31 are incorporated by reference.

**PATIENT PRESENTATION:**

33. On or about May 12, 2017, Respondent commenced a dentist-patient relationship with Patient 41.

34. Patient 41 was a 253 pound 52 year- old male who reported a history of the following:

(a) Skin cancer,

(b) Multiple traumatic injuries,

(c) Diabetes treated by metformin and glipizide, and

(d) Memory loss.

**TREATMENT AT ISSUE:**

35. Respondent departed from, or failed to conform to, the standards of acceptable and prevailing dental practice in treating Patient 41 as stated below.

36. Respondent removed a PFM crown on tooth # 8 and replaced it with a non-metallic crown.

37. There was no clinical documentation justifying the removal of the PFM crown on tooth # 8.

38. Respondent extracted previously-endodontically treated tooth # 9.

39. There was no clinical documentation justifying the extraction of tooth # 9.

40. Respondent removed dental amalgam on teeth # 2, 3, 19, 31, 32 and replaced with non-amalgam restorations.

41. Respondent noted the presence of decay in the teeth where amalgam was removed.

42. There is no radiographic evidence of decay at teeth # 2, 3, 19, 31, 32.

43. The removal of amalgam was unnecessary.

44. The removal of amalgam was not in the best interests of Patient 41.

45. Respondent performed a procedure upon Patient 41 at teeth # 16, 17, and 18 that Respondent refers to as "Cavitation Surgery," which involves one or more of the following invasive or surgical procedures:

(a) Elevation of a flap.

(b) Penetration of cortical bone.

(c) Removal of tissue that Respondent refers to as "pathological tissue."

46. Cavitation Surgery is not:

(a) A procedure recognized or identified in the professions of dentistry or medicine by this specific terminology or by any other synonymous terms.

(b) Of any therapeutic benefit for any condition or disease.

47. On July 11, 2017, Patient 41 was sedated prior to treatment.

48. Respondent noted that the patient was "not a great breather" and "had to increase $0_2$ to 3 liters".

49. On July 25, 2017, Patient 41 was administered eight and one-half (8.5) carpules of carbocaine, a local anesthetic (percentage not specified).

50. Eight and one-half (8.5) carpules of carbocaine for Patient 41 exceeds the recommended dose for local anesthesia for a single sitting.

51. On July 25, 2017, Respondent administered the first dose of anesthesia to Patient 41 at 10:20 A.M. and treatment was not finished until 3:55 P.M. that same day.

52. This extended treatment duration placed Patient 41 at risk of venous stasis.

53. With a history of excess weight, diabetes, and difficulty breathing, Patient 41 was a poor candidate for in-office intravenous sedation.

54. With a history of excess weight, diabetes, and difficulty breathing, Patient 41 was at higher risk for mortality.

55. Patient 41 was not adequately monitored while under sedation for:

(a) Continuous respiration, and

(b) Proper heart function by Electrocardiogram (ECG or EKG).

56. Based upon the foregoing Factual Allegations, the Board is authorized to suspend or revoke, or otherwise restrict Respondent's license under Section 4.1(a) of the Act, 63 P.S. § 123.1; or impose a civil penalty under Section 10.1 of the Act, 63 P.S. § 129.1, or 63 Pa.C.S. § 3108(b)(4);

and/or impose the costs of investigation under 63 Pa.C.S. § 3108(b)(5), because Respondent violated the Act at Section 4.1(a)(8), 63 P.S. § 123.1(a)(8), by engaging in unprofessional conduct, including departure from, or failure to conform to, the standards of acceptable and prevailing dental practice.

## COUNT THREE – UNPROFESSIONAL CONDUCT – PATIENT 40

57. Paragraphs 1 through 56 are incorporated by reference.

### PATIENT PRESENTATION:

58. On or about February 6, 2017, Respondent commenced a dentist-patient relationship with Patient 40.

59. Patient 40 was a 56 year-old male who reported a history of the following:

(a) Last exam by a physician occurring over 5 years prior his visit with Respondent,

(b) "Unexplained lump on chest, had cancer in chest 5 years ago…did alternative healing and cured himself. Still has lump. A lot smaller."

(c) Small spots of skin cancer,

(d) "Feels Brain Fog", and

(e) Occasional chest pains and occasional tachycardia.

### TREATMENT AT ISSUE:

60. Respondent departed from, or failed to conform to, the standards of acceptable and prevailing dental practice in treating Patient 40 as stated below.

61. Extensive serologic testing was performed, and Respondent marked abnormalities on the testing results.

62. No referral to a physician was made pursuant to Respondent's assessment of the serologic results.

63. Hair toxicity testing was conducted on Patient 40.

64. Hair toxicity testing is unrelated to the practice of dentistry, and thus constitutes an unnecessary procedure.

65. Mercury vapor testing was conducted on Patient 40.

66. Mercury vapor testing is unrelated to the practice of dentistry, and thus constitutes an unnecessary procedure.

67. Respondent removed dental amalgam on teeth # 3, 4, 5, 12, 14, 18, 19, 30, and 31 and replaced with non-amalgam restorations and an onlay in the area of tooth # 30.

68. Respondent noted the presence of decay in the teeth where amalgam was removed.

69. There is no radiographic evidence of decay at teeth # 3, 4, 5, 12, 14, 18, 19, 30, and 31.

70. The removal of amalgam was not necessary.

71. The removal of amalgam was not in the best interests of Patient 40.

72. Respondent performed a procedure upon Patient 40 at teeth #'s 1, 16, 17 and 32 that Respondent refers to as "Cavitation Surgery," which involves one or more of the following invasive or surgical procedures:

(a) Elevation of a flap.

(b) Penetration of cortical bone.

(c) Removal of tissue that Respondent refers to as "pathological tissue."

73. Cavitation Surgery is not:

(a) A procedure recognized or identified in the professions of dentistry or medicine by this specific terminology or by any other synonymous terms.

(b) Of any therapeutic benefit for any condition or disease.

74. Respondent excised a radiopacity in the area of tooth # 32, but did not submit a sample of the excised tissue for pathologic examination or refer the Patient to an Oral and Maxillofacial Surgeon.

75. On February 20, 2017, Patient 40 was administered nine (9) carpules of carbocaine (percentage not specified), a local anesthetic, and 9mg of Midazolam.

76. Respondent administered local anesthetic to Patient 40 in an amount that exceeded the total recommended dosage to be used in a single sitting.

77. On February 20, 2017, Respondent administered the first dose of versed to Patient 40 at approximately 10:00 A.M. and treatment was not finished until 5:10 P.M. that same day.

78. This extended treatment duration placed Patient 40 at risk of venous stasis.

79. Patient 40 was not adequately monitored while under sedation for:

(a) Continuous respiration, and

(b) Proper Heart function by Electrocardiogram (ECG or EKG).

80. Based upon the foregoing Factual Allegations, the Board is authorized to suspend or revoke, or otherwise restrict Respondent's license under Section 4.1(a) of the Act, 63 P.S. § 123.1; or impose a civil penalty under Section 10.1 of the Act, 63 P.S. § 129.1, or 63 Pa.C.S. § 3108(b)(4); and/or impose the costs of investigation under 63 Pa.C.S. § 3108(b)(5), because Respondent violated the Act at Section 4.1(a)(8), 63 P.S. § 123.1(a)(8), by engaging in unprofessional conduct, including departure from, or failure to conform to, the standards of acceptable and prevailing dental practice.

**COUNT FOUR – UNPROFESSIONAL CONDUCT – PATIENT 28**

81. Paragraphs 1 through 80 are incorporated by reference.

**PATIENT PRESENTATION:**

82. On or about May 13, 2017, Respondent commenced a dentist-patient relationship with Patient 28.

83. Patient 28 was a 57 year-old female who reported a history of the following:

(a) Chronic Lyme disease,

(b) Daily regimen of IV Clindamycin for the management of Lyme Disease,

(c) "Carotid issues",

(d) Chest Pain,

(e) Irregular heartbeat, "off/ on",

(f) Abnormal EKG (Electrocardiogram) results, and

(g) Endocarditis (inflammation of the inner lining of the heart's chambers and valves).

**TREATMENT AT ISSUE:**

84. Respondent departed from, or failed to conform to, the standards of acceptable and prevailing dental practice in treating Patient 28 as stated below.

85. Respondent removed a four-unit bridge in the area of teeth # 2-5 without clinical justification.

86. Removal of the four-unit bridge and the cavitation procedures exposed Patient 28 to the risks of bleeding, post-operative infection, and pain.

87. With Patient 28's history of endocarditis, administration of additional antibiotic prophylaxis prior to treatment was required to mitigate the risk of recurrent endocarditis, in the absence of a cardiac consult stating that additional antibiotic prophylaxis was not required.

88. Respondent failed to give additional antibiotic prophylaxis prior to treatment on or about May 24, 2017.

89. Failure to give additional antibiotic prophylaxis prior to treatment put Patient 28 at risk of a life-threatening complication (recurrent endocarditis).

90. On May 24, 2017, Patient 28 was administered seven (7) carpules of carbocaine, a local anesthetic.

91. The IV sedation record for May 24, 2017 lists Patient 28's weight at 106 pounds.

92. Seven (7) carpules of carbocaine for Patient 28, at a weight of 106 pounds, exceeds the recommended dose for local anesthesia for a single sitting.

93. Patient 28 was not adequately monitored while under sedation for:

(a) Continuous respiration, and

(b) Proper Heart function by Electrocardiogram (ECG or EKG).

94. Monitoring through Electrocardiogram was required for Patient 28 due to Patient 28's history of irregular heartbeat and endocarditis.

95. Based upon the foregoing Factual Allegations, the Board is authorized to suspend or revoke, or otherwise restrict Respondent's license under Section 4.1(a) of the Act, 63 P.S. § 123.1; or impose a civil penalty under Section 10.1 of the Act, 63 P.S. § 129.1, or 63 Pa.C.S. § 3108(b)(4); and/or impose the costs of investigation under 63 Pa.C.S. § 3108(b)(5), because Respondent violated the Act at Section 4.1(a)(8), 63 P.S. § 123.1(a)(8), by engaging in unprofessional conduct, including departure from, or failure to conform to, the standards of acceptable and prevailing dental practice.

**COUNT FIVE – UNPROFESSIONAL CONDUCT – PATIENT 20**

96. Paragraphs 1 through 95 are incorporated by reference.

**PATIENT PRESENTATION:**

97. On April 26, 2017, Respondent commenced a dentist-patient relationship with Patient 20.

98. Patient 20 was an adult 58 year-old male who reported a history of the following:

(a) the patient was not currently under the care of a physician,

(b) a diagnosis of head and neck cancer in December 2012,

(c) holistic cancer treatment with no chemotherapy or radiation,

(d) sore or enlarged lymph nodes,

(e) a height and weight of 6 feet and 130 pounds, equating to a body mass index of 17.6,

(f) 7 (seven) to 9 (nine) previous root canals,

(g) difficulty speaking and swallowing, and

(h) Difficulty breathing through the nose.

99. On examination, Respondent observed the following:

(a) Enlargement of the left tonsillar area,

(b) A lesion on the left ventral border of the tongue,

(c) Bilateral cervical lymphadenopathy, and

(d) Enlargement of the left submandibular gland region.

100. Patient 20's clinical presentation was consistent with advanced head and neck cancer.

**TREATMENT AT ISSUE:**

101. Respondent departed from, or failed to conform to, the standards of acceptable and prevailing dental practice in treating Patient 20 as stated below.

102. Respondent performed a procedure upon Patient 20 at teeth # 1-4, 13-16, 17, 20, 29-30, and 32 that Respondent refers to as "Cavitation Surgery," which involves one or more of the following invasive or surgical procedures:

(a) Elevation of a flap.

(b) Penetration of cortical bone.

(c) Removal of tissue that Respondent refers to as "pathological tissue."

103. Cavitation Surgery is not:

(a) A procedure recognized or identified in the professions of dentistry or medicine by this specific terminology or by any other synonymous terms.

(b) Of any therapeutic benefit for any condition or disease

104. Respondent ordered and obtained multiple tests for health conditions which are unrelated to the practice of dentistry:

(a) DNA

(b) Hematology.

105. Respondent extracted the following teeth: 2, 3, 14, 18, and 31.

106. The extractions of teeth # 2, 3, 14, 18, and 31 were not clinically justified.

107. Respondent removed Crowns on teeth # 5 and 12.

108. The removal of crowns on teeth # 5 and 12 were not clinically justified.

109. Pus was drained from Patient 20's submandibular glands on May 8, 2017, and on May 10, 2017.

110. Respondent administered intravenous Vitamin C to the patient.

111. Vitamin C is not FDA approved as a cancer therapy.

112. Serious side effects from Vitamin C administration have been reported.

113. Patient 20 died on June 14, 2017, approximately one month after his last appointment with Respondent.

114. Consultation with a physician should have been obtained prior to Respondent's treatment of patient 20.

115. The treatment rendered to Patient 20 by Respondent was elective dental treatment.

116. Patient 20 was not a candidate for elective dental treatment, given the state of his health.

117. Respondent's treatment of Patient 20 risked infection, bleeding, and tumor seeding/ spreading.

118. Given Patient 20's health, Respondent's treatment of Patient 20 risked compromising Patient 20's remaining quality of life.

119. Based upon the foregoing Factual Allegations, the Board is authorized to suspend or revoke, or otherwise restrict Respondent's license under Section 4.1(a) of the Act, 63 P.S. § 123.1; or impose a civil penalty under Section 10.1 of the Act, 63 P.S. § 129.1, or 63 Pa.C.S. § 3108(b)(4); and/or impose the costs of investigation under 63 Pa.C.S. § 3108(b)(5), because Respondent violated the Act at Section 4.1(a)(8), 63 P.S. § 123.1(a)(8), by engaging in unprofessional conduct, including departure from, or failure to conform to, the standards of acceptable and prevailing dental practice.

**COUNT SIX – UNPROFESSIONAL CONDUCT – UNNECESSARY LAB TESTING**

120. Paragraphs 1 through 119 are incorporated by reference.

121. In many patients, including, but not limited to Patients 2, 3, 7, 19, 25, 28, 37, 40, and 41, Respondent ordered extensive blood- based laboratory testing.

122. Respondent's ordering blood- based laboratory testing is beyond the scope of dental practice in Pennsylvania.

123. Respondent's ordering blood-based laboratory testing was performed to diagnose and/ or treat medical conditions or ailments.

124. As a Dentist, Respondent is not qualified to diagnose and/ or treat medical conditions or ailments.

125. Based upon the foregoing Factual Allegations, the Board is authorized to suspend or revoke, or otherwise restrict Respondent's license under Section 4.1(a) of the Act, 63 P.S. § 123.1; or impose a civil penalty under Section 10.1 of the Act, 63 P.S. § 129.1, or 63 Pa.C.S. § 3108(b)(4); and/or impose the costs of investigation under 63 Pa.C.S. § 3108(b)(5), because Respondent violated the Act at Section 4.1(a)(8), 63 P.S. § 123.1(a)(8), by engaging in unprofessional conduct, including departure from, or failure to conform to, the standards of acceptable and prevailing dental practice.

**COUNT SEVEN – UNPROFESSIONAL CONDUCT – FAILURE TO MAKE APPROPRIATE MEDICAL REFERRALS**

126. Paragraphs 1 through 125 are incorporated by reference.

127. Respondent noted abnormalities or concerns in the blood testing results for patients 2, 3, 7, 19, 25, 28, 37, 40, and 41.

128. Respondent did not refer Patients 2, 3, 7, 19, 25, 28, 37, 40, and 41 to medical professionals for medical diagnosis and/or treatment.

129. The standard of care requires that Respondent refer patients 2, 3, 7, 19, 25, 28, 37, 40, and 41 to medical professionals upon noting abnormalities in their blood testing results.

130. Based upon the foregoing Factual Allegations, the Board is authorized to suspend or revoke, or otherwise restrict Respondent's license under Section 4.1(a) of the Act, 63 P.S. § 123.1; or impose a civil penalty under Section 10.1 of the Act, 63 P.S. § 129.1, or 63 Pa.C.S. § 3108(b)(4); and/or impose the costs of investigation under 63 Pa.C.S. § 3108(b)(5), because Respondent violated the Act at Section 4.1(a)(8), 63 P.S. § 123.1(a)(8), by engaging in unprofessional conduct, including departure from, or failure to conform to, the standards of acceptable and prevailing dental practice.

**PENALTIES**

If the Board finds that the Factual Allegations are true and correct, and determines that it has the authority to suspend or revoke the Respondent's license, the Board may, in its discretion, impose one or more of the following penalties:

- The revocation, suspension or other restriction of any licenses, certifications, registrations, permits or other authorizations to practice a profession held by Respondent in the Commonwealth of Pennsylvania, or the imposition of any other disciplinary or corrective action that the Act authorizes the Board to impose.
- The imposition of a civil penalty of up to ten thousand dollars ($10,000.00) for each and every violation of the Act. Where criminal proceedings are a basis for a violation of the Act, each criminal count for which the Respondent was convicted may be considered a separate violation of the Act.

- The imposition, as part of any disciplinary sanction, of the costs of investigation underlying that disciplinary action, in the amount of **FORTY FIVE THOUSAND SEVEN HUNDRED TWENTY SEVEN DOLLARS AND SIXTY CENTS ($45,727.60).**

**PROCEDURES**

All proceedings are conducted in accordance with the AAL, Chapter 31, and the GRAPP. **RESPONDENT IS HEREBY ORDERED TO FILE A WRITTEN ANSWER TO THIS ORDER TO SHOW CAUSE WITHIN THIRTY (30) DAYS OF THE DATE ON THE MOST RECENT CERTIFICATE OF SERVICE ASSOCIATED WITH THIS ORDER TO SHOW CAUSE.** The Answer shall specifically admit or deny each of the Factual Allegations made herein, and shall set forth the facts and state concisely the matter of law upon which Respondent relies. If Respondent fails to file an Answer within the time allowed herein, the Factual Allegations may be deemed admitted, and the Board will issue an Order which may impose penalties as set forth above.

If Respondent desires a formal administrative hearing, at which Respondent may defend against the allegations in the Order to Show Cause or to present evidence in mitigation of any penalty which may be imposed upon Respondent, a written request for hearing must be filed within thirty (30) days of the date on the most recent Certificate of Service associated with this Order to Show Cause. **IF RESPONDENT FAILS TO FILE A WRITTEN REQUEST FOR HEARING WITHIN THIRTY (30) DAYS OF THE DATE ON THE MOST RECENT CERTIFICATE OF SERVICE ASSOCIATED WITH THIS ORDER TO SHOW CAUSE, RESPONDENT WILL BE DEEMED TO HAVE WAIVED HIS OR HER RIGHT TO A HEARING AND FINAL JUDGMENT MAY BE ENTERED WITHOUT A HEARING.**

If a hearing is scheduled, Respondent will be notified of the specific time and place of the hearing. The hearing will be held before the Board or its duly designated Presiding Officer, in accordance with Rule 35.185 of the GRAPP, 1 Pa. Code § 35.185. If Respondent is an individual, Respondent may appear and testify on Respondent's own behalf. If Respondent is not an individual, Rule 31.21 of the GRAPP, 1 Pa. Code § 31.21, requires Respondent to be represented by an attorney at law during adversarial proceedings unless permitted by the Presiding Officer in a specific case. Respondent may offer testimony or other evidence on Respondent's behalf, and confront and cross-examine the Commonwealth's witnesses. If Respondent is a partnership, corporation, trust, or association, a member of the partnership or officer of the corporation, trust, or association may testify on behalf of the partnership, corporation, trust or association.

Answers, requests for hearings, preliminary motions, protests, petitions to intervene, or any other pleading must be filed with the Prothonotary for the Department of State via one of the following methods:

**By Mail:**
Prothonotary
Department of State
2601 N Third St
PO Box 2649
Harrisburg, PA 17105-2649

**By Facsimile:**
(717)772-1892

**By E-mail:**
ra-prothonotary@pa.gov

Also, you must send or e-mail a separate copy of any documents submitted in this matter to the prosecuting attorney named below at:

**By Mail:**
Gregory S. Liero
Prosecuting Attorney
Commonwealth of Pennsylvania
Department of State
P.O. Box 69521
Harrisburg, PA 17106-9521

**By E-mail:**
grliero@pa.gov

Notices and petitions to intervene must be filed within thirty (30) days of the date on the most recent Certificate of Service associated with this Order to Show Cause, unless in extraordinary circumstances for good cause shown, a later filing is authorized by the agency.

**BY ORDER:**
**DEPARTMENT OF STATE**

*/s/ Gregory S. Liero*
Gregory S. Liero
Prosecuting Attorney
Commonwealth of Pennsylvania
Department of State
P.O. Box 69521
Harrisburg, PA 17106-9521
(717) 783-7200
grliero@pa.gov

DATE: December 6, 2022

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**
**BEFORE THE STATE BOARD OF DENTISTRY**

| | |
|---|---|
| **Commonwealth of Pennsylvania Bureau of Professional and Occupational Affairs** | |
| **vs.** | **Case Nos. 18-46-02952 18-46-012074** |
| **Blanche Durand Grube, DMD Respondent** | |

**CERTIFICATE OF SERVICE**

I, Gregory S. Liero, hereby certify that I have this 7th day of December, 2022 caused a true and correct copy of the foregoing Notice and Order to Show Cause to be served upon all parties of record in this proceeding in accordance with the requirements of Rule 33.31 of the General Rules of Administrative Practice and Procedure, 1 Pa. Code § 33.31 (relating to service by the agency).

**CERTIFIED MAIL, ELECTRONIC RETURN RECEIPT REQUESTED AND FIRST-CLASS MAIL, POSTAGE PREPAID:**

Blanche Durand Grube, DMD
810 Green Ridge Street
Scranton, PA 18509
9171 9690 0935 0254 9607 51

*/s/ Gregory S. Liero*
Gregory S. Liero
Prosecuting Attorney
Commonwealth of Pennsylvania
Department of State
P.O. Box 69521
Harrisburg, PA 17106-9521
(717) 783-7200
grliero@pa.gov

DOS Prothonotary

# EXHIBIT B

**1st Private Administrative Procedure Notary Presentment**

USPO Registered Mail No. RB 609 066 147 US

Reverend Juan-Jose': Brookins
Trust Protector
for the Restorative Health Ministries Trust and
the Ministerial Indigenous Nations Trust (M.I.N.T.)
c/o 46 Gramatan Avenue, #19
Mount Vernon, New York State near [10550] Non-Domestic
(203) 449-8391 / (203) 727-5758
jawambi@yahoo.com

January 31, 2023

**PRIVATE ADMINISTRATIVE TRUSTEE PRESENTMENT**

**OF A PRIVATE BILL OF DISCOVERY**

**By Affidavit of Reverend Juan-Jose': Brookins**

**NOTICE TO AGENT IS NOTICE TO PRINCIPAL
NOTICE TO PRINCIPAL IS NOTICE TO AGENT
AND THEIR SUCCESSORS AND ASSIGNS
WITHOUT RECOURSE**

TO: Gregory S Leiro
Prosecuting Attorney
Commonwealth of Pennsylvania Department of State
P.O. Box 69521
Harrisburg, PA 17106-9521
(717)783-7200
grliero@pa.gov

RE: ADMINISTRATIVE AGENCY DISCIPLINARY ACTION -
Affiant Trustee's Response to Charging Documents Nos. 18-46-02952 & 18-46-012074.

Jurat

| | |
|---|---|
| Connecticut State | } |
| | }Scilicet: |
| Fairfield County | } |

Greetings Mr. Gregory S. Leiro,

I am the Trust Protector for a Consortium of private Ecclesiastic Foreign Express Trusts and an Indigenous Nation's Ministerial Trust (hereinafter, the "Trust Consortium"), of which two are named in the above letterhead caption of this Presentment for a Private Bill of Discovery giving Notice to your Agency and you that Dr. Blanche Durand Grube (hereinafter, "Dr. Grube") has been actively engaged in a private Ecclesiastic Indigenous Trust Contract with the Trust

Consortium's Institutional Review Board (also known as an "IRB") that is federally recognized and operating under the Common Law.

It has come to my attention, as well as the attention of the Board of Trustees for the Consortium of Trusts named above, that Dr. Grube is being investigated by your Agency for issues of practice protocols that are purportedly regulated under your Agency. As the Trust Protector of the Trust Consortium, it is my responsibility to address matters concerning the Trust's affairs and the research activities of its members in a variety of forums because that research activity is the private intellectual property of the Trust Consortium.

Pursuant to the Federal Rules of Civil Procedure (F.R.C.P.) under Rule 17(E), I am authorized to represent the interests of an Express Trust in my individual capacity without the assistance of an Attorney. That is why I am lawfully authorized to send you and your Agency this Presentment for a Bill of Discovery.

I am in possession of a copy of your correspondence that you sent to Dr. Grube dated December 6, 2022, and I have passed a copy of this correspondence on to our Board of Trustees for the Trust's Consortium and the Trustee responsible for keeping record of the research projects that we are actively engaged in because our record keeping Trustee oversees all research data we perform which is covered by provisions of intellectual property law, that as a matter of law, is proprietary and private, and includes the private information of the participants who volunteer in the proprietary intellectual research we perform. To ensure that we are compliant with our responsibilities and obligations to each participant's privacy and the law under which we are beholden as a private Indigenous and Ecclesiastic Foreign Express Trust Consortium we must be very circumspect about why and with whom we disclose such private proprietary information.

With that being stated for the record of this introductory communication to your Agency concerning the actions and conduct of Dr. Grube's practices, I am hereby giving you Notice that it is the Trust Consortium named herein that are responsible for the research actions of implementing and overseeing the study relating to our private intellectual property and the compiling of informational data and records that Dr. Grube accumulates with regard to the practices your Agency is investigating which is kept by our record keeper; Not Dr. Grube.

We fully intend to cooperate with your requests insofar as such requests do not infringe upon or undermine the integrity of the Trust Consortium's proprietary private intellectual property rights and individual privacy rights of all parties related to your Agency's investigation and the Trustees are determined to honor and adhere to the law regarding private rights, intellectual property and those laws most applicable to an Indigenous and Ecclesiastical Trusts viability, reliability and preservation as an institution for the health and spiritual well-being of our members and the mechanisms we use to provide them what is needed. If you and your Agency are not readily aware, just so you know, our Trust Consortium already has an oversight organization that is federally recognized and known as the Institutional Review Board (I.R.B.). The I.R.B. is responsible for safeguarding all aspects of research that members of our Trusts are engaged in and the authorized Overseers of the I.R.B. hereby respectfully request that certain information be provided by you and your Agency in Affidavit form, notarized and provided to us under penalty of perjury prior to any action being taken by our document custodians to remit

what is being requested by Dr. Grube from you and your Agency. This will ensure that the privacy rights of all members, individually and collectively, are being respected and protected, because the nature of the subject matter of your inquiry is PRIVATE and PROPRIETARY, particularly when it relates to sensitive information relating to "patients" who allegedly received exemption letters.

Our Trusts are duly established as part of an international humanitarian I.R.B. whose purpose is focused upon establishing and maintaining a health care medical research Mission/Ministry that is governed by Ecclesiastic and Indigenous Nations Private Foreign Express Trusts, Treaty, and intellectual property law. The individual and collective relationship between the members of the Trusts, and the Trusts themselves, is protected by the First, Fifth and Fourteenth Amendments and Article I, Section 10 of the Organic Constitution for these United States of America. Our Trusts have been divinely manifested as a Consortium by the Board of Trustees for the sole purpose of working in conjunction to safeguard and proliferate the interests of our members that are descendants of Indigenous Nations together with faith-based enthusiasts who share common goals with us to do God's Will as we best understand it to be.

Unquestionably, we must abide by our dedication to our rigorous guidelines that are inculcated within our Trust's Indenture Charter, By-Laws and Trust Contracts with its Trustees and Consortium members in order to avoid violation of our obligations to our Consortium's Mission/Ministry and Treaty with Indigenous Nations, as well as with intellectual property law and privacy rights. This is necessary to maintain the solvency and integrity of a private contractual relationship of the Trusts named herein with our members that is covered under the unalienable right to contract of the United States Constitution.

## BILL OF DISCOVERY INQUIRIES, INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

For the record, and in the spirit of honesty and cooperation, Dr. Grube is a duly ordained Pastor/Minister. As such, all research activity, interactions and relationships in which she is engaged to do our research, is performed and conducted in her ministerial capacity as a servant of God. This includes, but is not limited to, and interactions which have been documented for recordation purposes. These ministerial interactions with "patients" as you call them, are private, privileged, and confidential. And, under the canons of our religious customs and beliefs, are protected by law as solemn and holy. If you or your Agency has any irrefutable evidence to the contrary, you and your Agency are hereby directed to produce such proof in a sworn notarized Affidavit under penalty of perjury.

For the record, the so-called "patients" who have contracted by their own free will to participate in the intellectual property research we conduct through our Trust Consortium that Dr. Grube is privy to as a member in good standing are also covered under the constitutional right to contract and the privacy rights such contract provides a Party to it by law. The so-called "patients" Dr. Grube conducts intellectual property research with have entered into a private Ecclesiastic spiritual scientific research contract for which they have signed a non-disclosure disclaimer agreement to participate in by their free will consent for the betterment of all humanity. These free will participants that have contracted privately with our Trust's Consortium for the research that Dr. Grube does under the auspices of the federally recognized I.R.B. are not

referred to as "patients" in our epistemology as your investigative request letter dated December 6, 2022, identifies them. They are not "patients" to us. They are free will private intellectual property research participants.

Please indicate in your response Affidavit to this Presentment under penalty of perjury that your Agency's inquiries are NOT being made from a point of law that conflicts or infringes upon the private rights and intellectual property rights of an Indigenous nation and Ecclesiastic Foreign Express Trust. Because there is a private Indigenous nation and Ecclesiastic Foreign Express Trust's involvement and contractual involvement protections in the pursuit of your Agency's inquiries it is imperative that any disclosure of any aspect of ongoing research is qualifiedly recognized as unavailable due to the strict provisions of law regarding the subject matter of such pursuits should there be a conflict of laws with regard to such inquiry. The unlawful disclosure or dissemination of any document related to such intellectual property research will expose all parties to such violations of privacy and intellectual property susceptible to liability in some form or fashion.

**Please also indicate in your Affidavit that there is in fact a countervailing jurisdiction and purview based upon law to an Indigenous Nation and Ecclesiastic Foreign Express Trust, as well as Treaty Law, private rights and intellectual property rights and the reason why you believe such jurisdiction exists and why.**

We are bound by the same laws and restrictions of a contract which protects individuals, Trusts and Indigenous Nation's rights. These contractual arrangements may not be violated by Third-Party interveners under any circumstances. Furthermore, under commercial and federal guidelines, research is a process, which is intellectually protected. As there is a contractual Trust involvement between Dr. Grube and the research participants as well, which accords privacy rights protection, in addition, any disclosure of any aspect of ongoing research and its strict protections are violated by unlawful and unauthorized disclosure; and dissemination of any document related to private research will make all parties complicit in violation of federal intellectual property law, Ecclesiastic law, Common Law and Treaty law.

Again, we are bound by such restrictions just as you are, and by making such a request it must be documented for the record that **ALL** parties who are so bound thereby may be found to be in violation of the law of contract, intellectual property rights, and right to privacy; and those who are potentially bound by such restrictions should make whatever claim or request upon the private rights of a Party to said contract by way of an Affidavit under penalty of perjury.

It is therefore agreed by virtue of this response to your request, that you, as the requesting individual, and all members of the Agency requesting this information will be liable for the financial, legal and all other consequences and damages which can result from not providing the fundamental and procedural due process information to the Party being inquired of to produce private proprietary intellectual property research, and that such a claim or request to obtain lawfully protected private discovery material must be made by way of an Affidavit under penalty of perjury.

In other words, these methodologies and protocols presented by our Consortium must fall under the same research guidelines that ALL other research will fall under. Our Trust's

Consortium has the full intention to disseminate the findings of its research at the appropriate time under a definitive full disclosure due process protocol from both the one who is inquiring and the one being inquired of. Without disclosure, (for intellectually protected variables currently falling under the guidelines and framework of this research that the Institutional Research Board has no obligation to disclose), the profound consequence of sensitive intellectual property dissemination has the serious potential of causing undue invasion of privacy and unfair competition as a result of inducing such data to be disseminated in an untimely manner, as well as significant monetary damages. The governing Trustees of this research have the authority and obligation to exempt and exclude individuals who may not meet the guidelines to be included in this research, in other words, those do not meet the necessary criteria. These include intellectually protected variables which may not be disclosed at this point as a result of laws cited in this response.

## NO STATE MAY PASS A LAW IMPAIRING THE OBLIGATIONS OF A CONTRACT

This Presentment is being sent to you and your Agency to formally give Notice that we are bound by law to the respect and recognize the restrictions and distinctions of jurisdiction and purview of our obligations and duties to our covenants both public and private and we both are bound by **ALL** applicable law to adhere and uphold the same obligations to its fullest capability.

We therefore require that you make your inquiries in the form requested by this Presentment in an Affidavit under penalty of perjury detailing the fact that such inquiry is being made without conflict to the jurisdiction and purview of the private rights and intellectual property rights of an Indigenous nation and Ecclesiastic Foreign Express Trust, as well as Treaty Law, because we are both bound by the same laws and restrictions of a contract which protects individuals, Trusts, Indigenous nations and private rights.

The Trust's Consortium also requests to know what the reason is behind this letter request, who is requesting this information (names of all individuals responsible), the authority possessed by the Agency that is superior to the contractual protections which exist under constitutional law that supersedes the Trust's contracts which have been duly established and put into place long before this inquiry; and what will be done with the confidential, privileged and protected information requested when received.

This Trust Consortium also respectfully requests the details of your relationship with private corporations or other entities that are involved in procuring financial gain as a result of using government agencies and other private entities to promote and enrich their business model which entails unauthorized procurement and use of proprietary components and methodologies of protocols concerning care/counseling approaches and applications in the dissemination of research data such as that which is found in our Trust Consortium's study.

Please provide a detailed log of correspondences with such entities. This must be done in order to prevent utilization of privileged intellectual property which has the potential to be disseminated, creating unfavorable leverage in a business relationship. Serious financial damages can ensue with all parties being responsible.

The Trust Consortium also demands that whatever information provided by Dr. Grube to your Agency before the issuance of this Presentment be sealed from public scrutiny as it is a private intellectual property research methodology. Out Trust Consortium has already experienced external attempts to interfere with our Ecclesiastical Indigenous Trust affairs from both public and private corporations who intend to impede or profit from our research. The legislative body of the United States government has created enforceable provisions of law to protect the intellectual property rights of private citizens, corporations and Trusts which includes, but is not limited to, copyright laws, trademark, service marks, patents and trade secrets, to mention a few. The governing provisions of these laws are enforceable under the Common Law and Equity jurisprudences and legislated statutory codes 15 U.S.C. § 1127 for civil law restrictions and 18 U.S.C. §§ 1831 & 1832 for criminal penalties.

Individuals, corporations and Trusts can pursue civil remedies to address violations of their intellectual property rights and where criminal sanctions are warranted sometimes as a punishment to ensure deterrence for violations of intellectual property that are construed as a felony with up to three (3) years imprisonment and $250,000.00 fine per 17 U.S.C. § 506 and 18 U.S.C. § 2319(D). Theft of trade secrets come under 18 U.S.C. §§ 1831 & 1832 and carries a criminal penalty of up to fifteen (15) years and a $5,000,000.00 fine.

Upon receipt of your notarized Affidavit under penalty of perjury answering the questions requested by us in this Private Bill of Discovery, the Trustees will be more than happy to consider the information being inquired of by you and your Agency and we will take measures to provide all information requested.

As stated above, intellectual property law protects proprietary methodologies and trade secrets. Violating intellectual property law may take place accidentally or purposefully for some specific gain or competitive intrusion. Willfully and knowingly violating intellectual property law is a federal offense and all involved have the potential to be personally and collectively prosecuted and be subject to civil and/or criminal action for violation of such.

## RELEVANT POINT OF LAW

Supreme Court Justice Brandeis stated in the case of Olmstead v. United States that "Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, the existence of the government will be imperiled if it fails to observe the laws scrupulously. Our government is the potent omnipresent teacher, for good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes the law breaker, it breeds contempt for the law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of criminal laws (or Administrative Laws) that the end justifies the means is to declare that the government may commit crimes in order to secure the conviction of a private citizen – [and] – would bring terrible retribution. The Court should set its face against that pernicious doctrine…and so should every law enforcement student, practitioner, supervisor and administrator." (Olmstead v. United States, 277 U.S. 438 [1928]).

USPO Registered Mail No. RB 609 066 147 US

## NOTICE OF VIOLATIONS OF LAW AND PRIVATE RIGHTS SHOULD YOUR AGENCY NOT ESTABLISH ITS JURISDICTIONAL AUTHORITY TO INFRINGE UPON OUR PRIVATE PROPRIETARY SPIRITUAL INTELLECTUAL PROPERTY RESEARCH

At this point in time, you and your Agency are in unauthorized possession of intellectual property. Being that the Trust Consortium is an irrevocable ecclesiastic indigenous research private entity, this also places you in a position of having taken and analyzed techniques and methodologies from a private and secured entity to use to further profit and monetary gain. Each instance of intellectual property violation can carry a fine of up to $250,000. The penalties accrue each day that you are in possession and use for commercial gain. Intellectual property includes patents, trademarks, copyrights and most importantly trade secrets. Therefore, the Trust is obligated to be in the process of proceeding with legal and administrative action to procure relief, remedy and financial damages. It is noted for the record that the research entity is in a Trust Consortium with American Indian Nations and other indigenous groups. As you are well aware there are serious jurisdictional issues also involved as a result of this. If you have irrefutable evidence to negate this fact, it must be presented in affidavit form in sworn testimony under penalty of perjury or it will stand as truth. This makes our claim against you actionable in both state and federal Court and before the United Nations human rights tribunals, world Court and all Human Rights venues internationally. You clearly indicate that you have conducted an "investigation" regarding Dr. Grube's "patients".

The investigation of an Ecclesiastic irrevocable private indigenous research Trust and its members may not be conducted by a public legislation statutory Administrative Agency such as yours without verifiable proof of jurisdiction. Our private Ecclesiastic research study is being done under Common Law jurisdiction and its contents you refer to as "records" has led to the unauthorized release of information related to individuals of different races, religions and cultures. These also include those which are shared with LGBTQ organizations whose identities must be protected under human rights law. The sanctity of our private Ecclesiastic Indigenous entity's information has been breached and violated by your agency and you. The Trust Consortium, and I, as the Trust Protector, have no other recourse but bringing an action against your Agency and you in a Court of competent jurisdiction pursuing all remedies and restitution for the intrusive violations of rights under color of law to make the Trust Consortium whole again.

You indicated in your allegations against Dr. Grube that this action is pursuant to dental law. I and the Trust Consortium unequivocally rebut any presumption that our research is applicable to statutory dental law. And I affirm under penalty of perjury that everything our Trust Consortium does is under Ecclesiastical and Common Law jurisprudences, and I have the duty and obligation to notify you that the Ecclesiastical law and private intellectual institutional research we conduct carries an absolute immunity privilege where dental law is bound by a restrictive degree of protection under the auspices of your Agency.

In your "factual" allegations part of your document, you state that the respondent has entered a dentist/patient relationship with each of the following individuals, patients 1-42 and that the commonwealth has prepared an identity key to the Order to Show-Cause which will be served on respondent and provides the name of each individual identified as "patient". The Trust

has an obligation to provide clarification and insight to this erroneous allegation. These so-called "patients" are all individuals who received ministerial care/counseling within the time frame you have indicated. You must indicate under penalty of perjury that these individuals are ***not*** private Trust Consortium members who are not part of an Ecclesiastic Indigenous Trust Contract Relationship that is engaged in private ministerial intellectual property research.

Therefore, your public Agency has unlawfully procured one of the membership rosters of a private Ecclesiastic Indigenous Foreign Express Trust entity and made them public without notice or permission from the Trust Consortium, which also has private membership protections within its body of laws contained in the Trust's Indenture. You also have indicated that the purported Respondent, Dr. Grube, also rendered dental services and/or treatment to patients 1- 42 in the Commonwealth of Pennsylvania. Your Agency should be aware of the fact that the epistemology of Spiritual/Physical Ministerial Care/Counseling cannot be construed as "dental services" because it is not the same as what conventional dental services under statutory law are and this epistemological misclassification of the methodology of Dr. Grube's implementation for our intellectual proprietary research is being made by your Agency to impose a statutory intrusion on research data compiled by our private institutional research. The relationship and methodology of our ministry for all these individuals who are pledged by contractual relationship to our Trust Consortium is privileged, confidential and protected by law.

Needless to say, you and your Agency are making erroneous assumptions and are proceeding on the basis of these assumptions. You cite numerous so-called "patients" who are individuals of a completely different category to our private Common Law Trust organization. This fact and dissimilar distinction will apply to every "count" alleged against Dr. Grube that you site. These are free will individuals receiving ministerial care/counseling in accordance with the principles of our religious beliefs and Native Indigenous customs. Nevertheless, in order to guide you more effectively in your future assessments we would like to provide you with some general insights, so you do not transgress along the same path again for other individuals. You are hereby directed to indicate the substance and nature of what you consider to be "factual" in your responses to this Bill of Discovery as it relates to the Common Law and not the statutes and codes of the State legislature. Factual means it is of a substance and nature of proven repeated and observed bases. We are proceeding to give you some factual insight and assistance, so you do not commit the same transgressions to other individuals with your misapplication of the epistemological classification of our research participants.

On count one you indicate that the respondent commenced a dentist/patient relationship with patient number 42. This individual that you refer to as the "patient" is receiving "hands-on" spiritual ministerial care/counseling. There is a marked distinction between the two. You further go on to divulge the history of this individual in the private and confidential protected relationship as anemia, abnormal EKG, not being under care physician, not aware she had entered allergies, blurred or tunnel vision and bleeding gums. A detailed health history of the individuals you cite in your document is made public on all seven "counts". Noting sensitive and potentially damaging health information on a publicly accessible document is a significant violation of the sanctity of this relationship.

If you have irrefutable evidence to indicate anything to the contrary, it must be disclosed at this point, or it will stand as truth. You further add that the respondent departed or failed to conform to the standards of acceptable and prevailing dental practice. Once again you are assuming a patient/dentist relationship in this count and every following count. You add that the Respondent extracted endodontically treated teeth #13 and 19 and removed porcelain fused to metal crowns number 2,15,18 and 19 and replaced them with non-metallic crowns and removed implants in teeth #5,18 and 19 stating that there was no justification for this. You also indicate that procedures were performed on teeth numbers 1, 16, 17, 20 and 32 along with cavitation surgery.

Please indicate what is the basis of your decision for judging the justification for non-removal or change here. It is unethical to make a multidimensional assessment known as "diagnosis" from a two-dimensional representation known as an X-ray or picture. Did you direct these individuals who are protected by privilege and confidentiality to appear before you, and if so, did they? If not, what is the basis of your assessment? You also indicate mental nerve damage resulting in paresthesia from removal of implants 29, 30 and 31. You also indicate that there is mental nerve damage as a result of this and that the individual should have been referred to an oral and maxillofacial surgeon. Also described as unnecessary by you is surgery known as "cavitation surgery". In the national journal of Maxillofacial surgery, cavitational osteo necrosis is cited as a serious and health threatening condition. These dead tissue areas are often referred to as Focal Osteoporotic Marrow Defects and early in their discovery were call neuralgia- inducing cavitational osteonecrotic legions (or NICO). This was cited as far back as 1915.

The Trust Consortium is very interested in knowing what your basis for these assessments are, in fact it is imperative to have the full identity and training of the individual/individuals who came to this conclusion without actually having seen the individuals receiving care in question. The Trust Consortium needs to know the level of training, including but not limited to their percentage of negative assessments of procedures and protocols done by those in practice. It is also important that we have these personal individual's information in order to bring action against them since they are also illegally in possession of Trust property, and the Trust Consortium has an obligation to proceed with action against you "experts".

If there is any positive financial motivational incentive related to the action and decisions of your "consultants" this must be disclosed. The Trust Consortium must know the percentage of negative decisions made by these individuals in comparison to the total amount of cases examined. The decision to extract endodontically treated tooth such as teeth #13 and 19 is one which had been arrived by mutual consent between the individual receiving care/counseling and one receiving it. The health hazards of retaining and endodontically treated teeth has been well demonstrated and documented by Dr. Weston Price over many decades ago. This has clearly been demonstrated by implanting root canal treated teeth from a test subject with disease into another disease-free subject, in seeing the formation of the same disease in the recipient. It is impossible to eradicate microorganisms in lateral canals and these become a focal point of disease later in life. There are millions of these in each tooth and these are epicenters of disease which can go to the heart, joints, liver, brain, kidneys and other organs. This creates the potential for life threatening health problems and disease.

Regarding count 2, unprofessional conduct "patient 42" please note that there is once again a private, privileged and ecclesiastically protected relationship between the individual noted as "patient 41" and Dr. Grube, who offers care/counseling. This individual's private information includes skin cancer, multiple traumatic injuries, diabetes treated by metformin and glipizide and memory loss has been brought into the public domain. Indicate under sworn testimony under penalty of perjury that this information will never be accessed or used by any other parties. This unauthorized dissemination of information applies to all other counts as well. The "treatment" at issue cited states departure from standards of acceptable and prevailing practice.

Once again, without having adequate and accurate information the possibility of a "diagnosis" is unfounded. Mentioned is the removal of a PFM crown on tooth #8 and replacement with a non-metallic crown. There is no justification cited for doing so according to your allegation. And once again, this relationship is privileged, confidential and protected and any goods and services exchanged within it is private domain. The hazards of having oxidizable, toxic metallic substances in the body are well documented. This includes damage to the immune system, brain, heart, liver, kidneys and other organs. There is ample evidence to show that these are also carcinogenic. The original metallic restorations, dangerous to an individual's health, routinely contain nickel, cadmium, barium, beryllium, titanium, indium, lead, palladium and mercury. If you have irrefutable evidence to negate this, it must be presented under oath in a sworn document. Note that there is no clinical documentation cited for justifying the extraction of tooth #9 in your report. It is impossible to make this assessment without seeing this individual. Did one of your representatives examine this individual prior to extraction? This must be noted for the record, or the validity of "diagnosis" will not be sound. Your Agency also stated that dental amalgam was removed on teeth 2,3,19,31 and 32 and replaced with non-amalgam restorations and that there is no radiographic evidence of decay on these teeth and that the removal was not in the best interest of the patient.

To clarify this issue for your personal edification it should be noted that there is clear evidence of carrying toxic material such as amalgam in the human body. This is a material that is mandated to be disposed of in biological hazard waste containers and for this reason there is no justification to place it and maintain it in the mouth or any other area. Mercury amalgams have been documented to release vapor into the body, this can be inhaled and absorbed by the lungs. Symptoms may include cough, fever, skin rashes, tremors, difficulty in muscle coordination and walking, kidney issues and memory loss. If you have irrefutable evidence to contradict this, it must be provided in a sworn notarized Affidavit.

The Environmental Protection Agency documents the health effects of exposure to mercury. These include tremors, emotional changes, insomnia, neuromuscular changes, headaches, disturbances in sensations, changes in nerve responses and poor performance on tests of mental function. In your allegation it should also be noted that one cannot determine the presence of decay from a mere X-ray. This indicates that your consultant once again is attempting to make a diagnosis from a two-dimensional representation or has seen and had a chance to examine this individual. Had this taken place, it would have been after the fact anyway. Did one of your specialists examine this individual before the removal had taken place? You also describe what is referred to as "cavitation surgery "and removal of pathological tissue

and that this procedure is not recognized or identified in the field of dentistry or medicine. Your Agency and you are directed to indicate in sworn testimony under oath that you can irrefutably decide that the tissue is not pathological based on your intrusive and unauthorized review of this individual's private and sensitive information. There are bacteria viruses' fungi and other microorganisms of pathology that potentially make any tissue of the body pathological. Was one of your representatives available during the procedure and if so, did they sample this tissue, take a biopsy and send it to a pathology lab? Also noted by you is that the "patient" is not a "good breather" and that there was a need to increase oxygen to three liters. Did you perform a pulse oximetry and spirometry test to make an assessment of this? It is documented with the degree of environmental and internal pollution that the vast majority of individuals have some form of breathing issues. This is not an impediment to administering any type of anesthetic unless deemed to be decided by the individual rendering the care/counseling. It is noted that this individual was not adequately monitored while under sedation. You are assuming that after a sedative was taken or given sedation was ongoing. Once again, this relationship is privileged, confidential and protected. You are directed by this Presentment to provide evidence under oath that you have irrefutable evidence as to lack of monitoring. Were any of your representatives there at the time of procedure? Based on the information you have collected under duress it is apparent that highly sensitive components of this individual's private information once again have been brought into the public domain. This has now compromised this individual's ability to gain employment or benefit from privileges that would be possible had it not been brought into public domain. These may be construed as a disability creating great impediments, restrictions and hardship for this individual causing emotional, psychological and financial distress.

Regarding count three it is stated that the respondent commenced a patient/dentist relationship with "patient #40". What you label as such is a relationship involving ministerial care/counseling which is privileged, confidential and protected by law. Divulging sensitive medical information of this individual having received ministerial care/counseling can have detrimental consequences in the future. You also cite a departure from the standards of acceptable clear dental practice. It must be noted that your assessment once again needs to be clarified to an individual receiving care/counseling. You cite that there's extensive serological testing performed. Any individual in Pennsylvania can order any testing and serological testing need not be performed merely for the sake of obtaining information on dental issues but can be a general panel which can even be ordered by the individual himself. A referral to a physician is not mandatory, it is an elective decision based on an individual who makes a choice.

Furthermore, hair toxicity activity testing is cited as having been conducted on "patient 40". There is no indication in our research or our Trust relationship that this is indeed related to any practice of dentistry and maybe for general benefit and assessment. Mercury vapor testing was also reported to have been conducted. It is documented that mercury is a poison and there is a volume of literature showing that. Any methodology to test whether an individual is suffering from the effects of mercury can only be of benefit to a person getting care/counseling. There is no mention of any vapor testing which is documented as being related to the practice of dentistry since Dr. Grube's relationship with the individuals that she provides ministerial care/counseling to is not within the relationship you site. The Respondent reportedly removed dental amalgams. It is cited that the respondent removed dental amalgams on teeth 3,4,5,12,14, 18,19,30 and 31 and replaced them with non-amalgam restorations and an online response to those decay there's

no radiographic evidence of decay as cited by you. It is a well-known fact again that radiology alone is not sufficient to determine whether or not there is decay. You also cite that the removal of the amalgam was not necessary. Any toxic material that can cause health issues, especially one which must be disposed of in biological hazard containers, has the potential to cause harm in the body the longer it is in the body. Referring to the cavitation surgery issue on "patient 40" once again, what is referred to as pathological tissue cannot be assessed to be a pathology by anything other than a certified laboratory.

Many areas of the body contain tissues that may be pathological, and these can be of detrimental health threatening consequence to the body. You also cite that 9 carpules of carbocaine were administered to the patient. Are you aware that there is a distinction of 1.5%, 2%. and 3% carbocaine and each has a therapeutic safety dose. Under this it is not determinable if these were full carpules or partial carpules or of what type of concentration of carbocaine was contained in these and therefore your assumption that the total recommended total dosage is not used in single sitting is excessive is based on non-factual assessment. You also note that the patient was given a dose of versed, and that the treatment continued until 5:00 PM. This is a 7-hour treatment, and it is common in the field of surgery and other anesthetic procedures to go on 8,9, 10 and even 11 hours long when necessary **and at times it is up to the discretion of the doctor to add more anesthetic in order to accomplish the procedure.**

It is our Board of Trustees opinion that your Agency and you are assuming that the so-called "patient" in question was not adequately monitored while under sedation. Dr Grube holds a fellowship in conscious sedation and has never sedated a patient or parishioner without careful monitoring. There is no evidence to indicate that this was or was not taking place and once again since all information is privileged and confidential this is of no consequence.

In count 4 this sensitive medical history of this individual is revealed and brought into a public venue. You cite that the respondent departed from or failed to conform to standards of acceptable dental practice. This individual is receiving care/counseling and there are many other variables and has been cited before. One of your areas of accusation is that a four-unit bridge was removed without clinical justification. You are directed by this Presentment to indicate what the clinical justification would be and what basis you have to make this clinical determination and furthermore which components of this were not pertinent or visible in this area as per your chart only analysis. Was the bridge cracked or loose or did it need replacement for other reasons. What is the basis of your decision and who is the individual who made this decision? Removal of a four-unit bridge and cavitation procedures according to what you cite have the risk of bleeding, postoperative infection and pain. It should be noted that **any** procedure carries a risk of bleeding post operative infection and pain. As far as the risk of endocarditis is concerned, your Agency and you state that antibiotic prophylaxis was an issue. The simple act of defecation has been shown to show bacteria into the bloodstream. This would mean that antibiotic prophylaxis would be needed prior to defecation. Where do you see that the respondent failed to give additional antibiotic prophylaxis prior to treatment? It is very probable that this individual received it or took it on their own. Regarding the administration of 7 carpules of carbocaine you do not specify whether these carpules were full carpules or partial carpules and that adequate monitoring was not performed while the sedation took place. What is your basis for determining whether or not this took place. You are directed to specify under oath a response to this.

On count 5 once again a detailed medical history including the status of the so- called "patients" presence of cancer is revealed. You cite that there is departure from acceptable prevailing care and once again cavitation surgery is cited as having been performed. Cavitation surgery once again is another word for removal of dead necrotic or infected tissue which may be of detriment to the patient's health causing heart, kidney, brain, joint and other problems. You also note that the respondent ordered and obtained multiple tests for health conditions which are unrelated to the field of dentistry. Specify that Dr. Grube ordered these tests specifically in relation to her position as a dentist. There is a record of extraction of the following teeth 2, 3, 14, 18 and 31 and these are stated to be not clinically justified. How have you made your determination based on a sole representation by X ray or a chart?

These allegations are not sufficient for a rational scientific diagnosis. There is also a documentation of administration of intravenous vitamin C and you note that vitamin C is not FDA approved as a cancer therapy. Please indicate under sworn testimony that this individual is indeed Dr. Grube who is administering this to so-called "patient" as a response to his cancer. There is no indication that vitamin C was administered in response to cancer. Nevertheless, the health benefits of Vitamin C have been documented to be of benefit for overall health. Please indicate the side effects of vitamin C that you indicate have been reported and what the dosages are and what dosage of vitamin C was received by this individual. The fact that the "patient" died approximately one month after this or last appointment with the respondent have absolutely no bearing on the proximity of the dental appointment. Has a forensic evaluation been ordered and or done? What other circumstances are involved in this person's life which could have caused this? The proximate cause you cite is pure conjecture, being that there is a significant health compromise in place already.

Regarding count 6 of your allegations, you cite that laboratory testing is beyond the scope of dental practice. This is in fact not true because a patient or any other individual may readily order their own test online and a blood-based laboratory test may be ordered for issues other than those which relate to dental issues. These are commonly referred to as remotely ordered tests.

Regarding count 7, the Respondent noted abnormalities or concerns in the blood testing results of patients 2, 3, 7, 19, 25, 28, 37, 40 and 41. This appears to be an empirical observation which does not have any bearing on any care/counseling. Regarding the standard of care related to referring to medical professionals it is up to the person receiving the ministerial care/counseling to follow through with any further assessment by specialists. This is not the responsibility of the individual rendering the ministerial care/counseling. Therefore, on all these counts there is a significant degree of intrusion into the private methodologies of our research, as well as violations of Trust law, violations of Ecclesiastical law, violations of private proprietary intellectual property law and violations of these individuals' right to privacy and civil and ecclesiastic rights. Monetary compensation will need to be provided to Dr. Grube in an amount far exceeding what you cite.

**PLEASE TAKE NOTICE** that this is an informational Private Administrative Trustee Presentment Notice for a Bill of Discovery that is intended to protect all individuals involved in this matter and the interests of the Trust Consortium. **Upon receipt of this Presentment for a Bill of Discovery, you will have ten (10) days to provide a notarized response under penalty of**

**perjury, indicating your understanding of the subject matter of this Notice and addressing all issues related to this matter in accordance with the appropriate law references. The record keepers of the Trust's Consortium will move forward to provide all assistance necessary to comply with your response. (Please indicate in your response that your interest in Dr. Blanche Grube's research is or is not private, Church/Trust/Native American property. If you have any reason or proof to substantiate that this material does not have intellectual property protections attached to it, please identify the law you rely upon explaining with particularity why it does not).**

**PLEASE TAKE FURTHER NOTICE that by failing to respond and resolve the material issues and concerns of this Notice, the recipient(s) hereof will have tacitly acquiesced to the ramifications of what this Presentment lawfully entails to provide under the administration of private Trust law and said recipient(s) will be equitably estopped from taking any further action against Dr. Grube and the intellectual property rights of the Trust Consortium**, and

**PLEASE BE ADVISED that such tacitly acquiesced failure to respond to this Trustee Presentment equitably estops any claims against Dr. Grube and the intellectual property rights of the Trust Consortium whereby any Administrative Agency Tribunal pursuing a claim against Dr. Grube and the intellectual property rights of the Trust's research is effectively without any jurisdiction or other presumptive standing, as no justiciable controversy in law, equity or material fact would exist between the Party imposing such a claim or inquiry without acknowledgement in honor of the controlling law governing private intellectual property held in the private Foreign Express Trusts named in this Presentment.**

**PLEASE BE FURTHER ADVISED that your Agency and you are directed to provide irrefutable evidence to contradict the facts, truth, law and proof elucidated upon within this Private Administrative Trustee Presentment by Affidavit from the Trust Protector within ten (10) days of your receipt of it and to provide your response with a notarized Affidavit under penalty of perjury by your constitutional oath. Failure to do so will effectively trigger the Doctrine of Tacit Acquiescence in an admission that there is no substantive basis for your unfounded allegations that essentially activates the Doctrine of Equitable Estoppel and Stare Decisis thereby precluding you and your Agency from taking any adverse action against Dr. Grube in any forum or tribunal whatsoever. You are advised to seek legal counsel yourself for the unauthorized intrusion into private, ecclesiastic, confidential and protected relationships in at least 47 individuals who are part of our Trust Consortium.**

I, Reverend Juan-Jose`: Brookins, hereby affirm under penalty of perjury that I have personal firsthand knowledge of the statements made by me within this Presentment. I declare that those statements are true and correct to the best of my informed knowledge and belief, and as to those statements for which I have no personal firsthand knowledge I believe them to be true, so help me God.

Thus, Further Affiant Sayeth Not.

USPO Registered Mail No. RB 609 066 147 US




Verily, I Am

*Rev. Juan-José: Brookins*

Reverend Juan-Jose`: Brookins
*In Propria Persona, Sui Juris*

NOTARY ACKNOWLEDGMENT

On the 31st day of January 2023, before me, personally appeared Reverend **Juan-Jose`: Brookins**, whose name is subscribed upon this instrument and has acknowledged to me that he will execute the same in his authorized capacity. I certify under PENALTY OF PERJURY under the laws of the United States that the foregoing paragraph is true and correct.

*Beverley Christie*
Notary
My Commission Expires________________

BEVERLEY CHRISTIE
NOTARY PUBLIC STATE OF CONNECTICUT
My Commission Expires June 30 2024

REVEREND Juan-Jose:
Karrine Montaque, notary Public
Post office Box 1387
Valley Stream New York 11582

Commonwealth of PENNSYLVANIA
Department of STATE
P.O. Box 69521
HARRISBURG, PA 17106-9521
ATTN: GREGORY S. Leiro
Prosecuting ATTORNEY

United States Postal Service
REGISTERED MAIL
RB 609 066 147 US
Label 200, July 1999 (102596) 99-M-1904

**Registered No.** RB609066147US

**Date Stamp**

To Be Completed By Post Office

| | |
|---|---|
| Postage $ 31.92 | Extra Services & Fees (continued) |
| Extra Services & Fees | ☐ Signature Confirmation $ |
| ☐ Registered Mail $ $15.25 | ☐ Signature Confirmation Restricted Delivery $ |
| ☒ Return Receipt (hardcopy) $ $3.35 | |
| ☐ Return Receipt (electronic) $ $0.00 | |
| ☐ Restricted Delivery $ | Total Postage & Fees $ $20.58 |
| Customer Must Declare Full Value $ $0.00 | Received by 01/31/2023 |

Domestic Insurance up to $50,000 is included based upon the declared value. International Indemnity is limited. (See Reverse).

OFFICIAL USE

To Be Completed By Customer (Please Print) All Entries Must Be in Ballpoint or Typed

FROM: Rev Juan-Jose: Brookins c/o Karrine Monteque Post office Box 1387 Valley Stream NY 11582

TO: CommonWealth of Pennsylvania Department of State P.O. Box 69521 HARRISBURG, PA 17106-9521

PS Form **3806, Registered Mail Receipt** Copy 1 - Customer
April 2015, PSN 7530-02-000-9051 (See Information on Reverse)
For domestic delivery information, visit our website at www.usps.com ®

Debit Card Remit $20.58
Card Name: VISA
Account #: XXXXXXXXXXXX1416
Approval #: 867071
Transaction #: 658
Receipt #: 029838
Debit Card Purchase: $20.58
AID: A0000...980840 Chip
AL: US DEBIT
PIN: Verified

Text ... number to 28777 (2USPS)
to g... ...s. Standard Message
and ... ...ply. You may also

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: CommonWealth of Pennsylvania Department of State P.O. Box 69521 HARRISBURG, PA 17106-9521

9590 9402 3777 8032 5028 24

2. Article Number (Transfer from service label) RB609066147US

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature X K. Naik ☐ Agent ☐ Addressee

B. Received by (Printed Name) FEB 10 2023 C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☒ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

# EXHIBIT C

**Defendant Leiro's Motion to Strike**

COMMONWEALTH OF PENNSYVLANIA
DEPARTMENT OF STATE
BEFORE THE STATE BOARD OF DENTISTRY

| | |
|---|---|
| **Commonwealth of Pennsylvania Bureau of Professional and Occupational Affairs**<br><br>**vs.**<br><br>**Blanche Durand Grube, DMD Respondent** | **Case No.s:** **18-46-02952**<br>**18-46-012074** |

**<u>MOTION TO STRIKE "PRIVATE ADMINISTRATIVE TRUSTEE PRESENTMENT OF A PRIVATE BILL OF DISCOVERY" FILED BY REVEREND JUAN JOSE': BROOKINS</u>**

**AND NOW COMES** the Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs ("Commonwealth"), by and through its Prosecuting Attorneys, Gregory S. Liero and Amber Lee Czerniakowski, and files this Motion to Strike Answer filed by Reverend Juan-Jose': Brookins, and in support thereof avers as follows:

1. On December 6, 2022, the Commonwealth filed a twenty- two (22) page, seven count Order to Show Cause against Blanche Durand Grube, DMD ("Respondent").

2. On December 27, 2022, Respondent emailed the Prothonotary of the Department of State ("Prothonotary") asking for more time to file an answer to the Order to Show Cause.

3. The December 27, 2022 email was forwarded to the Prosecution Division.

4. On January 6, 2023, an attorney emailed the undersigned indicating that he would be representing Respondent and requesting more time to file an answer.

5. The attorney's request was granted, given the complexity of issues raised by the Order to Show Cause.

6. The attorney's appearance was never filed with the Prothonotary.

Prothonotary Filed On:
Feb 21 2023 12:00 PM
Department of State

7. On January, 10, 2023, an order was signed by Michael T. Foerster, Hearing Examiner, directing Respondent to file an answer to the order to show cause within 30 days of January 10, 2023.

8. On February 8, 2023, this same attorney notified the undersigned that he would no longer be representing Respondent.

9. On or about February 10, 2023, the Prothonotary received a "Private Administrative Trustee Presentment of a Private Bill of Discovery", (hereinafter referred to as "the Brookins' filing") filed by Reverend Juan-Jose': Brookins ("Reverend Brookins").

10. The Brookins filing is not signed by Respondent.

11. Revered Brookins is not a party to this case nor was he involved in the treatment of patients which forms the basis of the Order to Show Cause.

12. The Brookins filing appears to be an answer, on Respondent's behalf, to the Order to Show Cause.

13. By submitting this filing, Reverend Brookins is acting as Respondent's representative and/or attorney.

14. Reverend Brookins is not licensed to practice law in the Commonwealth of Pennsylvania.

15. Reverend Brookins is not an attorney.[1]

16. The unlicensed practice of law is a criminal offense in Pennsylvania. See 42 Pa. C.S. § 2524, Penalty for Unauthorized Practice of Law.

17. The General Rules of Appellate Procedure ("GRAPP"), 1 Pa. Code § 31.23, Other representation prohibited at hearings, provides that:

---

[1] See Brookins filing, page 2: "... I am authorized to represent the interests of an Express Trust in my individual capacity without the assistance of an Attorney."

DOS Prothonotary
Feb 21 2023

> A person shall not be represented at a hearing before an agency head or a presiding officer except:
> (1) As stated in § 31.21 or § 31.22[2] (relating to appearance in person; and appearance by attorney).
> (2) As otherwise permitted by the agency in a specific case.

18. Although Mr. Brookins' appearance on behalf of Respondent may be permissible under 1 Pa. Code § 31.23 (2) cited above, "As otherwise permitted by the agency in a specific case", the Commonwealth avers that allowing an unlicensed person to act as counsel in a scientific standard of care licensing case was not intended, nor need it be permitted where the general rule and custom are to the contrary.

19. Reverend Brookins is ill-equipped to represent Respondent – he is subject to potential criminal prosecution if his actions constitute the unlicensed practice of law, and he has no legal qualifications, and therefore, no legitimate legal representation experience.

20. Additionally, the Order to Show Cause in this case raises a multitude of complex medical and scientific issues, including dental and medical diagnoses, proper medication and anesthesia use, and propriety of treatment given complex medical histories, for forty-two (42) dental patients.

21. The Brookins filing previews what Mr. Brookins' representation in this case would look like: extended exposition on irrelevant matters and little to no understanding of legal substance, concepts, or rules that apply to administrative practice and procedure.

22. The Commonwealth requests that the Board strike the Brookins filing and order Respondent to file an answer, either pro se or with the assistance of a licensed attorney, whose

---

[2] **1 Pa. Code § 31.21, Appearance in Person,** provides in relevant part, "parties, except individuals appearing in their own behalf, shall be represented in adversary proceedings only under § 31.22 (relating to appearance by attorney)."
**1 Pa. Code § 31.22, Appearance by Attorney,** provides, "A person may be represented in a proceeding by an attorney at law admitted to practice before the Supreme Court of Pennsylvania, or if a similar agency of another jurisdiction accords like privileges to members of the bar of this Commonwealth, the highest court of such other jurisdiction."

DOS Prothonotary
Feb 21 2023

appearance complies with 1 Pa. Code § 31.22, Appearance by Attorney, within thirty (30) days of the Board's order.

**WHEREFORE**, the Commonwealth respectfully requests that the "Private Administrative Trustee Presentment of a Private Bill of Discovery" by Reverend Juan-Jose': Brookins be stricken from the record and that Respondent be ordered to file an answer to the Order to Show Cause within thirty (30) days, either pro se or with the assistance of a licensed attorney, whose appearance complies with 1 Pa. Code § 31.22, Appearance by Attorney.

Respectfully submitted,

/s/ Gregory S. Liero
Gregory S. Liero

/s/ Amber Lee Czerniakowski
Amber Lee Czerniakowski
Prosecuting Attorneys
Commonwealth of Pennsylvania
Department of State

DATE: 2-21-23

DOS Prothonotary
Feb 21 2023

**COMMONWEALTH OF PENNSYVLANIA**
**DEPARTMENT OF STATE**
**BEFORE THE STATE BOARD OF DENTISTRY**

| | | |
|---|---|---|
| **Commonwealth of Pennsylvania Bureau of Professional and Occupational Affairs** | | |
| **vs.** | **Case No.s:** | **18-46-02952**<br>**18-46-012074** |
| **Blanche Durand Grube, DMD**<br>**Respondent** | | |

# ORDER

*AND NOW*, this day of 2023, upon consideration of the Commonwealth's Motion to Strike Answer Filed by Reverend Juan-Jose': Brookins, the following is **HEREBY ORDERED:**

1. The document filed by Reverend Juan-Jose': Brookins is hereby stricken from the record. Reverend Brookins is not an attorney licensed in the Commonwealth of Pennsylvania and may not appear, argue, or submit filings on behalf of Dr. Grube in this matter.
2. Respondent is ordered to provide an answer to the Order to Show Cause within 30 days from the date of this order. Respondent may represent herself or she may be represented by an attorney licensed to practice law, whose appearance complies with 1 Pa. Code § 31.22, Appearance by Attorney.

**BY ORDER:**

______________________________

Hearing Examiner

For the Commonwealth:

Gregory S. Liero, and
Amber Lee Czerniakowski
2601 North Third Street
P. O. Box 69521
Harrisburg, PA 17106-9521

For the Respondent:

Blanche Durand Grube, DMD
810 Green Ridge Street
Scranton, PA 18509

DOS Prothonotary
Feb 21 2023

Date of mailing:

DOS Prothonotary:
Feb 21 2023

**COMMONWEALTH OF PENNSYVLANIA**
**DEPARTMENT OF STATE**
**BEFORE THE STATE BOARD OF DENTISTRY**

| | |
|---|---|
| **Commonwealth of Pennsylvania Bureau of Professional and Occupational Affairs**<br><br>**vs.**<br><br>**Blanche Durand Grube, DMD Respondent** | **Case No.s:** **18-46-02952** **18-46-012074** |

**CERTIFICATE OF SERVICE**

I, Gregory S. Liero, hereby certify that I have this 21st day of February, 2023, caused a true and correct copy of the foregoing Motion to Strike "Private Administrative Trustee Presentment of a Private Bill of Discovery" to be served upon all parties of record in this proceeding in accordance with the requirements of §33.31 of the General Rules of Administrative Practice and Procedure, 1 Pa. Code §33.31 (relating to service by the agency).

**BY FIRST CLASS MAIL, POSTAGE PREPAID**

Blanche Durand Grube, DMD
810 Green Ridge Street
Scranton, PA 18509

*/s/ Gregory S. Liero*
Gregory S. Liero
Prosecuting Attorney
Commonwealth of Pennsylvania
Department of State
P. O. Box 69521
Harrisburg, PA 17106-9521
(717) 783-7200

DOS Prothonotary
Feb 21 2023

# EXHIBIT D

**Rev. Brookins' 2nd Private Administrative Trustee Presentment**

Reverend-Juan Jose': Brookins
Trust Protector
Ministerial Indigenous Nation Trust (M.I.N.T.)
c/o 46 Gramatan Avenue, #19
Mount Vernon, New York State [10550] Non-Domestic
(203) 449-9391 / (203) 727-5758
jawambi@yahoo.com

March 6, 2023

**2nd PRIVATE ADMINISTRATIVE TRUSTEE PRESENTMENT**
**BY WAY OF AFFIDAVIT FROM THE OFFICE OF THE TRUST PROTECTOR**

**NOTICE TO AGENT IS NOTICE TO PRINCIPAL**
**NOTICE TO PRINCIPAL IS NOTICE TO AGENT**
**AND THEIR SUCCESSORS AND ASSIGNS**
**WITHOUT RECOURSE**

## NOTICE OF FAULT AND OPPORTUNITY TO CURE

TO: Gregory S. Leiro, Esq.
Prosecuting Attorney
Commonwealth of Pennsylvania Department of State
P.O. Box 69521
Harrisburg, PA 17106-9521
(717)783-7200
grliero@pa.gov
USPO Certified Mail No. 7014 0510 0002 2410 1488

Shawn Casey, D.M.D.
Chairperson
Pennsylvania State Board of Dentistry
P.O. Box 2649
Harrisonburg, PA 17105-2649
USPO Certified Mail No. 7014 0510 0002 2410 1518

Al Schmidt
Acting Secretary of State
302 North Office, Building 401
North Street
Harrisburg, PA 17120
USPO Certified Mail No. 7014 0510 0002 2410 1501

Linda L. Dodson
Prothonotary
P.O. Box 2649

2601 North Third Street
Harrisburg, PA 17120
USPO Certified Mail No. 7014 0510 0002 2410 1495

RE: ADMINISTRATIVE AGENCY DISCIPLINARY ACTION -
Affiant Trustee's Response to Charging Documents Nos. 18-46-02952 & 18-46-012074.

**This is a 2nd Private Timely Demand for a Pure Bill of Discovery for the Nature and Cause of Accusation – Not a Discovery Motion** (*See* New York Consolidated Laws, Civil Practice Law and Rules, CVP § 3041 "Bill of In Any Case").

Jurat

| | | |
|---|---|---|
| New York State | } | |
| | } | Scilicet: |
| Westchester County | } | |

Greetings Again Mr. Gregory S. Leiro,

On January 30, 2023, I, Reverend Juan-Jose': Brookins, the Trust Protector for the Ministerial Indigenous Nation Trust (M.I.N.T.) Consortium and a federally registered I.R.B. (Institutional Review Board), sent you and your respective Offices a Private Timely Demand of a Pure Bill of Discovery for the Nature and Cause of Accusation that has not been answered by any of the addressed Respondents to this lawful request being made from an Ecclesiastic Overseer Trustee that has Power of Attorney for Dr. Blanche Grube, a *bona fide* member of an indigenous and religious federally recognized Foreign Express Trust entity who is also a duly ordained Pastor/Minister colleague and constituent.

As a fundamental colleague and constituent research Member of the M.I.N.T. and the I.R.B (Institutional Review Board), all the activity, methodology and relationships Dr. Grube has with the participants of the research being conducted by our private Indigenous Ministerial Trust Consortium is performed and conducted in her capacity as a Minister. This includes, but is not limited to, any transactions between her and our research participants that have been documented. These transactions are private, privileged, confidential, and

beyond the scope of any public forum statutory jurisdiction because it is private ecclesiastical research that is protected by federal law.

The research being conducted by Dr. Grube is performed under the auspices of an Indian Joint Venture Spiritual Health Research Private Trust and the I.R.B. (Institutional Review Board) that is duly registered with the Federal Drug Administration (FDA) and Health and Human Services (HHS) and is approved by those agencies and recorded in their database. The research data Dr. Grube gleans from using our methodologies belongs to the Indigenous Ecclesiastic Trust Consortium and is the Trust Consortium's private intellectual property. Your Agency's purported "disciplinary action" is an overreach of public governmental presumptive statutory authority into a private research intellectual property domain. The federal government has created enforceable rights for "intangibles" that are known as intellectual property, including, but not limited to, copyrights, trademarks, service marks, registrations and trade secrets. These intangibles fall under copyright law, trademark law, and trade secret law.

In this particular case your Agency's disciplinary action makes a presumptive adverse claim against Dr. Grube who is not the one that owns, controls or administrates the research she conducts on behalf of the Trust Consortium she is affiliated with because it is our methodologies that she uses in the research she conducts, and the data collection of that research methodology is private intellectual property that is owned by our Trust Consortium. Your Agency's purported disciplinary action against Dr. Grube for performing private research containing intellectual property that is gleaned through our institutional ecclesiastic methodology can be construed as violating trade secret law under 18 U.S.C. §§ 1831 & 1832, which prohibits the unauthorized disclosure of any confidential and proprietary information, such as: formulae, device or compilation of information when that information possesses an independent economic value because it is secret, and/or the owner has taken reasonable measures to keep it secret, and/or protected.

The FDA defines intellectual property as creations, or expressions, inventions, discoveries, information, artistic works, literary works, software, designs and symbols. The three most relevant definitions mentioned here are expressions, discoveries and information which are prevalent in the research being conducted by Dr. Grube under the auspices of our Trust's Consortium. That is why I sent you and your Agency a PRIVATE TIMELY DEMAND FOR A BILL OF DISCOVERY giving you and your Agency NOTICE that our Trust Consortium has an equitable claim to the information that you require Dr. Grube to disclose. That private Trustee Presentment was not sent to join issue with your disciplinary action in a public Agency forum.

The Timely Pure Bill of Discovery was sent to you and your Agency by me ***privately*** to get a fix on the substance and nature of your adverse action that may directly or indirectly impact our trade secret methodologies. **It was *NOT* sent to be filed as a part of your public forum Agency action on behalf of Dr. Grube. It was sent to give you and your Agency Notice and Opportunity of our intent to protect private proprietary intellectual property that belongs to our Trust Consortium.** That is why the letterhead on the correspondence was addressed from me, the Trust Protector, to you and your Agency Officials personally and only identified my name, title and office as the Trust Protector and did not include the Agency Tribunal's forum name or official identifying office that your purported disciplinary action is taking place anywhere in the first Private Administrative Trustee Presentment.

For your information, the Private Timely Demand of a Pure Bill of Discovery for the Nature and Cause of Accusation is a Common Law fundamental right of due process which is protected by the Sixth Amendment to the Constitution for the United States of America. It is not a procedural due process statutory civil practice rule of the Court or Administrative Tribunal that a judge or hearing Officer can grant or deny, so your Motion to Strike the Presentments being sent to you and the Agency you represent is not only inappropriately meritless but fundamentally and procedurally inapplicable.

And contrary to what you have stated in your Motion to Strike a Common Law Private Correspondence Notice between you and me in my role and Office as the Trust Protector I have absolutely no interest being a Party or joining issue with your purported presumed adverse disciplinary action against Dr. Grube. My only interest is in protecting the Trust Consortium's private intellectual property rights. With that being stated for the record of this private Administrative Trustee Presentment process I must point out the errant and malicious disparaging aspersions that you have cast against my character and intent concerning my involvement with the correspondences I have sent to you and your Agency, but more significantly, with you, Attorney Leiro, in particular, because in your dispositive Motion to Strike our first Private Administrative Trustee Presentment at line-item No. 12 you make the presumptive averment on the record of that Agency action that I "appear to be filing an answer on behalf of the Respondent" and that by submitting this Trustee Presentment filing I am "acting as Respondent's representative or Attorney."

These presumptive accusatory averments regarding my role and involvement with your Agency's disciplinary action that you make in your Motion to Strike are not only false and erroneous but libelous as well, because in the 1st Private Administrative Presentment I explicitly specified what my relationship with this adverse Agency disciplinary action was, and that was and still is the fact that I represent the Trust Consortium in accordance with FRCP Rule 17(E), which expressly provides for a Trustee of an Express Trust to have Standing to represent such Trust and sue in his or her own capacity.

I strongly suggest that you look that up, Attorney Leiro, because I hereby give you Notice that I will sue you personally in your individual capacity for making false and inflammatory accusations on the public record to bring criminal accusations against me to disgrace and defame me without good cause or verifiable proof. I never presented myself to you or your Agency as an Attorney or that I represented Dr. Grube in this Agency action, and I strongly suggest that you retract any alleged defamatory criminal assertions to that

effect on the public record of your Agency action immediately and forward to me the proof that you have done so with an apology for even suggesting such criminality against my good name and character.

My entire involvement in this purported disciplinary action is to protect the intellectual property research that belongs to the Trust Consortium and I have every right to know what jurisdictional authority you or your Agency has over the private research methodologies that Dr. Grube uses under the auspices of our Trust Consortium that is part and parcel of the intellectual property contained in our Trust Consortium's corpus for which you and your Agency have not provided an answer to my Timely Private Pure Bill of Discovery with any justifiable response to satisfy our curiosity about what authority your Agency possesses over our private intellectual research property in the time frame specified by me in the 1st Private Administrative Presentment that I sent to you, Attorney Leiro, personally, which I have every right to request under the Sixth Amendment to the Constitution, because the Trust I represent has an equitable interest in the subject matter of your disciplinary action.

**Under the Common Law jurisprudence for which I am sending You this Private Administrative Trustee Presentment for a Pure Bill of Discovery, your instant Statutory Motion to Strike Our Trust Consortium's Lawful Request for a Pure Bill of Discovery is Moot, Impertinent and Irrelevant Because the Request we made for a Pure Bill of Discovery was and still is PRIVATE, without any Public Forum preclusive statutory restriction because it is Not Subject to Your Agency's Public Forum Jurisdiction.**

In other words, Attorney Leiro, you cannot strike something from the public record that was sent to you privately. The private Pure Bill of Discovery I sent to you by Notary Presentment is not subject to the Public Record for any dispositive Motion Public Forum adjudicative determination. That is why I am sending you this second Private Administrative Trustee Presentment for a Pure Bill of Discovery and giving you Notice of your default in failing to respond to the first presentment with an Opportunity to Cure that default because your

Motion to Strike is **NOT A RESPONSIVE ANSWER** to our first Presentment, and your failure to respond to the first presentment is an open and active default and dishonor which if you do not cure by answering this second Notice of Opportunity to Cure presentment by sending your answer to our Notary Presenter, as an operation of law, you will be equitably estopped from pursuing any attempt to acquire the private intellectual property research information you are attempting to publicly extract through an adverse disciplinary action against Dr. Grube.

Our Trust Consortium has every right to request the particulars of the substance and nature of your alleged charges against Dr. Grube's research methodologies because those methodologies are the Trust Consortium's intellectual property, and we have an equitable interest in maintaining our right to protect our trade secrets. Just to reiterate what has transpired between you, your Agency and our Trust thus far, the 1st Private Administrative Trustee Presentment preceding this one has to do with the question of jurisdiction that your Agency has in bringing the alleged disciplinary charges regarding our private research methodologies that our venerate colleague Minister Dr. Grube uses, and the jurisdiction of the purported Agency Tribunal forum that is being invoked by the you, Attorney Leiro, to present any presumed alleged charge against the research methodologies of an Indigenous Ecclesiastic Foreign Express Trust Consortium, for which you have not timely answered to justify what your presumed authority is thus far. The test of jurisdiction is whether the Court or tribunal has power to enter upon inquiry; not whether its conclusion in course of it is right or wrong. (*State vs. Phelps*, 193 P.2d 921, 67 Ariz. 215. (1948)).

The question of whether jurisdiction is being lawfully invoked is not only a matter of inquiry by our Trust organization but also an issue of Public Interest where the governmental authorities are executing their oath bound responsibilities within its charge or overextending such authority under color of law and in violation of the constitutional rights of the

people. There are clearly established precedent case laws that your Agency must not only be aware of but must recognize and respect as the law of the land.

I will briefly cite some of these laws for your convenience here:

1. "The 'Individual' (or Trust) may stand upon 'his constitutional rights' as a citizen...he is entitled to carry on his 'Private' business in his own way...The rights of the individual are restricted only to the extent that they have been voluntarily surrendered by the citizenship to the Agencies of government...his power to contract is unlimited...he owes no duty to the State or to his neighbors to divulge his business or open his doors to an investigation, so far as it may tend to incriminate him. He owes no duty to the State since he receives nothing therefrom beyond the protection of his life and property...his rights are such as existed by the law of the land long antecedent to the organization of the State and can only be taken from him by due process of law in accordance with the Constitution." (*Hale v. Henkel*, 201 U.S. 43 at 89 (1906)).
2. "Inasmuch as every government is an artificial person, an abstraction, and a creature of the mind only, a government can interface only with other artificial persons. The imaginary, having neither actuality nor substance, is foreclosed from creating and attaining parity with the tangible. The legal manifestation of this is that no government, as well as any law, Agency, aspect, Court, etc., can concern itself with anything other than corporate, artificial persons and the contracts between them." (Sup. Ct. R., 3 U.S. 54; 1 L. Ed. 57; 3 Dall. 54 [1975]).

Since [public officials] are required to swear an oath to uphold the Constitution (as per Article VI, Clause 3), for these same officials to ignore the Court's precedents is equal to a violation of that oath. Even

though education is the responsibility of the [state government], that responsibility must be carried out in a manner consistent with the requirements of the Constitution, particularly the Fourteenth Amendment.

The government Agents named as addressees in this Pure Bill of Discovery are Respondents to this Presentment who are Public Officers that have taken an oath to uphold the law and are beholden to the American people, private State citizens and by Treaty for indigenous Tribal members, and we all have a reasonable expectation that those government Agents and Public Officer Respondents will honor the law and their oath accordingly.

## OPPORTUNITY TO CURE

A. If in the event that you or your Agency failed to take the opportunity to answer the 1st Private Timely Demand for Bill of Discovery as an oversight, mistake or was otherwise unintentional, **Affiant Trust Protector, hereby grants the government Agent/Public Official Respondents five (5) days more, exclusive of the day of receipt of this Presentment, to cure the default and effect the remedy by answering accordingly.**

B. Failure to cure the default of non-response upon the receipt of this Presentment according to the time frame specified herein with a three (3) day mailing grace period, will constitute, as an operation of law, tacit procuration of acquiescence to this Affidavit of your obligation to respond to the lawfully requested private Pure Bill of Discovery in order to justify your Agency's jurisdictional authority to invoke a public forum's jurisdiction to elicit an obligation of commercial liability of our constituent Minister compelling her to expose protected private intellectual property research information, that for all intents and purposes, absent the establishment of your jurisdictional authority, is determinedly outside the jurisdiction of your Agency; and your failure to respond and provide such

jurisdictional authority to the satisfaction of the letter of the law and our Trust Consortium's lawful inquiries will be the FINAL admission by you and your Agency that you have no jurisdictional authority over our private research intellectual property and methodologies, and your purported Agency disciplinary action to have our constituent colleague, Dr. Blanche Durand Grube, will be equitably estopped as a matter of law and the whole matter shall be deemed *res judicata* and *stare decisis*.

C. Also, in the event that I do not receive notification from you in writing personally of the retraction of your alleged assertions that I am practicing law without a license on the public record of your Agency action with proof that you have done so with an apology sent to me signed by your own hand for even suggesting such criminality against my character within a reasonable time after the time frame specified for this opportunity to cure, I will be promptly filing a civil lawsuit for libel and defamation of character against you personally, Attorney Gregory S. Leiro, Esq., in your individual capacity.



Verily, I Am

Reverend Juan Jose' Brookins
*In Propria Persona, Sui Juris*
Trust Protector
Ministerial Indigenous Nations Trust (M.I.N.T.)

NOTARY ACKNOWLEDGEMENT

On the 6th day of March, 2023, before me, personally appeared Reverend Brookins, Juan Jose' on behalf of Ministerial Indigenous Nation Trust (M.I.N.T.), being known to me (or proved to me on the basis of satisfactory evidence of identification), a living man on the land and Living Soul whose name is subscribed upon this instrument. I certify under PENALTY OF PERJURY under the laws of New York State that the foregoing paragraph is true and correct.

Witness my hand official seal.

Notary: ____________________

Print:____________________

My Commission Expires:____________________

JAIR E. CORREA
NOTARY PUBLIC, STATE OF NEW YORK
NO. 04C06446153
QUALIFIED IN WESTCHESTER COUNTY
MY COMMISSION EXPIRES JAN 17, 2023

**NOTICE**

Using a Notary on this document does not constitute any adhesion, nor does it in any manner alter any legal or political status of any of the parties hereto. The purpose of a Notary is for verification and identification purposes only and not for entrance into any foreign jurisdiction. A Notary Public or other Public Officer completing this Certificate verifies only the identity of the individual who signed the document, to which this Certificate is attached, and not the truthfulness, accuracy, or validity of that document.

7014 0510 0002 2410 1488

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

Harrisburg, PA 17106

| | | |
|---|---|---|
| Postage | $4.15 | 0214 |
| | $3.35 | 24 |
| Certified Fee | $0.00 | |
| Return Receipt Fee (Endorsement Required) | $0.00 | Postmark Here |
| | $0.00 | |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| | $1.74 | |
| Total Postage & Fees | $ | 03/06/2023 |
| | $9.24 | |

Sent To Gregory S. Liero, Esq.
Street, Apt. No.; or PO Box No. P.O. Box 69521
City, State, ZIP+4 Harrisburg, PA 17106-9521

PS Form 3800, August 2006 See Reverse for Instructions

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Gregory S. Liero, Esq.
P.O. Box 69521
Harrisburg, PA 17106-9521

9590 9402 7479 2055 1821 61

2. Article Number *(Transfer from service label)*
7014 0510 0002 2410 1488

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature X K. Naik ☐ Agent ☐ Addressee

B. Received by *(Printed Name)* MAR 09 2023 C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

NoFOC

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

7014 0510 0002 2410 1518

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

Harrisburg, PA 17105

| | | |
|---|---|---|
| Postage | $4.15 $ | $3.35 |
| Certified Fee | | $0.00 |
| Return Receipt Fee (Endorsement Required) | | $0.00 $0.00 |
| Restricted Delivery Fee (Endorsement Required) | $1.74 | $0.00 |
| Total Postage & Fees | $9.24 $ | |

0214
24

Postmark Here

03/06/2023

Sent To: Shawn Casey, Chairperson
Street, Apt. No.; or PO Box No.: P.O. Box 2649
City, State, ZIP+4: Harrisonburg, PA 17105-2649

PS Form 3800, August 2006 See Reverse for Instructions

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Shawn Casey, D.M.D.
Chairperson
Pennsylvania Board of Dentistry
P.O. Box 2649
Harrisonburg, PA 17105-2649

9590 9402 7479 2055 1821 30

2. Article Number *(Transfer from service label)*
7014 0510 0002 2410 1518

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature
X K.Naik -DCS ☐ Agent ☐ Addressee

B. Received by *(Printed Name)* MAR 10 2023

C. Date of Delivery MAR 10 2023

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

NOFOC

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

7014 0510 0002 2410 1501

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

Harrisburg, PA 17120

| | | |
|---|---|---|
| Postage | $4.5 ~~$3.35~~ | 0214 24 |
| Certified Fee | $0.00 ~~$0.00~~ | |
| Return Receipt Fee (Endorsement Required) | $0.00 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | ~~$0.00~~ | |
| Total Postage & Fees | $1.74 $8.24 | 03/06/2023 |

Sent To: Al Schmidt, Acting Secy. of State
Street, Apt. No.; or PO Box No.: 302 North Office, Bldg. 401
City, State, ZIP+4: North Street, Harrisburg, PA 17120

PS Form 3800, August 2006 — See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Al Schmidt,
Acting Secy. of State
302 North Office, Bldg 401
North Street
Harrisburg, PA 17120

9590 9402 7479 2055 1821 47

2. Article Number (Transfer from service label)
7014 0510 0002 2410 1501

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X K N ☐ Agent ☐ Addressee

B. Received by (Printed Name) MAR 0 8 2023
C. Date of Delivery MAR 0 8 2023

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

NOFO C

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 — Domestic Return Receipt

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Linda L. Dodson
P.O. Box 2649
2601 North Third Street
Harrisburg, PA 17120

9590 9402 7479 2055 1821 54

2. Article Number (Transfer from service label)

7014 0510 0002 2410 1495

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by (Printed Name) CMPC

C. Date of Delivery 3/8/23

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

NoFoc

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

Harrisburg, PA 17120

| | | |
|---|---|---|
| Postage | $4.15 | 0214 |
| Certified Fee | $3.35 | 24 |
| Return Receipt Fee (Endorsement Required) | $0.00 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| | $1.74 | |
| Total Postage & Fees | $9.24 | 03/06/2023 |

Sent To Linda L. Dodson
Street, Apt. No.; or PO Box No. P.O. Box 2649 2601 No. Third Street
City, State, ZIP+4 Harrisburg, PA 17120

PS Form 3800, August 2006 See Reverse for Instructions

7014 0510 0002 2410 1495

# EXHIBIT E

**Dr. Grube's Pre-Trial Discovery and Inspection Pursuant to 234 PA. Code Rule 573(A)**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**
**BEFORE THE STATE BOARD OF DENTISTRY**

**Commonwealth of Pennsylvania,**
**Bureau of Professional and,**
**Occupational Affairs,**

**File Nos. 18-46-02952**
**18-46-012074**

**v.**

**Blanche Durand Grube, D.M.D.**

**Respondent.**

**PRE-TRIAL DISCOVERY AND INSPECTION**
**PURSUANT TO 234 PA. CODE RULE 573(A)**

**COMES NOW** the Respondent-in-Error, Dr. Blanche Durand Grube, to hereby respectfully request pre-trial discovery and inspection of the facts, law and evidence of this case in accordance with 234 Pa. Code Rule 573(A) "INFORMAL" which states that "Before any disclosure can be sought under these rules by either Party, Counsel for the parties shall make a good faith effort to resolve all questions of discovery, and to provide information required or requested under these rules as to which there is no dispute. When there are items requested by one Party which the other Party has refused to disclose, the demanding Party may make appropriate motion."

Respondent-in-Error's Attorney-in-Fact, Reverend Juan-Jose`: Brookins made an informal request for discovery on behalf of the Trust Consortium for which I am engaged in performing private intellectual property research as an Administrator for the Trusts. It is my understanding that I have a right to know the substance and nature of the charges being made against me in accordance with the Sixth Amendment to the Constitution and the due process clauses of the Bill of Rights and 14th Amendment. I am aware that an Order to Show Cause requires that the answers are to be drawn so as to specifically admit or deny the allegations or

charges but I do not understand the nature and substance of those charges where it involves private intellectual property research that is protected under a federally recognized IRB. I need a more specific and definitive explanation of the charges so that I can answer in the form and manner that the Order to Show Cause requires. I have been also been notified of the failure of your Agency Representatives to answer the lawful requests for discovery that my Attorney-in-Fact, Reverend Juan-Jose`: Brookins informally requested in private correspondences on several occasions and the Agency Representatives in this case have still not responded to the lawful requests for discovery that the Trust Protector for the Trust Consortium made in a timely manner, so now I am compelled to make a request for discovery under the rules of the Pennsylvania Code.

## I. INSTRUCTIONS AND DEFINITIONS

A. At all times herein, the use of the plural shall also imply the singular and the use of the singular shall also imply the plural.
B. At all times herein, the use of the conjunctive shall imply the disjunctive, and the use of the disjunctive shall imply the conjunctive.
C. The term "person" shall mean any individual, partnership, firm, corporation, association, joint venture, business, organization, entity, or any employee or Agent thereof in its juristic sense.
D. The term "natural person" shall mean a man or woman on the land that is a living Soul who is an American National State Citizen from the State wherein they were born and live.
E. The terms Ecclesiastic, Indigenous, Foreign Express Trust shall have the Common Law and Equity jurisprudence definitions of meaning.
F. The term "document" or "documents" have the fullest meaning of that term within the scope of the Pa. Code, and shall mean the original or a certified copy of any written, printed, type, photocopied, photographic and recorded material,

however produced or reproduced, in your possession or control, or known by you to exist, including, without limiting the generality of the foregoing, all drafts, contract, diaries, calendars, desk pads, correspondences, communications, telegrams, teletypes, text messages, instagrams, emails, memoranda, notes, studies, reports, drawings, graphs, charts, viewgraphs, photographs, films, microfilm, slides, magnetic and electronic recordings, sound recordings, lists, minutes and entries in books of account relating to or referring in any way to the subject matter of these Interrogatories, Requests for Admissions and Production of Documents.

G. The term "you" or "your" shall mean the named Agency identified in the above addressed heading or their Agents, Assigns, employees, duly authorized Representatives or Associates, and all other persons acting on behalf of the Complainants.

H. The terms "identify", "identification" and "describe" or "description":

i) When used in reference to an individual, shall mean to state that individual's full name, present and/or last known residence, telephone number, business or official position or affiliation, job title, date of first employment by present employer or Plaintiff, and the business address by street, city, state and zip code;

ii) When used in reference to a corporation, shall mean to state its full name, description, its date of incorporation, and its principal place of business;

iii) When used in reference to an entity other than an individual or corporation, shall mean to state its official name, its organization form and its address;

iv) When used in reference to a document, shall mean to state the type of document, date, author, addressee, title, serial or file number or both, its present location, the name and address of its custodian, and the substance of the contents thereof. If a document has been destroyed, state when and where destroyed, identify the person who destroyed it and the person or persons who directed the destruction. In lieu of identifying any document, copies thereof may be furnished;

v) When used in reference to any act, occurrence, occasion, meeting, oral communication or statement, shall mean, in addition to the foregoing, to set forth the substance of the discussion, and who the parties were that participated;

vi) When used in reference to any physical item, shall mean to set forth a description of the item, its relevance to this action, its location and its size and quantity.

I. These requests for Bill of Particulars are continuing, and the purported Respondent reserves the right to require supplemental answers if the purported Claimant does not sufficiently comply with this request for Particulars so as to obtain full and verifiable information from the purported Claimant as a matter of law and Equity.

J. This request for Bill of Particulars does not seek any information that is protected by the Attorney-Client privilege, nor does it seek information of the mental impressions, conclusions, opinions or legal theories of an Attorney or other Representative of a Party concerning this action.

K. Unless otherwise specified, the request do not seek disclosure of materials, documents and tangible things prepared in anticipation of litigation of this case, or for another Party, or by or for that other Party's Representative, except upon a showing that the Party seeking discovery has substantial need of the materials in the preparation of his/her case, and that he/she is unable without undue hardship to obtain the substantial equivalent of the materials by other means as required under the rules of civil procedure.

L. However, to the extent that this Bill of Particulars does require disclosure of documents and tangible things prepared in anticipation of litigation, the answers provided, without revealing privileged or protected information, should enable other parties to assess the applicability of the privilege or protection.

M. The reason and grounds for this Bill of Particulars request is lawfully applicable because it has come to the purported Respondent's attention that the alleged claim is done without the true and correct jurisdictional authority, and the purported Respondent hereby respectfully makes this request to obtain sufficient responses from the Claimant, and the Claimant's Agents, Attorneys and Assigns, by way of Affidavit under penalty of perjury, from the true parties of interest, as well as to be provided any and all verifiable relevant documents related to the subject matter of this case, from parties who have personal firsthand knowledge of the lawfully requested information to the questions and averments delineated in this request for Particulars.

N. You are hereby required to serve copies of your answering Affidavits on the undersigned within the prescribed time frame specified herein and no later than (7) days prior to the date set for the return of this Bill of Particulars.

Please respond and/or rebut the following, point by point and line by line, in Affidavit form under penalty of perjury, and provide documentary evidence to support your claim.

## II. REQUESTS FOR ADMISSIONS, INTERROGATORIES AND PRODUCTION OF DOCUMENTS

1. What is the jurisdiction and venue of the alleged causes of action your Client intends to assert?
*Answer*:

2. What provision(s) of the Constitution (federal and/or State) confers your authority to proceed in this jurisdiction against an Ecclesiastic Indigenous Trust entity?
*Answer*:

3. Does your Agency have a Dunn and Bradstreet Number? And if yes, What is your Agency's Duns Number?
Answer:

4. Has your Agency monetized the File Nos. to this Agency action and issued Bonds to be traded by Investors on Wall Street under a CUSIP Number? If yes, what are the Bond and Major and Minor CUSIP numbers?
Answer:

5. Does the word "person" mean the same thing in the statute(s) your Agency says we allegedly violated and does it have the same meaning of a 14th Amendment citizen, *e.g.*, a "corporation"?
*Answer*:

6. If not, why not?
*Answer*:

7. Is your State Agency a "person", *e.g.*, a "corporation" as defined in the 14th Amendment?
*Answer*:

8. If not, why not?
   *Answer*:

9. Where are the Articles for Incorporation registered for your Agency and who is the Registered Agent for Service of Process?
   *Answer*:

10. Who is the alleged injured Party of your Agency's claim and what constitutes the *corpus delecti/scienter* of the alleged charges/violation/crime?
    Answer:

11. What loss of life, liberty, or property is purportedly alleged in the charges/citation of the violation of law as having been caused by the purported Respondent?
    *Answer*:

12. What is the nature and substance of the purported charges/crime/violation alleged in the instant matter?
    [ ] Criminal

    [ ] Civil

    [ ] Quasi-Criminal

    [ } Administrative

    [ ] Other

13. Please identify the law that allows a violation of a commercially legislated statute, code or regulation to be litigated under Common Law and Equity jurisprudence and how the jurisdiction of such a violation can be imposed upon a private Ecclesiastic Indigenous Foreign Express Trust entity.
    *Answer*:

14. Do you deny that my Right and authority to assert a claim to my contractual obligation to the Trust Consortium as an Ecclesiastic Indigenous First Nation Foreign Express Trust entity is tantamount to every American Citizen and in fact can supersede any other non-indigenous Party's claim pursuant to 25 U.S.C. § 194?

*Answer*:

15. Given the fact that the Supreme Court decrees that there are NO limits on the Commerce Clause powers of Congress and that the Commerce Clause powers are "closely related with the Admiralty jurisdiction," and the fact that Admiralty was decried by the Colonists as a "jurisdiction foreign to our Constitution and unacknowledged by our laws" and that State Courts under Common Law jurisdiction are constitutionally barred from exercising Admiralty; is there a factual foundation and legal basis for the Claimant's claim in the instant matter to exercise jurisdiction against our Trusts under Admiralty? (*Wickard v. Filburn*, 317 U.S. 111; *U.S. v. Lopez*, 514 U.S. 549).
*Answer*:

## NOTICE TO RESPOND

## NO RESPONSE OR RESPONSE WITHOUT VALID EVIDENCE IS DEEDED AS SILENCE WHICH EQUATES TO FRAUD AND DOLUS

Please take note of your ***mandatory obligation*** to timely respond and/or rebut the foregoing inquiries, point by point and line by line, verified as true, correct and complete, to be signed, sworn to and notarized in Affidavit form and to provide certified copies of the requested documentation. Your failure to respond and/or rebut each inquiry, point by point and line by line shall constitute a non-response and agreement in full. A general denial and/or a partial rebuttal shall constitute as a non-response and your admission, confession and stipulation in full.

Failure to respond with valid evidence, or an acceptable response or refusal to resolve your purported claim in accordance with Common Law and Equity jurisprudence, will constitute, as an operation of law, the admission of your Client's TACIT PROCURATION to the statements, claims, and nature and cause of your accusation which means your purported claim will constitute as **ESTOPPEL BY ACQUIESCENCE** resulting in a **JUDGMENT BY ESTOPPEL** and a **SELF-EXECUTING JUDGMENT.**

Jurat

_______________________________________________

_ }

State of Pennsylvania }ss: *for identification purposes only*

__________ }

County____________________

Respectfully,

____________________________

Blanche Durand Grube D.M.D.
810 Green Ridge Street
Scranton PA 18509

NOTARY ACKNOWLEDGMENT

On the ____ day of March 2023, before me, personally appeared Blanch Durand Grube, whose name is subscribed upon this instrument and has acknowledged to me that he will execute the same in his authorized capacity. I certify under PENALTY OF PERJURY under the laws of the State of Pennsylvania that the foregoing paragraph is true and correct.

____________________________________

Notary
My Commission Expires____________________

CERTIFICATE OF SERVICE

I, Blanche Durand Grube, hereby certify that on March 20, 2023, I sent a true and correct copy of the foregoing request for PRE-TRIAL DISCOVERY AND INSPECTION of the particulars of the case identified in the within document. The following parties have been given a copy of the foregoing document:

Gregory S. Leiro, Esq.
Commonwealth of Pennsylvania Department of State
P.O. Box 69521
Harrisburg, PA 17106-9521

Shawn Casey, D.M.D.
Pennsylvania State Board of Dentistry
P.O. Box 2649
Harrisonburg, PA 17105-2649

Al Schmidt
302 North Office, Building 401
Harrisburg, PA 17120

Linda L. Dodson
Prothonotary
P.O. Box 2649
2601 North Third Street
Harrisburg, PA 17120

Blanche Durand Grube

# EXHIBIT F

**Private Administrative Default Judgment and Certificate of Service**



Reverend-Juan Jose': Brookins
Trust Protector
Ministerial Indigenous Nation Trust (M.I.N.T.)
c/o 46 Gramatan Avenue, #19
Mount Vernon, New York State [10550] Non-Domestic
(203) 449-9391 / (203) 727-5758
jawambi@yahoo.com

March 20, 2023

---

# PRIVATE ADMINISTRATIVE DEFAULT JUDGMENT AND CERTIFICATE OF CLAIM

---

## TRUST PROTECTOR PRESENTMENT

**A SECURITY – 15 U.S.C.**
**U.S. S.E.C. TRACER FLAG**
**COMMERCIAL AFFIDAVIT OF OBLIGATION**
**NOT A POINT OF LAW**

---

**NOTICE TO AGENT IS NOTICE TO PRINCIPAL**
**NOTICE TO PRINCIPAL IS NOTICE TO AGENT**
**AND THEIR SUCCESSORS AND ASSIGNS**
**WITHOUT RECOURSE**

---

**BE IT HERETOFORE, HERE NOW AND HEREAFTER KNOWN** that the Affiant to this Private Administrative Default Judgment and Certificate of Claim Presentment, Reverend Juan-Jose`: Brookins, (hereinafter, "Trust Protector"/"Witness"/Attorney-in-Fact), is a duly empowered Presenter, Acceptor, and Custodian of Records for this COMMERCIAL AFFIDAVIT of Default Judgment and Certificate of Claim Obligation being made upon the Respondents of the two (2) previous Presentments that were duly sent via Notary Presenter to Gregory S. Leiro, Esq., Shawn Casey, D.M.D., Al Schmidt and Linda L. Dodson by Certified United States Post Office Mail for which none of said Addressee/Respondents have answered in the time frame specified by said Administrative Trustee Presentments at the request of the Board of Trustees for the Ministerial Indigenous Nations Trust (hereinafter, "M.I.N.T."), that is part and parcel of a Consortium of Indigenous Ecclesiastic Common Law Private Foreign Express Trusts for which all responses to the previous Trustee Presentments were to be answered and addressed to the Notary Presenter Witness thusly:



Reverend-Juan Jose': Brookins
Trust Protector
Ministerial Indigenous Nation Trust (M.I.N.T.)

Reverend Juan-Jose`: Brookins
Trust Protector
c/o Karrine: Montaque, Notary Public
P.O. Box 1387
Valley Stream, New York near [11582]
(Non-Domestic/Without United States)

And since the above named Addressee/Respondent(s) of said prior Private Administrative Trustee Presentments failed to timely respond in accordance with a lawful private administrative process for a Bill of Discovery under Common Law, I, Reverend Juan-Jose`: Brookins, the undersigned Trust Protector, do here now and hereafter verify and affirm under penalty of perjury of the laws of the Organic *de jure* United States of America, that I have personal firsthand knowledge of the particulars concerning this 15 U.S. S.E.C. Security Commercial Affidavit of Default Judgment and Claim of Obligation on behalf of M.I.N.T., who is the Real Party-in-Interest Claimant for a Bill of Discovery in this matter against the Addressee/Respondents named herein, and the true and correct Party-in-Interest because our Trust is the owner of the private intellectual property that Dr. Blanche Grube is researching.

Addressee/Respondent's Agency inquest of that private intellectual property research that Dr. Grube is administering has not been justifiably qualified as being within the jurisdiction of the Pennsylvania State Board of Dentistry for the failure of said Agency Representatives to answer the two (2) prior requests for a Bill of Discovery that was duly sent to the Addressee/Respondents, and therefore, such failure to respond acts as an admission under the equitable Doctrine of Tacit Acquiescence because of your failure to answer the two previous Trustee Presentments. Now, as a result of your failure to answer the lawful Pure Bill of Discovery regarding the private intellectual property research which is the subject matter of your adverse Agency action is admittedly not within the jurisdiction and authority of said Addressee/Respondent's Agency and the commercial statutory charges alleged against the private Indigenous Ecclesiastic Trust's research Administrator, Dr. Grube, are equitably estopped pursuant to the Doctrine of Acquiescence. Your silence is acceptance and admittance that

Reverend-Juan Jose': Brookins
Trust Protector
Ministerial Indigenous Nation Trust (M.I.N.T.)

your Agency does not have jurisdiction to pursue any inquest concerning our private intellectual property research.

Pursuant to Federal Rules of Civil Procedure (F.R.C.P.) Rule 17(E), Reverend Juan-Jose`: Brookins, has authority to act in his own personal capacity as the Trust Protector for M.I.N.T., as an Indigenous Ecclesiastic Foreign Express Trust. Therefore, as a matter of law, Reverend Brookins is lawfully authorized to request the details of the subject matter of the government Agency's commercial claim being made against Dr. Grube, who is a research Administrator of our Trust Consortium whose members are part and parcel of a private Indigenous Ecclesiastic Foreign Express Trust that the said Addressee/Respondent(s) were given Notice of our right to protect the intellectual property we are engaged in researching through the Private Administrative Trustee Presentments sent to the Addressee/Respondent(s) over a period of several weeks' time which they did not answer prior to the issuance of this Private Administrative Default Judgment and Certificate of Claim.

Again, as an operation of Common Law through the tacit acquiescence of the Addressee/Respondent(s) failure to answer the two (2) previous lawful private request for a Bill of Particulars, Affiant Trust Protector, Reverend Juan-Jose`: Brookins, now also has the authority to issue this Private Administrative Default Judgment and Certificate of Claim on behalf of M.I.N.T. and by virtue of the constitutional civil rights the Trust Consortium enjoys, which some those rights include, but is not limited to, immunity from any alleged commercial statutory adverse action from any incorporated State Agency.

The Trust Consortium has also been duly contracted with Power of Attorney for Dr. Grube, to assist her with her defense against the State Agency's commercial charges in a Public Forum. It is the Board of Trustees opinion and belief that the charges alleged upon our beloved research Administrator does not apply to the Common Law jurisdictional research activity she engages in the research of a private Indigenous Native American Tribe and Ecclesiastic Foreign Express Trust.

The first Private Administrative Trustee Presentment for Bill of Particulars was sent out on January 30, 2023 and the second one was sent out on March 6, 2023. (See Attached Copy off Certified Return Receipt mailings included herein). After not receiving any response to the prior Trustee Presentments, and the failure to cure the duly noticed default of those Presentments to the Respondents and your Agency, respectively, the issuance of this Default Judgment and Certificate of Claim is ripe for public filing in the State and County Records and publication in the newspaper as a Legal Notice that your Agency has failed to substantiate your right to elicit any charges or claim against our private intellectual property research methodologies that our Trust Consortium engages in accordance with the Common Law which is the only law that is applicable to the jurisdiction of our research.

Consequently, the Respondent's failure, and each of them, to honor the prior Private Administrative Trustee Presentments for a Bill of Particulars and Notice of Default with an Opportunity to Cure in a timely manner have resulted in your Agency's open and active default, and as an operation of law, the issuance of this instant lawful Presentment of a Private Administrative Default Judgment and Certificate of Claim of Commercial Obligation by Affidavit of Trust Protector, Reverend Juan-Jose`: Brookins, constitutes your Agency and the Respondent's herein consent to Judgment of Default by tacit acquiescence and this matter is eligible to be deemed as an efficacious application of the Administrative Process that is suitable to invoke the doctrines of *Res Judicata* and *Stare Decisis* against your Agency's unsubstantiated charges in a Court of competent jurisdiction.

**PLEASE TAKE NOTICE THAT this is a Final Expression in a record of a Private Administrative Process Proceeding. Take due Notice and heed and govern yourself accordingly that this Presentment is intended as a complete and exclusive statement of the terms and conditions of the operations of law governing a PRIVATE SETTLEMENT of the alleged charges/claim implemented by the Claimant under ALL APPLICABLE LAW concerning the Private Bill of Particulars duly served upon the Respondents by the Trustee Protector Claimant between the parties named herein.**



Reverend-Juan Jose': Brookins
Trust Protector
Ministerial Indigenous Nation Trust (M.I.N.T.)

**PLEASE TAKE FURTHER NOTICE THAT certification of this Private Administrative Default Judgment and Certificate of Claim of Commercial Obligation by Affidavit of the Trust Protector is hereby made with explicit reservation of all rights, remedies and immunities, without prejudice and without recourse per U.C.C. §1-308, and the Bill of Rights as prescribed in the Constitution for these United States of America.**

**WHEREAS,** Reverend Juan-Jose`: Brookins, the undersigned Trust Protector for the Consortium of Trusts being unduly interfered with, formally serves this Presentment for a Private Administrative Default Judgment and Certificate of Claim of Commercial Obligation upon the Addressee/Respondent(s), and each of them, for the reasons expressly specified herein concerning the default and dishonor by non-response/non-performance of the terms and conditions of the duly served private Bill of Discovery sent to the Addressee/Respondents by the Trust Protector for the proof of jurisdiction of their charges involving our private intellectual property research and methodology.

**WHEREAS,** for all the good and sufficient reasons explicitly specified herein, Reverend Juan-Jose`: Brookins, does solemnly confirm the fact that Addressee/Respondent's default and dishonor to respond, and/or justify the jurisdiction of their charges/claim is now ripe for equitable estoppel as an operation of law against all non-responding/non-performing parties from the duly served application of a Private Administrative Process Proceeding that has been implemented and is now complete and qualifies as an indisputable record of Default Judgment against the Respondents Agency, the Respondents in particular named herein, and each of them, for purposes of our Trust's remedy and relief from all unsubstantiated charges/claims made upon the Trust Consortium and Tribal government's research.

**WHEREAS,** Reverend Juan-Jose`: Brookins, duly presented to the Addressee/Respondent(s), and each of them, this Private Administrative Default Judgment and Certificate of Claim of Commercial Obligation via United States Post Office Certified Mail No. 7014 0510 0002 2410 1532 on March 20, 2023 to confirm the fact that their Non-Response instituted this Default Judgment and Certificate of Claim and that the postmark of the





service of process of this mailing constitutes their acknowledgment and acceptance of the facts set forth within all the prior Private Administrative Process Presentments from the time having elapsed for their failure to respond thereto.

## DEFAULT JUDGMENT CERTIFICATE OF CLAIM

**WHEREAS**, the Trust Protecter/Witness/Attorney-in-Fact signing below, for the reason of the Respondent's default/dishonor of the Trust Consortium's Private Administrative Bill of Discovery for Settlement of their Charges/Claim against our private intellectual property methodology by non-response and non-performance of said Addressee/Respondent(s) responsibility to answer the lawful requests of the Trust Consortium herein, does hereby publicly and solemnly certify the fact that said Addressee/Respondent(s) have defaulted and dishonored their responsibility and duty under their constitutional oath to respond to the two (2) lawful Private Administrative Trustee Presentments and are therefore equitably estopped from their presumed authority to impose jurisdiction over the civil liberties and unalienable rights of our Trust Consortium's research.

The entire record of the above statement of facts and evidence attached hereto is included in this Default Judgment Certificate of Claim as and will be certified to be used for submission of evidence against your Agency and the Addressee/Respondent(s) named herein for purposes of establishing *prima facie* evidence against any unsubstantiated charges/claim proposed by your Agency in any Court of competent jurisdiction and the Addressee/Respondent(s) named herein will be identified as purveyors of fraud upon the Court in any adverse proceeding against our Trust Consortiums research.

## WITNESS

**IN TESTIMONIAL ATTESTATION HEREOF**, I, Reverend Juan-Jose`: Brookins, Trust Protector and Witness, under my unlimited liability and Commercial Oath, proceeding in good faith, being of sound mind, having firsthand personal knowledge of the facts, law and documents duly served upon the Respondents named herein, hereby affirm, state and declare that





the facts and statements made by me herein are true, correct, completed and not misleading, I hereby make this affirmation under penalty of perjury of the Organic Laws of the *de jure* United States of America, so help me God.

## JURAT

New York State }
}Scilicet:
Queens County }



Verily, I Am

By: Rev. Juan-Jose': Brook
Reverend Juan-Jose`: Brookins
*Authorized Representative*

On 21st, March ____, 2023, before me, KENNETH J. RUDDICK
Notary Public

personally appeared **Reverend Juan-Jose`: Brookins**, who proved to me on the basis of satisfactory evidence a man whose name(s) are subscribed to the within instrument and acknowledged to me that he/they executed the same in his/their authorized capacity(ies), and that by his/their autograph(s) affixed on the instrument the man and woman or person(s) known to me did appear in true character or the entity upon behalf of which the man or woman or person(s) acted, executed the instrument.

WITNESS my hand and official seal.

[signature]
Notary Signature

KENNETH J. RUDDICK
Notary Printed Name
My Commission Expires 1/18/27

KENNETH J. RUDDICK
Notary Public, State of New York
Reg. No. 01RU6234370
Qualified in Suffolk County
Commission Expires January 18, 2027



Reverend-Juan Jose': Brookins
Trust Protector
Ministerial Indigenous Nation Trust (M.I.N.T.)
**THIS CONSTITUTES FULL DISCLOSURE**

***NOTICE:*** *Notary Public is* ***not*** *an attorney licensed to practice law and has not given legal advice or accepted fees for legal advice; provided no assistance in the preparation of the above referenced documents and has* ***no interest*** *in any issue referenced therein. Notary is not a party to this action and is only acting in an authorized capacity as liaison to communications between the parties. Using a notary on this document does not constitute any adhesion, nor does it alter my status in any manner. The purpose for notary is verification and identification only and not for entrance into any foreign jurisdiction.*

**NOTICE:**

The foundation of law, commerce, and the whole legal system consists of "telling the truth, the whole truth and nothing but the truth," either by testimony, deposition, and/or by Affidavit. One sworn to tell the truth is compelled by high principles to protect truth and do nothing to tamper with that truth, either directly or indirectly, either in person or by proxy, or by subornation of an affiant or other person. Any judge or officer or government employee or otherwise who tampers with testimony, deposition, or affidavit is a threat to the Commercial Peace and Dignity of the County, State, and United States of America, and acting in the nature of a foreign enemy agent, committing a Mixed War! **WHOSOEVER** acts against Commercial Affidavits without executing the necessary Commercial Paperwork under affidavit is subject to being charged criminally for fraud. Commercial processes are fundamentally ***non-judicial and pre-judicial.*** No judge, Court, law, or government can invalidate the Commercial Process, *i.e.*, a Private Security Agreement, True Bill, or Lien based upon an Affidavit, because no Third-Party can invalidate an Affidavit of TRUTH. Any action against Tort Claim/Lien/Affidavit process creates MIXED WAR. No one can rebut an affidavit except the proper party (lien debtor) who alone must rebut by affidavit within the established time limits. (Violations of Oaths of Office and constitutions, laws, codes, statutes, *etc.*, equals Mixed War by them; 'foreign agents' in any office, at any level of government. **THEREFORE,** when a Tort Claim/Lien/Affidavit is so flagged in Commerce, it becomes a Federal Document because it can be translated into a Security (by being attached in support to a Commercial Lien UCC-1… filed under necessity). NOTICE: NON-ACCEPTANCE and/or NON-FILING of a Commercial Lien/Affidavit is a Federal Offense.

**LEGAL AUTHORITY:**

Hebrew/Jewish commercial code-corollary, this Hebrew/Jewish commercial process is to Exodus 20:16. This Hebrew/Jewish commercial process is the best-known commercial process in America. The biggest user is the Internal Revenue Service. The Internal Revenue Service uses all three tracking codes. The federal tracking code is the tax-payer's IRS document file number. The next stronger code is the State Recorder's number. The strongest most important and most universal code is the tax-payer's identification number (TIN), also known as the Social Security Number (SSN). The IRS collection process is legitimate however, the IRS assessment/lien process is a commercial fraud because it is not supported by Commercial Affidavits (of Truth) of obligation/commercial liens. The IRS issues only Notices of liens, but has those Notices fraudulently recorded on a "Tax Lien index" at the County Recorder's Office. Notices are not required to contain Commercial Affidavits, but a lawful Lien must contain a Commercial Affidavit with an itemized obligation/damages ledger.



Reverend-Juan Jose': Brookins
Trust Protector
Ministerial Indigenous Nation Trust (M.I.N.T.)

# ATTACHMENTS

**(Copies of Certified Return Receipts)**

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Shawn Casey, D.M.D.
P.O. Box 2649
Harrisonburg, PA 17105-2649

9590 9402 7262 1284 5391 06

2. Article Number (Transfer from service label)

7014 0510 0002 2410 1549

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature
X K. Naik
☐ Agent
☐ Addressee

B. Received by (Printed Name) MAR 27 2023

C. Date of Delivery MAR 27 2023

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

pcfault

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

7014 0510 0002 2410 1549

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

Harrisburg, PA 17105

| | | |
|---|---|---|
| Postage | $ | $7.35 |
| Certified Fee | | $0.00 |
| Return Receipt Fee (Endorsement Required) | | $0.00 / $0.00 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | |

0214
24

Postmark Here

03/23/2023

Sent To Shawn Casey, D.M.D.
Street, Apt. No.; or PO Box No. P.O. Box 2649
City, State, ZIP+4 Harrisonburg, PA 17105-2649

PS Form 3800, August 2006 See Reverse for Instructions

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Gregory S. Leiro, Esq.
P.O. Box 69521
Harrisburg, PA 17106-9521

9590 9402 7479 2055 1821 16

2. Article Number (*Transfer from service label*)

7014 0510 0002 2410 1532

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X K. Naik
☐ Agent
☐ Addressee

B. Received by (*Printed Name*) MAR 27 2023

C. Date of Delivery MAR 2 6 2023

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
sured Mail
sured Mail Restricted Delivery
ver $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

Harrisburg, PA 17106

| | | |
|---|---|---|
| Postage | $ | $7.35 |
| Certified Fee | | $0.00 $0.00 |
| Return Receipt Fee (Endorsement Required) | | $0.00 $0.00 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

0214
24

Postmark Here
MAR 23 2023
03/23/2023

7014 0510 0002 2410 1532

Sent To Gregory S. Leiro, Esq.
Street, Apt. No.; or PO Box No. P.O. Box 69521
City, State, ZIP+4 Harrisburg, PA 17106-9521

PS Form 3800, August 2006 See Reverse for Instructions

7014 0510 0002 2410 1563

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

Harrisburg, PA 17120

| | |
|---|---|
| Postage | $ $7.35 |
| Certified Fee | $0.00 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ |

0214
24

Postmark Here
MAR 23 2023

03/23/2023

Sent To: Linda L. Dodson/P.O. Box 2649
Street, Apt. No.; or PO Box No.: 2601 North Third Street
City, State, ZIP+4: Harrisonburg, PA 17120

PS Form 3800, August 2006 See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Linda L. Dodson
Prothonotary
P.O. Box 2649
2601 North Third Street
Harrisonburg, PA 17120

9590 9402 7262 1284 5391 20

2. Article Number *(Transfer from service label)*
7014 0510 0002 2410 1563

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by *(Printed Name)* Robert Michalski
C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

default

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

# EXHIBIT G

**Defendant Leiro's Motion to Deem Facts Admitted and Enter Default**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**
**BEFORE THE STATE BOARD OF DENTISTRY**

| | |
|---|---|
| **Commonwealth of Pennsylvania Bureau of Professional and Occupational Affairs**<br><br>**vs.**<br><br>**Blanche Durand Grube, DMD**<br>**Respondent** | **Case Nos.** **18-46-02952**<br>**18-46-012074** |

# MOTION TO DEEM FACTS ADMITTED AND ENTER DEFAULT

AND NOW, comes the Commonwealth of Pennsylvania, the Bureau of Professional and Occupational Affairs ("Commonwealth"), by and through its Prosecuting Gregory S. Liero, to file this ***Motion To Deem Facts Admitted And Enter Default***, in accordance with Sections 35.37 and 35.178 of the General Rules of Administrative Practice and Procedure ("GRAPP"), 1 Pa. Code §§ 35.37 & 35.178, and in support thereof avers as follows:

1. On or about December 6, 2022, the Commonwealth filed an Order to Show Cause setting forth allegations that Respondent was subject to disciplinary action pursuant to the Dental Law, act of May 1, 1933, P.L. 216, No. 76, ("Act"), *as amended*, 63 P.S. §§ 120-130L; 63 Pa.C.S. Chapter 31 ("Chapter 31").

2. The Commonwealth served the Order to Show Cause upon Respondent by United States Postal Service certified and first class mail at Respondent's address on file with the board:

Blanche Durand Grube, DMD
810 Green Ridge Street
Scranton, PA 18509

Prothonotary Filed On:
Apr 17 2023 12:03 PM
Department of State

3. On December 27, 2022, the Prothonotary and the Commonwealth received an email from Respondent, then *pro se*, requesting an extension of time to file a response to the Order to Show Cause.

4. The undersigned and Dr. Grube communicated via email from December 27, 2022 through December 29, 2022 wherein Dr. Grube expressed an interest in obtaining counsel, and the undersigned requested that any counsel contact the undersigned within sixty (60) days.

5. On January 7, 2023, the undersigned was contacted by James M. Love, Esquire, an attorney with the Titus Hillis Reynolds Love Law firm out of Oklahoma and the parties agreed on an answer date of February 7, 2023.

6. Attorney Love's appearance was never filed with the Prothonotary.

7. On January 10, 2023, Michael T. Foerster, Esquire, Hearing Examiner issued an order granting Dr. Grube's December 27, 2022, *pro se* request for an extension whereby Respondent was given 30 days from January 10, 2023, to file an answer.

8. On February 8, 2022, Attorney Love emailed the undersigned and indicated that he would not be entering his appearance as counsel for Respondent.

9. On Feburary 10, 2023, Reverened Juan-Jose': Brookins ("Brookins"), an indivual who is not an attorney and not factually involved in the Order to Show Cause, filed a document on Respondent's behalf titled "Private Administrative Trustee Presentment of a Private Bill of Discovery."

10. The Commonwealth treated this filing as an attempt at an Answer and, on February 21, 2023, filed a "Motion to Strike 'Private Administrative Trustee Presentment of a Private Bill of Discovery', filed by Reverend Juan Jose': Brookins."



DOS Prothonotary:
Apr 17 2023

11. Hearing Examiner Foerster granted the Motion, noting that "the Reverend's filing has no place here", and by order dated March 9, 2023, directed Respondent to "file an answer consistent with administrative rules either under her own signature or that of a licensed attorney as described in 1 Pa. Code § 31.22. Said answer shall be filed within thirty days."

12. On March 10, 2023, Brookins filed a second document, entitled "2nd Private Administrative Trustee Presentment By Way of Affidavit From the Office of The Trust Protector."

13. The Commonwealth did not respond to Brookins' March 10, 2023 filing.

14. On March 28, 2023, Brookins filed a third document, entitled "Private Adminstrative Default Judgment and Certificate of Claim."

15. The Commonwealth did not respond to Brookins' March 28, 2023 filing.

16. On April 6, 2023, Respondent, under her own signature, filed a motion titled "Pre-trial Discovery and Inspection Pursuant to 234 Pa. Code Rule 573 (A)."

17. Respondent's April 6, 2023 motion, through various questions, seeks to have the Commonwealth explain the basis of its jurisdiction to bring charges against Respondent.

18. The motion does not specifically admit or deny the allegations or charges in the Order to Show Cause, nor does it set forth facts relied upon, as required by the General Rules of Administrative Practice and Procedure ("GRAPP") governing answers to orders to show cause. See 1 Pa. Code § 35.37.

19. Thirty (30) days from Hearing Examiner Foerster's March 9, 2023 order was April 8, 2023, a Saturday, therefore the thirtieth day should be treated as Monday, April 10, 2023.

20. As of the date of this filing, neither Respondent nor counsel on her behalf have filed a written answer to the order to show cause that complies with Hearing Examiner Foerster's Orders and the GRAPP. See 1 Pa. Code §§ 31.21, 31.22, 31.23, 35.37.



DOS Prothonotary
Apr 17 2023

21. By failing to file an answer within the time permitted, Respondent is in default and the Board may deem the factual allegations contained in the OSC admitted pursuant to Rule 35.37 of GRAPP, 1 Pa. Code § 35.37.

***WHEREFORE***, the Commonwealth respectfully requests that the Board enter a default against Respondent, deem the factual allegations set forth in the OSC admitted, and issue an adjudication and order imposing such discipline as the Board deems appropriate.

Respectfully Submitted,

/s/ *Gregory S. Liero*

Gregory S. Liero
Prosecuting Attorney
Commonwealth of Pennsylvania
Department of State
P.O. Box 69521
Harrisburg, PA 17106-9521
(717) 783-7200

DATE: 04-17-2023



DOS Prothonotary
Apr 17 2023

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**
**BEFORE THE STATE BOARD OF DENTISTRY**

| | |
|---|---|
| **Commonwealth of Pennsylvania Bureau of Professional and Occupational Affairs** <br> **vs.** <br> **Blanche Durand Grube, DMD** <br> **Respondent** | **Case Nos. 18-46-02952** <br> **18-46-012074** |

## CERTIFICATE OF SERVICE

I, Gregory S. Liero, hereby certify that I have this 17th day of April, 2023 caused a true and correct copy of the foregoing ***Motion To Deem Facts Admitted And Enter Default*** to be served upon all parties of record in this proceeding in accordance with the requirements of Section 33.31 of the General Rules of Administrative Practice and Procedure, 1 Pa. Code § 33.31 (relating to service by the agency).

**FIRST CLASS MAIL, POSTAGE PREPAID:**

Blanche Durand Grube, DMD
810 Green Ridge Street
Scranton, PA 18509

*/s/ Gregory S. Liero*
Gregory S. Liero
Prosecuting Attorney
Commonwealth of Pennsylvania
Department of State
Office of Chief Counsel
P.O. Box 2649
Harrisburg, PA 17105-2649
(717) 783-7200

DOS Prothonotary
Apr 17 2023

# EXHIBIT H

**Two Business Cards from the Special Agents of the Pennsylvania State Attorney General's Office**

ATTORNEY GENERAL JOSH SHAPIRO
COMMONWEALTH OF PENNSYLVANIA

PHILLIP HOLBROOK
Special Agent

Bureau of Criminal Investigations
680 Baltimore Drive
Wilkes Barre, PA 18702

Phone: 570-820-4829
pholbrook@attorneygeneral.gov

OFFICE OF ATTORNEY GENERAL
COMMONWEALTH OF PENNSYLVANIA

RALPH M ZEZZA
Special Agent

Bureau of Criminal Investigations
680 Baltimore Drive
Wilkes Barre, PA 18702

Cell Phone: 570-417-2324
rzezza@attorneygeneral.gov

# EXHIBIT I

**Dr. Grube's Answer to State Board's Order to Show Cause**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**
**BEFORE THE STATE BOARD OF DENTISTRY**

| | |
|---|---|
| **Commonwealth of Pennsylvania, Bureau of Professional and, Occupational Affairs,** | **File Nos. 18-46-02952 18-46-012074** |

**v.**

**Blanche Durand Grube, D.M.D.,**

**Respondent.**

**RESPONDENT-IN-ERROR'S ANSWER**
**TO PENNSYLVANIA STATE BOARD OF DENTISTRY'S ORDER TO SHOW CAUSE**

**COMES NOW**, Respondent-in-Error, Dr. Blanche Durand Grube, D.M.D., to hereby respond to the Pennsylvania State Board of Dentistry's Order to Show Cause with explicit reservations of all rights, privileges and immunities under the Organic Laws of the Constitution for these United States of America and the *de jure* Pennsylvania State Republic, without prejudice to any other laws for which I may be subject to or enjoy the benefit of utilizing in its proper jurisdictional purview and application. As I am sure the proponents of the Rules and Regulations of the State Board of Dentistry's Administrative Agency Public Servant Officials are aware, because you have taken a constitutional oath to uphold the rights of all American State Nationals and citizens of the corporate United States in accordance with the constitutional law specified herein as the controlling law over all Administrative Agency oversight of the profession and practice of Dentistry in this State, I accept your oath as an express contractual obligation by you to perform the duties of your Office in accordance with the Constitution, both State and federal, to its utmost applicability.

However, that oversight of statutory Agency Rules and Regulations do not apply to private membership associations that does private intellectual property research under the

purview of such associations, especially when it is under the umbrella of a ecclesiastic indigenous ministerial research Trust which I have contracted with Ministerial Indigenous Nations Trust (M.I.N.T) to perform. I have an unalienable right to contract under Article I, Sections 10, Clause 1 of the Constitution and the ministerial work and research I do for M.I.N.T. and the ecclesiastic indigenous Trust Consortium M.I.N.T. is part and parcel of that private membership association. And under the First Fourteenth Amendments of the *de jure* Organic Constitution for these United States of America and equivalent provisions of the Common Law under the Pennsylvania State Constitution which provides a description of the unalienable rights of an American State National and U.S. citizen who has the right to associate with fellow members of their private communal organizations and offer benefits and services that are outside of the jurisdiction, venue and authority of the State, and/or federal agencies. What would be considered a civil infraction or criminal act outside of the private membership association, i.e., unauthorized practice of law or medicine, would be perfectly legal and lawful within the auspices of a private association.

Contrary to what Ronald K. Rouse, D.M.D., J.D. wrote about Dental Law 63 P.S. §§ 120-130i on page 2 of his Order to Show Cause, the research and ministerial work I do is not subject to the Rule and Regulations of the Pennsylvania Board of Dentistry and there is nothing in the State Board Agency Charging Instrument issued by Attorney Gregory S. Leiro, Esq. upon me that specifically identifies how the ministerial intellectual property research work I do for the M.I.N.T. Trust Consortium actually applies to those charges, so the presumptive assertion that this Board has jurisdiction over the private intellectual property research that I do is unsubstantiated, and in fact, said research is beyond the scope and authority of the Pennsylvania State Board of Dentistry, and no one from the State Board has unequivocally refuted the validity

of the fact that I have expressed in prior pleadings I have submitted to this Tribunal which clearly explained that I have a right to do research for a private ecclesiastical indigenous Trust Consortium as an American State National and contracted member of the Trust Consortium, so it matters not whether I have a license from the State Board, because I am not functioning in my capacity as a Dentist when I perform the research that I do for the Trust Consortium.

On March 20, 2023, I sent you and your Agency a Pre-Trial Discovery and Inspection Bill of Particulars pursuant to 234 PA. Code Rule 573(A) that still has not been answered by anyone in your Agency who purports to have a reason to bring charges against me in this Administrative Agency forum. I think it a bit unfair and discriminatory that your Agency would Order me to Show Cause when the proponents of your Agency's charges have not been forthcoming with proof of their allegations in its most definitive relation of how the nature and substance of the charges, they have alleged actually is applying to the work that I do for the ecclesiastic indigenous Trust Consortium. And just making reference to that, the fact that I have a license your Agency issues does not automatically have anything to do with what your Agency has authority to regulate over the private intellectual property research that I do.

Since no one in your Agency has provided any definitive response to the Bill of Particulars that I sent prior to Ronald K. Rouse, D.M.D., J.D. issue a Order compelling me to Show Cause when I already have shown cause in every pleading to this Agency Tribunal explaining in no uncertain terms that when I am doing research for the Trust Consortium I am not involved in any Dentistry work that would come under the purview of your Agency, and it would seem that your failure to answer my discovery requests to justify how that work I do falls under your Agency's authoritative purview would qualify as your lack of authority to proscribe me from doing the intellectual property research I do for the Trust Consortium. In other words,

your inability to justify lawful authority on the record is an admittance to the fact that you do not have any jurisdictional authority over what I have privately contracted to perform for the ecclesiastic indigenous Trust Consortium and your Agency cannot assert any statutory charge it does not have authority to propagate.

This is clearly evident from what you specify as the governing law of your authority in your Order to Show Cause where you specify Dental Laws that the Board has jurisdiction over as it relates to my license and the practice of dentistry, but the overarching question of your jurisdiction does not have anything to do with my constitutional right to contract with an ecclesiastic indigenous Trust Consortium to do private intellectual property research. The overarching question of your jurisdiction goes to your authority over licensing the practice of Dentistry, not over me my right to personally contract with a private Trust entity to do intellectual research that is not in the purview of your Agency, and I have formally made an official challenge to the jurisdiction of this Board's authority to level charges against me personally for the intellectual property research work I do for a private ecclesiastic indigenous Trust Consortium under a constitutionally protected contract agreement that no one in your Agency has proven on the record that you have the authority to assert jurisdiction over me for doing just that.

I am sure that the legal experts of your Agency who are the proponents of the charges being levelled against are fully aware that in the clearly established precedent case law rendered in *Hagans and Lavine*, 415 U.S. 533 the Court's ruling stipulated that "The law requires proof of jurisdiction to appear on the record of the Administrative Agency and all administrative proceedings." Also, in *Hagans v. Lavine* the Court held that "A judgment rendered by a Court [or Agency Tribunal] without personal jurisdiction over the Defendant is void. It is a nullity."

There is no proof of jurisdiction on the record of your Agency Administrative action over me as it relates to the research that I am involved in with the Trust Consortium that would give your Agency the authority to promulgate charges against me or my license because your Agency has not provided me with such proof on the record by answering my Pre-Trial Discovery and Inspection Bill of Particulars. This Agency Administrative action against me is just stating the presumptive fact that because your Agency has authority to issue and regulate my license that alone is the basis for your charges but that alone does not qualify as justification to assume jurisdiction over me and the private intellectual property research that I am doing**. It must be proven on the record that all jurisdictional facts related to the jurisdiction are being asserted.** (*Latana v. Hopper*, 102 F. 2d 188; Chicago v. New York, 37 F. Supp. 150)**. And that has not been done yet.**

Again, it is a well settled maxim of law that "Once jurisdiction is challenged, the Court cannot proceed when it clearly appears that the Court lacks jurisdiction, the Court has no authority to reach merits, but rather, should dismiss the action." (*Melo v. U.S.*, 505 F. 2d 1026). And again, **no one from your Agency has definitively responded to the Pre-Trial Discovery and Inspection Bill of Particulars that I served on Attorney Gregory S. Leiro, Esq., to unequivocally prove how the charges being leveled against me actually apply to me and the private intellectual property research that I do, so there is no jurisdictional facts related to the jurisdiction on the record thus far**, and it therefore stands to reason that this Agency administrative action should be dismissed forthwith, with prejudice.

**WHEREFORE**, for the good and sufficient reasons set forth herein, the Respondent-in-Error, Dr. Blanche Durand Grube, hereby respectfully moves this Administrative Agency Tribunal for an immediate and definitive dismissal of the inapplicable and inappropriate adverse

charges being brought against me, and that those charges be dismissed with prejudice, and that the Administrative Law Judge grant to me such other and further relief as to this Agency Tribunal deems just, fair and proper.

Date: June 21, 2023.
Pennsylvania State, Lackawanna County.

Respectfully,

Dr. Blanche Durand Grube, D.M.D
810 Green Ridge Street
Scranton, P.A. 18509

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**
**BEFORE THE STATE BOARD OF DENTISTRY**

**Commonwealth of Pennsylvania,**
**Bureau of Professional and,**
**Occupational Affairs,**

**File Nos. 18-46-02952**
**18-46-012074**

**v.**

**Blanche Durand Grube, D.M.D.,**

**Respondent.**

# AFFIDAVIT
## OF RESPONDENT-IN-ERROR
## Dr. Blanche Durand Grube
## IN SUPPORT OF
## RESPONSE TO ORDER TO SHOW CAUSE

## JURAT

Pennsylvania State Republic }
}ss:
Lackawanna County }

I, Dr. Blanche Durand Grube, hereby affirm under penalty of perjury of the laws of the de jure United States of America and Pennsylvania State Republic the following statements:

I, Dr. Blanch Durand Grube, am of the age of majority with full control of all my mental, emotional, physical and spiritual faculties, declare and confess that the statements made by me in the foregoing response to the State Board of Dentistry's Order to Show Cause are true, correct and complete to the best of my knowledge and belief, and as to those statement fore which I have no personal knowledge, I believe that they are true, so help me, God.

Respectfully Submitted,

____________________________
Dr. Blanche Durand Grube, D.M.D.

Sworn and Subscribed Before Me This
_____ Day of June 2023.

____________________________
Notary
My Commission Expires___________

**CERTIFICATE OF SERVICE**

I, Blanche Durand Grube, D.M.D., hereby certify that on May 2, 2023, I sent a true and correct copy of the foregoing Objection to the Motion to Deem Facts Admitted and Enter Default via first class United States Post Office Mail to the following:

Gregory S. Leiro, Esq.
Prosecuting Attorney
Commonwealth of Pennsylvania Department of State
P.O. Box 69521
Harrisburg, PA 17106-9521

Ronald K. Rouse, D.M.D., J.D.
Pennsylvania State Board of Dentistry
P.O. Box 2649
Harrisonburg, PA 17105-2649

Jennifer Unis Sullivan, D.M.D., J.D.
Pennsylvania State Board of Dentistry
P.O. Box 2649
Harrisonburg, PA 17105-2649

Shawn Casey, D.M.D.
Chairperson
Pennsylvania State Board of Dentistry
P.O. Box 2649
Harrisonburg, PA 17105-2649

Al Schmidt
Acting Secretary of State
302 North Office, Building 401
North Street
Harrisburg, PA 17120

Linda L. Dodson
Prothonotary
P.O. Box 2649
2601 North Third Street
Harrisburg, PA 17120

______________________________
Dr. Blanche Durand Grube

Cm # 7021 0350 0001 7406 1627 AG

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**
**BEFORE THE STATE BOARD OF DENTISTRY**

**Commonwealth of Pennsylvania,**
**Bureau of Professional and,**
**Occupational Affairs,**

**File Nos. 18-46-02952**
**18-46-012074**

**v.**

**Blanche Durand Grube, D.M.D.**

**Respondent.**

**RESPONDENT'S OBJECTION TO STATE BOARD OF DENTISTRY'S ORDER GRANTING MOTION TO DEEM FACTS ADMITTED AND ENTER DEFAULT BY WAY OF PLEA IN ABATEMENT**

**COMES NOW** the Respondent-in-Error, Dr. Blanche Durand Grube, to hereby formally make a continuing objection to the State Board of Dentistry's Order granting Attorney, Gregory S. Leiro's Motion to Deem Facts Admitted and Enter Default in this instant action on the following grounds. The granting of this is arbitrary and capricious Order is void on its face because the State Board of Dentistry's Administrative Tribunal has not verifiably established jurisdiction on the subject matter and person that is being subjected to this adverse Administrative action. I, Dr. Grube, am engaged in a contractual relationship with the ecclesiastic indigenous foreign express Trust Consortium that is doing private intellectual property research from a religious ministry, and it is being done in accordance with the constitutionally protected unalienable right to contract.

On or about June 17, 2023, Dr. Grube duly served the Prosecuting Attorney, Gregory Leiro, with a Pre-Trial Discovery and Inspection Bill of Particulars pursuant to 234 PA. Code Rule 573(A) for her to ascertain exactly what the true substance and nature of the charges being leveled against her was that was never answered by the Commonwealth Attorney. Dr. Grube



DOS Prothonotary:
Oct 19 2023

Cm # 7021 0350 0001 7406 1627

gave the Commonwealth Attorney notice that she was not subject to the State's regulatory statutes under the private right to contract with the Trust Consortium because the private intellectual property research I was conducting did not fall within the purview of the State regulatory Board, and unless the Board' Attorney can specifically identify what I was doing for the Trust Consortium distinctly fell within the jurisdictional authority of the State Board of Dentistry then the Commonwealth Attorney had no right to interfere with the private contractual relationship that I am engaged in with the Trust Consortium.

There is no record of the State's Attorney responding to the Bill of Particulars that Dr. Grube duly filed with the Board of Dentistry's Agency Tribunal that specifically requested the Commonwealth provide the substance and nature of their charges as it relates with the private intellectual property research I am performing, and how those charges are enforceable under the Common Law right to contract, all of which the Commonwealth Attorney did not answer, and that effectively means that the State Board of Dentistry's Order is void because the issue of jurisdiction in accordance with due process has not been resolved.

In that Bill of Particulars that I duly sent to the Commonwealth Attorney, I specified that "I need a more specific and definitive explanation of the charges so that I can answer in the form and manner that the Order to Show Cause requires." And Attorney Leiro did not provide the information that I requested in my Bill of Particulars to be able to provide a definitive answer to the purported accusations being alleged by him, so for the State Board of Dentistry to grant the Commonwealth's Attorney's Motion that any facts be deemed admitted when I did not have the information, I needed to answer the Order to Show Cause is a denial of due process.



DOS Prothonotary:
Oct 19 2023

Cm # 7021 0350 0001 7406 1627

It is a matter of clearly established law that "A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." (Pennoyer v. Neff, 95 U.S. 714, 732-733 [1878]).

"A void judgment is a simulated judgment devoid of any potency because of jurisdictional defects only in the Court rendering it, and defect of jurisdiction may relate to a Party or parties in the subject matter, the cause of action, the question(s) to be determined, or relief to be granted." (Davidson Chevrolet, Inc., v City and County of Denver, 330 P. 2d. 1116; *certiorari* denied, 79 S. CT. 609; 359 U. S. 926; 3 L. Ed. 2d. 629 [Colo. 1958]).

For the foregoing reasons specified above this continuing objection I hereby give this Administrative Tribunal, and all Parties that are participating in its errant unsubstantiated jurisdictional purview, that it is also being submitted in opposition to the State Board of Dentistry's Order granting the Commonwealth's Attorney, Gregory S. Leiro's, Motion as a plea in abatement.

A plea in abatement is a pleading made to overthrow an action in consequence of some error committed in bringing or conducting it when the Plaintiff is not forever barred from bringing another action. (1 Chit. Pl. 434). Abatement is by plea. There can be no demurrer in abatement. (Willes' Rep. 479; Salk. 220).

Pleas in abatement will be considered as relating; 1) to the jurisdiction of the Court; 2) to the person of the Plaintiff; 3) to that of the Defendant; 4) to the Writ (or Order); 5) to the qualities of such pleas; 6) to the form of such pleas; 7) to the Affidavit of the truth of pleas in abatement.

ABATEMENT, as a chancery practice, is a suspension of all proceedings in a suit, from the want of proper parties capable of proceeding therein. It differs from an abatement at-law in



DOS Prothonotary:
Oct 19 2023

Cm # 7021 0350 0001 7406 1627 [initials]

this, that in the latter the action is in general entirely dead, and cannot be revived, (3 Bl. Com. 168) but in the former, the right to proceed is merely suspended, and may be revived by a Bill of Revivor. (Mitf. Eq. Pl. by Jeremy, 57; Story, Eq. Pl. Sec. 354).

**MANDATORY JUDICIAL COGNIZANCE OF LAW AND ADJUDICATIVE FACTS**

I hereby give the State Board of Dentistry and its Commonwealth Attorney notice of its duty to take judicial cognizance of the law and supporting adjudicative facts that it must adhere to as a matter of law under their respective oaths of office.

1. Under the canon of Judicial Cognizance, the judge is BOUND to act. (*See* Black's Law, 6th Ed, pg. 847).
2. Judicial Notice or knowledge upon which a judge is bound to act without having it proved in evidence.
3. Judicial Notice. (pg. 849) is the act by which a Court, in conducting a trial, or framing its decision, will, of its own motion or on request of a Party, and without the production of evidence, recognize the existence and truth of certain facts, having a bearing on the controversy at bar.
4. Definition of Void Judgment: any judgment which a Court renders while lacking jurisdiction, either of the subject matter or the parties.

* Wahl v. Round Valley Bank 38 Ariz, 411, 300 P. 955(1931);
* Tube City Mining & Milling Co. v. Otterson, 16 Ariz. 305, 146p 203(1914); and
* Millken v. Meyer, 311 U.S. 457, 61 S. CT. 339,85 L. Ed. 2d 278 (1940).

5. Subject matter jurisdiction can never be presumed, waived, or constructed, even by mutual consent of the parties, and it has two parts:

(1) the statutory or Common Law authority for the Court to hear the case, and



DOS Prothonotary:
Oct 19 2023

Cm # 7021 0350 0001 7406 1627 BG

(2) the appearance and testimony of a competent fact witness - in other words, sufficiency of pleadings.

6. "The law requires proof of jurisdiction to appear on the record of the Administrative Agency and all administrative proceedings." (Hagans v Lavine, 415 U. S. 533).

7. When we examine a judgment, the following indices tell us whether a Court had subject matter jurisdiction. Successful litigants will know each and every one of them by heart. Subject matter jurisdiction usually fails because of one of these reasons:

(1) Defective petition filed.

(2) Fraud committed in the procurement of jurisdiction. (Fredman Brothers Furniture v. Dept. of Revenue, 109 Ill. 2d 202, 486 N.E. 2d 893(1985)).

(3) Fraud Upon the Court. (In re: Village of Willowbrook, 37 Ill, App. 3d 393(1962)).

(4) The judge does not follow statutory procedure. (Armstrong v. Obucino, 300 Ill 140, 143 (1921)).

(5) Unlawful activity of a judge. (Code of Judicial Conduct).

(6) **Violation of due process**. (Johnson v. Zerbst, 304 U.S. 458, 58 S. Ct. 1019(193; Pure Oil Co. v. City of Northlake, 10 Ill.2d 241, 245, 140 N.E. 2d 289 (1956); Hallberg v Goldblatt Bros., 363 Ill 25 (1936), (If the court exceeded its statutory authority; Rosenstiel v. Rosenstiel, 278 F. Supp. 794 (S.D.N.Y. 1967)).

(7) **No proper pleadings presented a justiciable issue to the Court**. (Ligon v. Williams, 264 Ill. App 3d 701, 637 N.E. 2d 633 (1st Dist.1994)).

(8) **A Complaint states no cognizable cause of action against that Party**. (Charles v. Gore, 248 Ill App. 3d 441, 618 N.E. 2d 554 (1st. Dist. 1993)).



DOS Prothonotary:
Oct 19 2023

Cm # 7021 0350 0001 7406 1627

(9) **A judge based an order/judgment on a void order/judgment.** (Austin v. Smith, 312 F 2d 337, 343(1962); English v. English, 72 Ill. App. 3d 736, 393 N.E. 2d 18 (1st Dist. 1979).

**Notice About Loyalty Oaths and Appointments:**

**(10) The judge validly holds office if and only if a copy of the judge's oath of office exists, and I can rightly demand that the proper final oath sworn or affirmed upon taking office situates in the judge's chambers.**

**(11) I can go to his/her office and demand to see a copy of his oath of office at any time.**

**(12) The federal laws covering judges and other Public Officials are to be found at 5 U.S.C. § 3331, 28 U.S.C. § 543, and 5 U.S.C. § 1983.**

**(13) A judge trespasses upon the Court unless he complies with all of the provisions of relevant law. The States typically have similar laws.**

**(14) Once proven as a trespasser upon the Court (upon the law) not one of his/her judgments, pronouncements or orders have validity. All constitute nullities and have void status and the trespasser becomes personally liable without immunity.**

**(15) I hereby demand to see the State Board of Dentistry's Counsel, Ronald K. Rouse, Christina Townley, Board Administrator, and Gregory S. Leiro's oath of office to confirm the validity of their Standing to assert any charges on behalf of the Commonwealth against me in their official capacity.**

---

**Reasons to Vacate Void Judgments - Lack of Jurisdiction**

---



DOS Prothonotary:
Oct 19 2023

Cm # 7021 0350 0001 7406 1627

7. And once I have determined that the Public Officers who have instigated and presumed jurisdiction over me in this case without jurisdiction being established on the record are proven to be bound by oath to their office in this case, I will hold them to their oath and execute my right to a recourse for their violation of my rights in their personal individual capacity by their undue infringement/trespass of my unalienable right to contract under color of state law.

8. "Judgments entered where the Court lacked either subject matter or personal jurisdiction, or that were otherwise entered in violation of due process of law, must be set aside." (Jaffe and Asher v. Van Brunt, 158, F.R.D. 278 [S.D.N.Y. 1994]).

9. The Commonwealth Attorney's failure to answer my lawful request for discovery in a Bill of Particulars before the Administrative Tribunal granted his Motion is in violation of due process and clearly established law as decided in United States v. Horton R. Prudden, 424 F. 2d 1021 (No. 28140. United States Court of Appeals, Fifth Circuit. April 1970), which held that "Silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading." (*See also*, U.S. v. Tweel, 550 F. 2d 297).

10. The granting of the Commonwealth Attorney's dispositive Motion to Deem Facts Admitted and enter a Default against me is not only equated to be procured by fraud but is void where there is no proof of *in persona* jurisdiction over me or established on the record over the substance and nature of the research I am doing under contract with the Trust Consortium.



DOS Prothonotary:
Oct 19 2023

Cm # 7021 0350 0001 7406 1627 BA

11. In regard to Courts of inferior jurisdiction, "...if the record does not show upon its face the facts necessary to give jurisdiction, they will be presumed not to have existed." (Norman v. Zieber, 3 Or at 202-03).
12. The question of jurisdiction in this case goes to whether this State Board Administrative Tribunal has jurisdiction over a private ecclesiastic indigenous foreign express Trust Consortium's contractual relationship with me to do spiritual intellectual research that is overseen by an Institutional Review Board (IRB).
13. There is no substantial legal authority that definitively affords the Commonwealth State Board of Dentistry to impose its jurisdictional authority over me or the Trust Consortium using state law legislative rules, regulations and codes in the record of this case.
14. "A judgment rendered by a Court without personal jurisdiction over the Defendant is void. It is a nullity." (Sramek v. Sramek, 17 Kan. App 2d 573, 576-7, 840 P. 2d 553 (1992) rev. denied 252 Kan. 1093(1993)).
15. "Relying on Statutory law, as it has been held that at any time any Party relies on or enforces a statute, they possess no judicial power. A judge ceases to sit as a judicial Officer because the governing principles of Administrative Law provides that Courts are prohibited from substituting their evidence, testimony, record, arguments and rationale for that of the Agency. Additionally, Courts of record are prohibited from their substituting their judgments for that of the Agency. (Aisi v. U.S., 568 F. 2d 284).
16. "...Judges who become involved in the enforcement of mere statutes (civil or criminal in nature) act as mere 'Clerks' of the involved Agency." (K.C. Davis, Administrative Law, Ch. 1, CTP West's 1965 Ed.).



DOS Prothonotary:
Oct 19 2023

C m # 7021 0350 0001 7406 1627

17. "It is basic in our law that an Administrative Agency may act only within the area of jurisdiction marked out for it by law. If an individual does not come within the coverage of the particular Agency's enabling legislation the Agency is without power to take action which affects him." (Endicott v. Perkins, 317 U.S.501).

## CONCLUSION

I have made an extensive unequivocal explicit application of the facts, the law and my rights as it concerns what my relationship with the Trust Consortium is and that my responsibilities to the contractual obligations I have committed myself to perform with them in the spiritual intellectual property research that I do for the Trust Consortium that is owned and controlled by the Trust Consortium, not me, so the methodologies of the ministerial work that I do is done under the auspices of the of the Trust Consortium. The performance of the research activity that I do for the Trust Consortium is not subject to the statutory authority of the State Board of Dentistry and the Attorney for the Commonwealth has not proffered any evidence or testimony from someone with firsthand personal knowledge to the contrary on the Agency Tribunal's record, which means the presumption of jurisdiction has not been established in this Agency action and any Order or decision rendered thereby from any purported judicial Officer is void on its face as a matter of law.

**WHEREFORE,** I hereby make a formal continuing objection by way of a plea in abatement to the Board of Dentistry's Order granting Commonwealth Attorney, Gregory S. Leiro's Motion to Deem Facts Admitted and Enter a Default against me because the Commonwealth's action is constitutionally repugnant 1) to the jurisdiction of the Court; 2) to the person of the Plaintiff; 3) to that of the Defendant; 4) to the Writ (or Order); 5) to the qualities of such pleas; 6) to the form of such pleas; 7) to the Affidavit of the truth of pleas in abatement and



DOS Prothonotary:
Oct 19 2023

Cm # 2021 0350 0001 7406 1627

a violation of my fundamental and procedural right to due process of law. And resultantly, the Order granting the Commonwealth Attorney's Motion is void on its face.

Therefore, for the justifiable lawful reasons specified by me herein it stands to reason that this whole case should be abated with prejudice, forthwith, and all other prior pleadings and proceedings held by this Agency Tribunal without jurisdiction established on the record must be expunged from the State record as it relates to me. Should the Public Officials who have taken part in this unjustified adversarial action, that is actually against their oath to uphold the Constitution for the United States of America and Pennsylvania State, refuse to accept and honor this objection by way of plea in abatement and persist in violating my unalienable right to perform in accordance with the contract I have with the Trust Consortium without having established their jurisdictional authority to do so, then I hereby give notice to those Officials who fail to honor their oaths and uphold and respect my rights that they will become Party Defendants in a federal action for deprivation of rights under color of state law.

Again, I hereby respectfully demand that your Agency Officials who are part of this errant unjustified adverse action against me show me the oaths of office that you have taken and sustain my objection to your Agency's Order by rescinding it and immediately abate this case with prejudice on the grounds of Lack of Jurisdiction and violation of due process, whereupon I was denied the discovery I lawfully requested in order to understand the nature, cause and substance of the charges being leveled against me that, for all intents and purposes, are a misrepresentation of my true role and work that I perform for the Trust Consortium where said misrepresentation has culminated in a void judgment of any rulings promulgated by the governing authority figure of this Agency Tribunal.



DOS Prothonotary:
Oct 19 2023

Cm # 7021 0350 0001 7406 1627 BG

I also demand that this be reviewed before a Court of competent jurisdiction which is fully knowledgeable of first nation indigenous and ecclesiastical law, and I also respectfully request that such other and further relief be granted to me for the inconvenience and unsettling intrusion of the exercise of my constitutional right to be free to contract.

Date: Pennsylvania State, Lackawanna County.
August 4, 2023.

Respectfully Submitted,

Rev. Blanche D. Grube DMD

Rev. Dr. Blanche Durand Grube, D.M.D
810 Green Ridge Street
Scranton, P.A. 18509



DOS Prothonotary:
Oct 19 2023

Cm # 7021 0350 0001 7406 1627

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**
**BEFORE THE STATE BOARD OF DENTISTRY**

**Commonwealth of Pennsylvania,**
**Bureau of Professional and,**
**Occupational Affairs,**

**File Nos. 18-46-02952**
**18-46-012074**

**v.**

**Blanche Durand Grube, D.M.D.,**

**Respondent.**

**AFFIDAVIT**
**of Dr. Blanche Durand Grube**
**IN SUPPORT OF**
**OBJECTION TO ORDER GRANTING MOTION TO DEEM FACTS ADMITTED AND ENTER DEFAULT AGAINST RESPONDENT-IN-ERROR BY WAY OF PLEA IN ABATEMENT**

JURAT

Pennsylvania State Republic }
}ss:
Lackawanna County }

I, Dr. Blanche Durand Grube, hereby affirm under penalty of perjury of the laws of the *de jure* United States of America and Pennsylvania State Republic the following statements:

I, Dr. Blanche Durand Grube, am of the age of majority with full control of all my mental, emotional, physical and spiritual faculties, declare and confess that the statements made by me in the foregoing objection and plea in abatement to the State Board of Dentistry's Order granting the Motion to Deem Facts Admitted and Enter Default are true, correct and complete to the best of my knowledge and belief, and as to those statement fore which I have no personal knowledge, I believe that they are true, so help me, God.

Respectfully Submitted,

Blanche D. Grube DMD

Dr. Blanche Durand Grube, D.M.D.

Sworn and Subscribed Before Me This
_____ August 8, 2023

[signature]
Notary

My Commission Expires June 1 2027

Commonwealth of Pennsylvania - Notary Seal
Lain Kaplan, Notary Public
Lackawanna County
My commission expires June 1, 2027
Commission number 1435423



DOS Prothonotary:
Oct 19 2023

CM # 7021 0350 0001 2406 1627 BG.

**CERTIFICATE OF SERVICE**

I, Blanche Durand Grube, D.M.D., hereby certify that on 8/4/, 2023, I sent a true and correct copy of the foregoing Objection to the Motion to Deem Facts Admitted and Enter Default via first class United States Post Office Mail to the following:

Gregory S. Leiro, Esq.
Prosecuting Attorney
Commonwealth of Pennsylvania Department of State
P.O. Box 69521
Harrisburg, PA 17106-9521

Ronald K. Rouse, D.M.D., J.D.
Pennsylvania State Board of Dentistry
P.O. Box 2649
Harrisonburg, PA 17105-2649

Jennifer Unis Sullivan, D.M.D., J.D.
Pennsylvania State Board of Dentistry
P.O. Box 2649
Harrisonburg, PA 17105-2649

Shawn Casey, D.M.D.
Chairperson
Pennsylvania State Board of Dentistry
P.O. Box 2649
Harrisonburg, PA 17105-2649

Al Schmidt
Acting Secretary of State
302 North Office, Building 401
North Street
Harrisburg, PA 17120

Linda L. Dodson
Prothonotary
P.O. Box 2649
2601 North Third Street
Harrisburg, PA 17120

Rev. Blanche D. Grube DMD
Dr. Blanche Durand Grube



DOS Prothonotary:
Oct 19 2023

**CERTIFIED MAIL®**

Rev. Dr. Blanche D. Grube
810 Green Ridge ST
Scranton, PA. 18509

7021 0350 0001 7406 1627

Jennifer Unis Sullivan, ... . S. D

PA State Board of Dentistry
P.O. Box 2649
Harrisonburg, PA 17105-7649

RECEIVED
AUG 16 2023
By________

Retail

U.S. POSTAGE PAID
FCM LETTER
DUNMORE, PA 18512
AUG 09, 2023

RDC 99

R2304E107034-06

DOS Prothonotary:
Oct 19 2023

# EXHIBIT J

**Order Signed by Defendant Rouse**

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

**Ronald K. Rouse**
**Assistant Counsel**

**rorouse@pa.gov**
**Counsel Division**

May 23, 2023

***VIA FIRST-CLASS MAIL AND EMAIL***
Blanche Durand Grube, D.M.D.
810 Green Ridge Street
Scranton, PA 18509
bdgrube@gmail.com

**RE: Order Directing Respondent to File Answer Within 30 Days:**
**Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs v. Blanche Durand Grube**
**Case Nos. 18-46-02952 and 18-46-012074**

Dear Dr. Grube:

Enclosed is a copy of an order issued this date in the above-referenced matter.

Sincerely,

Ronald K. Rouse, Counsel
State Board of Dentistry

RKR/
Enclosure

cc: Christina Townley, Board Administrator
State Board of Dentistry
Gregory Liero, Esquire, Prosecution Division

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**
**STATE BOARD OF DENTISTRY**

| | | |
|---|---|---|
| **Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs** | : | |
| | : | **Case Nos. 18-46-02952** |
| | : | **18-46-012074** |
| **v.** | : | |
| **Blanche Durand Grube, D.M.D., Respondent** | : | |

**ORDER DIRECTING RESPONDENT TO FILE ANSWER WITHIN 30 DAYS**

**AND NOW,** this 24th day of May, 2023, the State Board of Dentistry, upon consideration of the Commonwealth's Notice and Order to Show Cause in the above-captioned matter, which notice directed Respondent to file an answer within thirty (30) days of the date of the Order to Show Cause; and

**WHEREAS,** on December 26, 2022, Respondent requested an extension of time in which to respond to the Order to Show Cause;

**WHEREAS,** on January 10, 2023, Hearing Examiner Michael Foerster granted Respondent a 30-day extension of time in which to file an Answer, which was due on February 10, 2023;

**WHEREAS,** on February 10, 2023, Reverend Juan-Josè : Brookins filed a Private Administrative Trustee Presentment of a Private Bill of Discovery in this matter;

**WHEREAS,** on February 21, 2023, the Commonwealth filed a Motion to Strike Reverend Brookins' Private Bill of Discovery;

Prothonotary Filed On:
May 23 2023 02:13 PM
Department of State

**WHEREAS**, on March 9, 2023, Hearing Examiner Michael Foerster granted Commonwealth's Motion to Strike Reverend Brookins' Private Bill of Discovery and ordered Respondent, or a licensed attorney on her behalf, to file an Answer within 30 days.

**WHEREAS**, on April 5, 2023, Respondent filed a Pre-Trial Discovery and Inspection Pursuant to 234 Pa. Code 573(a) in which Respondent requested an explanation of the Bureau of Professional and Occupational Affairs' (BPOA) jurisdiction in this matter;

**WHEREAS**, on April 17, 2023, the Commonwealth filed a Motion to Deem Facts Admitted because Respondent did not file an Answer which conforms to the requirements of 1 Pa. Code § 35.37 within 30 days of the hearing examiner's order;

**WHEREAS**, on May 8, 2023, Respondent filed an Objection to Commonwealth's Motion to Deem Facts Admitted and Enter Default which continued to request an explanation of BPOA's jurisdiction in this matter;

**WHEREAS**, the State Board of Dentistry is one of the 29 licensing boards and commissions under the Pennsylvania Department of State's Bureau of Professional and Occupational Affairs (BPOA);

**WHEREAS**, under the Dental Law, 63 P.S. §§ 120-130i, the Board has jurisdiction over this matter because Respondent is a licensee of the Board;

**WHEREAS**, according to Board records, Respondent holds a license to practice dentistry in the Commonwealth of Pennsylvania (license number DS023621L) which was initially issued on August 26, 1983 and is current through March 31, 2025;

**WHEREAS**, under section 3(c) of the Dental Law, 63 P.S. §§ 122(c), the Board has the power and duty to license, provide for and to regulate the licensing of the practice of dentistry; and

**WHEREAS**, under section 3(m) of the Dental Law, 63 P.S. §§ 122(m), the Board has the

DOS Prothonotary
May 23 2023

power and duty "[t]o administer and enforce the laws of the Commonwealth relating to the practice of dentistry… and to instruct and require its agents to bring prosecutions for unauthorized and unlawful practices."

**NOW, THEREFORE,** upon consideration of Respondent not filing an Answer within the time specified, the Motion to Deem Facts Admitted and Enter Default filed by the Commonwealth on April 17, 2023, and Respondent's Objection to Commonwealth's Motion, the State Board of Dentistry, having deliberated on these matters[1] at its regularly scheduled meeting on May 12, 2023, hereby **ORDERS** that Respondent file an Answer to the Order to Show Cause within 30 days. The Answer must conform to the requirements of 1 Pa. Code § 35.37 and address each specifically numbered allegation in the Commonwealth's Order to Show Cause. If Respondent does not file an Answer to the Order to Show Cause that conforms with the requirements of 1 Pa. Code § 35.37 within 30 days of this Order, the Board will grant the Commonwealth's Motion to Deem Facts Admitted and Enter Default without further motion from the Commonwealth.

**BY ORDER:**

**STATE BOARD OF DENTISTRY**

**Ronald K. Rouse, Esquire on behalf of**

**JENNIFER UNIS SULLIVAN, D.M.D., J.D.**
**VICE CHAIRPERSON**

---

[1] Board Chair Shawn M. Casey, D.M.D. recused himself and did not participate in the deliberation or decision.

DOS Prothonotary
May 23 2023

| | |
|---|---|
| Respondent's Address: | Blanche Durand Grube, D.M.D.<br>810 Green Ridge Street<br>Scranton, PA 18509 |
| Prosecuting Attorney: | Gregory Liero, Esquire |
| Board Counsel: | Ronald K. Rouse, Esquire |
| Date of Mailing: | May 24, 2023 |

DOS Prothonotary
May 23 2023

# EXHIBIT K

**Dr. Grube's Objection to Board's Order**
**Granting Motion to Deem Facts Admitted and Enter Judgment**

CM # 7021 0350 0001 7406 1627 AG

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**
**BEFORE THE STATE BOARD OF DENTISTRY**

**Commonwealth of Pennsylvania,**
**Bureau of Professional and,**
**Occupational Affairs,**

**File Nos. 18-46-02952**
**18-46-012074**

**v.**

**Blanche Durand Grube, D.M.D.**

**Respondent.**

**RESPONDENT'S OBJECTION TO STATE BOARD OF DENTISTRY'S ORDER GRANTING MOTION TO DEEM FACTS ADMITTED AND ENTER DEFAULT BY WAY OF PLEA IN ABATEMENT**

**COMES NOW** the Respondent-in-Error, Dr. Blanche Durand Grube, to hereby formally make a continuing objection to the State Board of Dentistry's Order granting Attorney, Gregory S. Leiro's Motion to Deem Facts Admitted and Enter Default in this instant action on the following grounds. The granting of this is arbitrary and capricious Order is void on its face because the State Board of Dentistry's Administrative Tribunal has not verifiably established jurisdiction on the subject matter and person that is being subjected to this adverse Administrative action. I, Dr. Grube, am engaged in a contractual relationship with the ecclesiastic indigenous foreign express Trust Consortium that is doing private intellectual property research from a religious ministry, and it is being done in accordance with the constitutionally protected unalienable right to contract.

On or about June 17, 2023, Dr. Grube duly served the Prosecuting Attorney, Gregory Leiro, with a Pre-Trial Discovery and Inspection Bill of Particulars pursuant to 234 PA. Code Rule 573(A) for her to ascertain exactly what the true substance and nature of the charges being leveled against her was that was never answered by the Commonwealth Attorney. Dr. Grube



DOS Prothonotary
Oct 18 2023

Cm # 7021 0350 0001 7406 1627

gave the Commonwealth Attorney notice that she was not subject to the State's regulatory statutes under the private right to contract with the Trust Consortium because the private intellectual property research I was conducting did not fall within the purview of the State regulatory Board, and unless the Board' Attorney can specifically identify what I was doing for the Trust Consortium distinctly fell within the jurisdictional authority of the State Board of Dentistry then the Commonwealth Attorney had no right to interfere with the private contractual relationship that I am engaged in with the Trust Consortium.

There is no record of the State's Attorney responding to the Bill of Particulars that Dr. Grube duly filed with the Board of Dentistry's Agency Tribunal that specifically requested the Commonwealth provide the substance and nature of their charges as it relates with the private intellectual property research I am performing, and how those charges are enforceable under the Common Law right to contract, all of which the Commonwealth Attorney did not answer, and that effectively means that the State Board of Dentistry's Order is void because the issue of jurisdiction in accordance with due process has not been resolved.

In that Bill of Particulars that I duly sent to the Commonwealth Attorney, I specified that "I need a more specific and definitive explanation of the charges so that I can answer in the form and manner that the Order to Show Cause requires." And Attorney Leiro did not provide the information that I requested in my Bill of Particulars to be able to provide a definitive answer to the purported accusations being alleged by him, so for the State Board of Dentistry to grant the Commonwealth's Attorney's Motion that any facts be deemed admitted when I did not have the information, I needed to answer the Order to Show Cause is a denial of due process.



DOS Prothonotary:
Oct 18 2023

CM # 7021 0350 0001 7406 1627

It is a matter of clearly established law that "A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." (Pennoyer v. Neff, 95 U.S. 714, 732-733 [1878]).

"A void judgment is a simulated judgment devoid of any potency because of jurisdictional defects only in the Court rendering it, and defect of jurisdiction may relate to a Party or parties in the subject matter, the cause of action, the question(s) to be determined, or relief to be granted." (Davidson Chevrolet, Inc., v City and County of Denver, 330 P. 2d. 1116; *certiorari* denied, 79 S. CT. 609; 359 U. S. 926; 3 L. Ed. 2d. 629 [Colo. 1958]).

For the foregoing reasons specified above this continuing objection I hereby give this Administrative Tribunal, and all Parties that are participating in its errant unsubstantiated jurisdictional purview, that it is also being submitted in opposition to the State Board of Dentistry's Order granting the Commonwealth's Attorney, Gregory S. Leiro's, Motion as a plea in abatement.

A plea in abatement is a pleading made to overthrow an action in consequence of some error committed in bringing or conducting it when the Plaintiff is not forever barred from bringing another action. (1 Chit. Pl. 434). Abatement is by plea. There can be no demurrer in abatement. (Willes' Rep. 479; Salk. 220).

Pleas in abatement will be considered as relating; 1) to the jurisdiction of the Court; 2) to the person of the Plaintiff; 3) to that of the Defendant; 4) to the Writ (or Order); 5) to the qualities of such pleas; 6) to the form of such pleas; 7) to the Affidavit of the truth of pleas in abatement.

ABATEMENT, as a chancery practice, is a suspension of all proceedings in a suit, from the want of proper parties capable of proceeding therein. It differs from an abatement at-law in



HCS Prothonotary
Oct 19 2023

Cm # 7021 0350 0001 7406 1627 BY

this, that in the latter the action is in general entirely dead, and cannot be revived, (3 Bl. Com. 168) but in the former, the right to proceed is merely suspended, and may be revived by a Bill of Revivor. (Mitf. Eq. Pl. by Jeremy, 57; Story, Eq. Pl. Sec. 354).

## MANDATORY JUDICIAL COGNIZANCE OF LAW AND ADJUDICATIVE FACTS

I hereby give the State Board of Dentistry and its Commonwealth Attorney notice of its duty to take judicial cognizance of the law and supporting adjudicative facts that it must adhere to as a matter of law under their respective oaths of office.

1. Under the canon of Judicial Cognizance, the judge is BOUND to act. (*See* Black's Law, 6th Ed, pg. 847).
2. Judicial Notice or knowledge upon which a judge is bound to act without having it proved in evidence.
3. Judicial Notice. (pg. 849) is the act by which a Court, in conducting a trial, or framing its decision, will, of its own motion or on request of a Party, and without the production of evidence, recognize the existence and truth of certain facts, having a bearing on the controversy at bar.
4. Definition of Void Judgment: any judgment which a Court renders while lacking jurisdiction, either of the subject matter or the parties.

* Wahl v. Round Valley Bank 38 Ariz, 411, 300 P. 955(1931);
* Tube City Mining & Milling Co. v. Otterson, 16 Ariz. 305, 146p 203(1914); and
* Millken v. Meyer, 311 U.S. 457, 61 S. CT. 339,85 L. Ed. 2d 278 (1940).

5. Subject matter jurisdiction can never be presumed, waived, or constructed, even by mutual consent of the parties, and it has two parts:

(1) the statutory or Common Law authority for the Court to hear the case, and



DOS Prothonotary:
Oct 18 2023

Cm # 7021 0350 0001 7406 1627

(2) the appearance and testimony of a competent fact witness - in other words, sufficiency of pleadings.

6. "The law requires proof of jurisdiction to appear on the record of the Administrative Agency and all administrative proceedings." (Hagans v Lavine, 415 U. S. 533).

7. When we examine a judgment, the following indices tell us whether a Court had subject matter jurisdiction. Successful litigants will know each and every one of them by heart. Subject matter jurisdiction usually fails because of one of these reasons:

(1) Defective petition filed.

(2) Fraud committed in the procurement of jurisdiction. (Fredman Brothers Furniture v. Dept. of Revenue, 109 Ill. 2d 202, 486 N.E. 2d 893(1985)).

(3) Fraud Upon the Court. (In re: Village of Willowbrook, 37 Ill, App. 3d 393(1962)).

(4) The judge does not follow statutory procedure. (Armstrong v. Obucino, 300 Ill 140, 143 (1921)).

(5) Unlawful activity of a judge. (Code of Judicial Conduct).

(6) **Violation of due process**. (Johnson v. Zerbst, 304 U.S. 458, 58 S. Ct. 1019(193; Pure Oil Co. v. City of Northlake, 10 Ill.2d 241, 245, 140 N.E. 2d 289 (1956); Hallberg v Goldblatt Bros., 363 Ill 25 (1936), (If the court exceeded its statutory authority; Rosenstiel v. Rosenstiel, 278 F. Supp. 794 (S.D.N.Y. 1967)).

(7) **No proper pleadings presented a justiciable issue to the Court**. (Ligon v. Williams, 264 Ill. App 3d 701, 637 N.E. 2d 633 (1st Dist.1994)).

(8) **A Complaint states no cognizable cause of action against that Party**. (Charles v. Gore, 248 Ill App. 3d 441, 618 N.E. 2d 554 (1st. Dist. 1993)).



DOS Prothonotary:
Oct 19 2023

Cm # 7021 0350 0001 7406 1627

(9) <u>**A judge based an order/judgment on a void order/judgment**</u>. (Austin v. Smith, 312 F 2d 337, 343(1962); English v. English, 72 Ill. App. 3d 736, 393 N.E. 2d 18 (1st Dist. 1979).

<u>**Notice About Loyalty Oaths and Appointments**</u>**:**

**(10) The judge validly holds office if and only if a copy of the judge's oath of office exists, and I can rightly demand that the proper final oath sworn or affirmed upon taking office situates in the judge's chambers.**

**(11) I can go to his/her office and demand to see a copy of his oath of office at any time.**

**(12) The federal laws covering judges and other Public Officials are to be found at 5 U.S.C. § 3331, 28 U.S.C. § 543, and 5 U.S.C. § 1983.**

**(13) A judge trespasses upon the Court unless he complies with all of the provisions of relevant law. The States typically have similar laws.**

**(14) Once proven as a trespasser upon the Court (upon the law) not one of his/her judgments, pronouncements or orders have validity. All constitute nullities and have void status and the trespasser becomes personally liable without immunity.**

**(15) I hereby demand to see the State Board of Dentistry's Counsel, Ronald K. Rouse, Christina Townley, Board Administrator, and Gregory S. Leiro's oath of office to confirm the validity of their Standing to assert any charges on behalf of the Commonwealth against me in their official capacity.**

---

**Reasons to Vacate Void Judgments - Lack of Jurisdiction**

---



DOS Prothonotary:
Oct 19 2023

Cm # 7021 0350 0001 7406 1627

7. And once I have determined that the Public Officers who have instigated and presumed jurisdiction over me in this case without jurisdiction being established on the record are proven to be bound by oath to their office in this case, I will hold them to their oath and execute my right to a recourse for their violation of my rights in their personal individual capacity by their undue infringement/trespass of my unalienable right to contract under color of state law.

8. "Judgments entered where the Court lacked either subject matter or personal jurisdiction, or that were otherwise entered in violation of due process of law, must be set aside." (Jaffe and Asher v. Van Brunt, 158, F.R.D. 278 [S.D.N.Y. 1994]).

9. The Commonwealth Attorney's failure to answer my lawful request for discovery in a Bill of Particulars before the Administrative Tribunal granted his Motion is in violation of due process and clearly established law as decided in United States v. Horton R. Prudden, 424 F. 2d 1021 (No. 28140. United States Court of Appeals, Fifth Circuit. April 1970), which held that "Silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading." (*See also*, U.S. v. Tweel, 550 F. 2d 297).

10. The granting of the Commonwealth Attorney's dispositive Motion to Deem Facts Admitted and enter a Default against me is not only equated to be procured by fraud but is void where there is no proof of *in persona* jurisdiction over me or established on the record over the substance and nature of the research I am doing under contract with the Trust Consortium.



DOS Prothonotary:
Oct 10 2023

Cm # 7021 0350 0001 7406 1627 BA

11. In regard to Courts of inferior jurisdiction, "...if the record does not show upon its face the facts necessary to give jurisdiction, they will be presumed not to have existed." (Norman v. Zieber, 3 Or at 202-03).

12. The question of jurisdiction in this case goes to whether this State Board Administrative Tribunal has jurisdiction over a private ecclesiastic indigenous foreign express Trust Consortium's contractual relationship with me to do spiritual intellectual research that is overseen by an Institutional Review Board (IRB).

13. There is no substantial legal authority that definitively affords the Commonwealth State Board of Dentistry to impose its jurisdictional authority over me or the Trust Consortium using state law legislative rules, regulations and codes in the record of this case.

14. "A judgment rendered by a Court without personal jurisdiction over the Defendant is void. It is a nullity." (Sramek v. Sramek, 17 Kan. App 2d 573, 576-7, 840 P. 2d 553 (1992) rev. denied 252 Kan. 1093(1993)).

15. "Relying on Statutory law, as it has been held that at any time any Party relies on or enforces a statute, they possess no judicial power. A judge ceases to sit as a judicial Officer because the governing principles of Administrative Law provides that Courts are prohibited from substituting their evidence, testimony, record, arguments and rationale for that of the Agency. Additionally, Courts of record are prohibited from their substituting their judgments for that of the Agency. (Aisi v. U.S., 568 F. 2d 284).

16. "...Judges who become involved in the enforcement of mere statutes (civil or criminal in nature) act as mere 'Clerks' of the involved Agency." (K.C. Davis, Administrative Law, Ch. 1, CTP West's 1965 Ed.).



DOS Prothonotary
Oct 18 2023

C m # 7021 0350 0001 7406 1627

17. "It is basic in our law that an Administrative Agency may act only within the area of jurisdiction marked out for it by law. If an individual does not come within the coverage of the particular Agency's enabling legislation the Agency is without power to take action which affects him." (Endicott v. Perkins, 317 U.S.501).

## CONCLUSION

I have made an extensive unequivocal explicit application of the facts, the law and my rights as it concerns what my relationship with the Trust Consortium is and that my responsibilities to the contractual obligations I have committed myself to perform with them in the spiritual intellectual property research that I do for the Trust Consortium that is owned and controlled by the Trust Consortium, not me, so the methodologies of the ministerial work that I do is done under the auspices of the of the Trust Consortium. The performance of the research activity that I do for the Trust Consortium is not subject to the statutory authority of the State Board of Dentistry and the Attorney for the Commonwealth has not proffered any evidence or testimony from someone with firsthand personal knowledge to the contrary on the Agency Tribunal's record, which means the presumption of jurisdiction has not been established in this Agency action and any Order or decision rendered thereby from any purported judicial Officer is void on its face as a matter of law.

**WHEREFORE,** I hereby make a formal continuing objection by way of a plea in abatement to the Board of Dentistry's Order granting Commonwealth Attorney, Gregory S. Leiro's Motion to Deem Facts Admitted and Enter a Default against me because the Commonwealth's action is constitutionally repugnant 1) to the jurisdiction of the Court; 2) to the person of the Plaintiff; 3) to that of the Defendant; 4) to the Writ (or Order); 5) to the qualities of such pleas; 6) to the form of such pleas; 7) to the Affidavit of the truth of pleas in abatement and



UDS Prothonotary
Oct 19 2023

Cm # 2021 U350 0001 7406 1627

a violation of my fundamental and procedural right to due process of law. And resultantly, the Order granting the Commonwealth Attorney's Motion is void on its face.

Therefore, for the justifiable lawful reasons specified by me herein it stands to reason that this whole case should be abated with prejudice, forthwith, and all other prior pleadings and proceedings held by this Agency Tribunal without jurisdiction established on the record must be expunged from the State record as it relates to me. Should the Public Officials who have taken part in this unjustified adversarial action, that is actually against their oath to uphold the Constitution for the United States of America and Pennsylvania State, refuse to accept and honor this objection by way of plea in abatement and persist in violating my unalienable right to perform in accordance with the contract I have with the Trust Consortium without having established their jurisdictional authority to do so, then I hereby give notice to those Officials who fail to honor their oaths and uphold and respect my rights that they will become Party Defendants in a federal action for deprivation of rights under color of state law.

Again, I hereby respectfully demand that your Agency Officials who are part of this errant unjustified adverse action against me show me the oaths of office that you have taken and sustain my objection to your Agency's Order by rescinding it and immediately abate this case with prejudice on the grounds of Lack of Jurisdiction and violation of due process, whereupon I was denied the discovery I lawfully requested in order to understand the nature, cause and substance of the charges being leveled against me that, for all intents and purposes, are a misrepresentation of my true role and work that I perform for the Trust Consortium where said misrepresentation has culminated in a void judgment of any rulings promulgated by the governing authority figure of this Agency Tribunal.



DDS Prothonotary:
Oct 19 2023

Cm # 7021 0350 0001 7406 1627 BG

I also demand that this be reviewed before a Court of competent jurisdiction which is fully knowledgeable of first nation indigenous and ecclesiastical law, and I also respectfully request that such other and further relief be granted to me for the inconvenience and unsettling intrusion of the exercise of my constitutional right to be free to contract.

Date: Pennsylvania State, Lackawanna County.
August 4, 2023.

Respectfully Submitted,

Rev. Blanche D. Grube DMD

Rev. Dr. Blanche Durand Grube, D.M.D
810 Green Ridge Street
Scranton, P.A. 18509



LCS Prothonotary
Oct 19 2023

Cm # 7021 0350 0001 7406 1627 BG

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**
**BEFORE THE STATE BOARD OF DENTISTRY**

**Commonwealth of Pennsylvania,**
**Bureau of Professional and,**
**Occupational Affairs,**

**File Nos. 18-46-02952**
**18-46-012074**

**v.**

**Blanche Durand Grube, D.M.D.,**

**Respondent.**

**AFFIDAVIT**
**of Dr. Blanche Durand Grube**
**IN SUPPORT OF**
**OBJECTION TO ORDER GRANTING MOTION TO DEEM FACTS ADMITTED AND ENTER DEFAULT AGAINST RESPONDENT-IN-ERROR BY WAY OF PLEA IN ABATEMENT**

JURAT

Pennsylvania State Republic }
}ss:
Lackawanna County }

I, Dr. Blanche Durand Grube, hereby affirm under penalty of perjury of the laws of the *de jure* United States of America and Pennsylvania State Republic the following statements:

I, Dr. Blanche Durand Grube, am of the age of majority with full control of all my mental, emotional, physical and spiritual faculties, declare and confess that the statements made by me in the foregoing objection and plea in abatement to the State Board of Dentistry's Order granting the Motion to Deem Facts Admitted and Enter Default are true, correct and complete to the best of my knowledge and belief, and as to those statement fore which I have no personal knowledge, I believe that they are true, so help me, God.

Respectfully Submitted,

Blanche D. Grube DMD

Dr. Blanche Durand Grube, D.M.D.

Sworn and Subscribed Before Me This
_____ August 8, 2023

Lain Kaplan
Notary

My Commission Expires June 1 2027

Commonwealth of Pennsylvania - Notary Seal
Lain Kaplan, Notary Public
Lackawanna County
My commission expires June 1, 2027
Commission number 1435423



DOS Prothonotary
Oct 18 2023

CM # 7021 0350 0001 2406 1627 BG.

## CERTIFICATE OF SERVICE

I, Blanche Durand Grube, D.M.D., hereby certify that on 8/4/?, 2023, I sent a true and correct copy of the foregoing Objection to the Motion to Deem Facts Admitted and Enter Default via first class United States Post Office Mail to the following:

Gregory S. Leiro, Esq.
Prosecuting Attorney
Commonwealth of Pennsylvania Department of State
P.O. Box 69521
Harrisburg, PA 17106-9521

Ronald K. Rouse, D.M.D., J.D.
Pennsylvania State Board of Dentistry
P.O. Box 2649
Harrisonburg, PA 17105-2649

Jennifer Unis Sullivan, D.M.D., J.D.
Pennsylvania State Board of Dentistry
P.O. Box 2649
Harrisonburg, PA 17105-2649

Shawn Casey, D.M.D.
Chairperson
Pennsylvania State Board of Dentistry
P.O. Box 2649
Harrisonburg, PA 17105-2649

Al Schmidt
Acting Secretary of State
302 North Office, Building 401
North Street
Harrisburg, PA 17120

Linda L. Dodson
Prothonotary
P.O. Box 2649
2601 North Third Street
Harrisburg, PA 17120

Rev. Blanche D Grube DMD
Dr. Blanche Durand Grube



DOS Prothonotary
Oct 19 2023

Rev. Dr. Blanche D. Grube
810 Green Ridge ST
Scranton, PA. 18509

CERTIFIED MAIL

7021 0350 0001 7406 1627

Jennifer Unis Sullivan, ... . S. D

PA State Board of Dentistry

P.O. Box 2649

Harrisonburg, PA 17105-7649

RECEIVED
AUG 16 2023
By____

Retail

RDC 99

U.S. POSTAGE PAID
FCM LETTER
DUNMORE, PA 18512
AUG 08, 2023
R2304E107034-06

DOS Prothonotary
Oct 19 2023

# EXHIBIT L

**Defendant Rouse's Order cc'd to Defendant Christina Townley and Gregory Leiro**

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

Ronald K. Rouse
Board Counsel

rorouse@pa.gov
Counsel Division

July 18, 2023

***Via First Class Mail***
Blanche Durand Grube, D.M.D.
810 Green Ridge Street
Scranton, PA 18509
**VIA EMAIL:** bdgrube@gmail.com

**RE: Order Granting Commonwealth's Second Motion to Deem Facts Admitted and Enter Default:**
**Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs v. Blanche Durand Grube, D.M.D.**
**Case Nos. 18-46-02952 and 18-46-012074**

Dear Dr. Grube:

Enclosed is a copy of an order issued this date in the above-referenced matter.

Sincerely,

Ronald K. Rouse, Counsel
State Board of Dentistry

RKR/
Enclosure

cc: Christina Townley, Board Administrator
State Board of Dentistry
Gregory Liero, Esquire, Prosecution Division

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**
**STATE BOARD OF DENTISTRY**

| | | |
|---|---|---|
| **Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs** | : | |
| | : | Case Nos. 18-46-02952 |
| v. | : | 18-46-012074 |
| | : | |
| **Blanche Durand Grube, D.M.D., Respondent** | : | |

**ORDER GRANTING COMMONWEALTH'S SECOND MOTION TO DEEM FACTS ADMITTED AND ENTER DEFAULT**

**AND NOW,** this 18th day of July, 2023, upon consideration of the Commonwealth's Notice and Order to Show Cause in the above-captioned matter, which notice directed Respondent to file an answer within thirty (30) days of the date of the Order to Show Cause, and upon consideration of Respondent not filing said answer that conforms to the requirements of 1 Pa. Code § 35.37 within the time specified, and the Second Motion to Deem Facts Admitted and Enter Default filed by the Commonwealth on June 30, 2023, the State Board of Dentistry, having deliberated on these matters[1], hereby **ORDERS** pursuant to 1 Pa. Code § 35.37 that the Commonwealth's Motion be **GRANTED.** It is **FURTHER ORDERED** that the Respondent is in default of filing an answer and that the factual allegations in the Order to Show Cause are deemed admitted.

An Adjudication and Order will be issued in due course.

---

[1] Board Chair Shawn M. Casey, D.M.D., recused himself and did not participate in the deliberation or decision.

Prothonotary Filed On: Jul 18 2023 12:44 PM Department of State

**BY ORDER:**

**STATE BOARD OF DENTISTRY**

Ronald K. Rouse, Esq., on behalf of
**JENNIFER UNIS SULLIVAN, D.M.D., J.D.**
**VICE CHAIRPERSON**

| | |
|---|---|
| Respondent's Address: | Blanche Durand Grube, D.M.D.<br>810 Green Ridge Street<br>Scranton, PA 18509 |
| Prosecuting Attorney: | Gregory Liero, Esquire |
| Board Counsel: | Ronald K. Rouse, Esquire |
| Date of Mailing: | July 18, 2023 |

DOS Prothonotary:
Jul 18 2023

# EXHIBIT M

**The State Bureau of Dentistry's Final Order**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**
**BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS**

---

**BEFORE THE STATE BOARD OF DENTISTRY**

---

**COMMONWEALTH OF PENNSYLVANIA,**
**BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS**

**v.**

**BLANCHE DURAND GRUBE, D.M.D.**

**CASE NOS. 18-46-02952 and 18-46-012074**

---

# FINAL ADJUDICATION AND ORDER

---

**ARION R. CLAGGETT, ACTING COMMISSIONER**
**BUREAU OF PROFESSIONAL AND**
**OCCUPATIONAL AFFAIRS**

**JENNIFER UNIS SULLIVAN, DMD, JD, CHAIRPERSON**
**STATE BOARD OF DENTISTRY**

**2601 North Third Street**
**P.O. Box 69523**
**Harrisburg, PA 17106-9523** **RKR**

Prothonotary Filed On:
Jan 16 2024 01:30 PM
Department of State

**HISTORY**

This matter comes before the State Board of Dentistry (Board) to determine whether the dental license and anesthesia permit- restricted I of Blanche Durand Grube, D.M.D. (Respondent) should be suspended, revoked or otherwise restricted under the Dental Law, Act of May 1, 1933, P.L. 216, No. 76 Cl. 63, *as amended*, 63 P.S. §§ 120 – 130*l*, and/or whether a civil penalty should be imposed under section 10.1 of the Dental Law, 63 P.S. § 129.1 and 63 Pa.C.S. § 3108(b)(4) and/or whether the costs of investigation should be imposed under 63 Pa.C.S. § 3108(b)(5). By Order to Show Cause filed December 6, 2022, the Commonwealth charged that the Respondent is subject to disciplinary action, including civil penalty, because she engaged in unprofessional conduct by failing to conform to the standards of acceptable and prevailing dental practice, in violation of Section 4.1(a)(8) of the Dental Law, 63 P.S. § 123.1(a)(8).

Although the Order to Show Cause was served upon Respondent by certified mail, Respondent did not file an Answer that conforms to the requirements of 1 Pa. Code § 35.37. On April 17, 2023, the Commonwealth filed a Motion to Deem Facts Admitted and Enter Default (MDFA), requesting that the Board deem Respondent to have admitted all of the factual allegations of the Order to Show Cause. The Board[1] considered the Commonwealth's MDFA at its May 12, 2023 meeting, and voted to issue an Order directing Respondent to file an Answer within 30 days. On June 30, 2023, the Commonwealth filed a Second MDFA because Respondent did not file an Answer that conforms to the requirements of 1 Pa. Code § 35.37 within 30 days. The Board considered the Commonwealth's Second MDFA at its July 14, 2023 meeting, voted to grant the Second MDFA, and then immediately deliberated on this matter. On July 18, 2023, the Board

[1] All Board members participating in the deliberation or decision in this matter have reviewed the entire record. Shawn M. Casey, D.M.D. recused himself and did not participate in the deliberation or decision in this matter.



DOS Prothonotary:
Jan 16 2024

provided Respondent with notice that it had granted the Commonwealth's Second MDFA.

On August 18, 2023, Respondent filed an objection to the Order Granting Commonwealth's Second MDFA. The Board considered the Respondent's Motion to Vacate the Order Granting Commonwealth's Second MDFA at its meeting on September 8, 2023; Respondent's Motion was denied. The Board now issues this Adjudication and Order as a final determination of the charges against Respondent.



DOS Prothonotary:
Jan 16 2024

## FINDINGS OF FACT

1. Respondent holds the following license to practice as a dentist in the Commonwealth of Pennsylvania: license no. DS023621L. (Order to Show Cause at ¶1; Board records)
2. Respondent's Dental license was originally issued on August 26, 1983 and is current through March 31, 2025[2]. (Order to Show Cause at ¶2; Board records)
3. Respondent also holds the following Anesthesia Permit- Restricted I in the Commonwealth of Pennsylvania: license no. DP023621A. (Order to Show Cause at ¶3; Board records)
4. Respondent's Anesthesia Permit – Restricted I was originally issued on November 4, 1999 and is current through March 31, 2025[3]. (Order to Show Cause at ¶4; Board records)
5. Absent further action by the Board, the Respondent's licenses may be renewed, reactivated or reinstated upon the filing of the appropriate documentation and payment of the necessary fees. (Order to Show Cause at ¶5; Board records)
6. At all times pertinent to the Factual Allegations, Respondent held a license to practice as a dentist in the Commonwealth of Pennsylvania. (Order to Show Cause at ¶6; Board records).
7. Respondent's last known address on file with the Board is 810 Green Ridge Street, Scranton, PA 18509. (Order to Show Cause at ¶7; Board records).
8. Respondent entered into a dentist-patient relationship with Patients number one (1) through forty-two (42). (Order to Show Cause at ¶9)
9. Respondent rendered dental services and/or treatment to Patients number one (1) through forty-two (42) in the Commonwealth of Pennsylvania. (Order to Show Cause at ¶10)

---

[2] At the time that the Order to Show Cause was filed on December 6, 2022, Respondent's license was current through March 31, 2023. Board records show that Respondent's license was renewed.

[3] At the time that the Order to Show Cause was filed on December 6, 2022, Respondent's anesthesia permit was current through March 31, 2023. Board records show that Respondent's anesthesia permit was renewed.



DOS Prothonotary:
Jan 16 2024

10. On December 3, 2015, Respondent commenced a dentist-patient relationship with Patient 42. (Order to Show Cause at ¶12)

11. Patient 42 was a 51-year-old female with a history of the following:

    a. Anemia,

    b. Abnormal EKG,

    c. Not being under the care of a physician,

    d. Not aware whether she had any allergies,

    e. Blurred or tunnel vision, and

    f. Bleeding Gums.

    (Order to Show Cause at ¶13)

12. Respondent extracted Patient 42's endodontically treated teeth # 13 and 19. (Order to Show Cause at ¶15)

13. No clinical documentation existed justifying the need for extracting teeth # 13 and 19. (Order to Show Cause at ¶16)

14. Respondent removed porcelain fused to metal (PFM) crowns on Patient 42's teeth # 2, 15, 18, and 19 and replaced with non-metallic crowns. (Order to Show Cause at ¶17)

15. No clinical documentation existed justifying the removal of the PFM crowns on teeth # 2, 15, 18, and 19. (Order to Show Cause at ¶18)

16. Implants at the areas of Patient 42's teeth # 5, 15, 18, and 19 were removed. (Order to Show Cause at ¶19)

17. No clinical documentation existed justifying the removal of the implants at teeth # 5, 15, 18, and 19. (Order to Show Cause at ¶20)



DOS Prothonotary:
Jan 16 2024

18. Implants previously placed in the area of Patient 42's teeth # 29, 30, and 31 were removed without clinical justification. (Order to Show Cause at ¶21)

19. During the removal of implants in the area of teeth # 29, 30, and 31, the mental nerve was damaged, resulting in paresthesia (numbness or tingling) of the lower left lip. (Order to Show Cause at ¶22)

20. The proximity of the mental nerve to the implants was evident radiographically. (Order to Show Cause at ¶23)

21. Removal of Patient 42's implants, if indicated, should have been referred to an oral and maxillofacial surgeon to lessen the likelihood of an adverse outcome. (Order to Show Cause at ¶24)

22. Respondent did not refer Patient 42 to an oral and maxillofacial surgeon to manage the paresthesia at the time that it occurred. (Order to Show Cause at ¶25)

23. Paresthesia can sometimes be reversed if addressed promptly. (Order to Show Cause at ¶26)

24. In the absence of a referral to an oral and maxillofacial surgeon, the paresthesia suffered by Patient 42 is likely permanent. (Order to Show Cause at ¶27)

25. Respondent performed a procedure upon Patient 42 at teeth # 1, 16, 17, 20, and 32 that Respondent refers to as "Cavitation Surgery," which involves one or more of the following invasive or surgical procedures:

   a. Elevation of a flap.

   b. Penetration of cortical bone.

   c. Removal of tissue that Respondent refers to as "pathological tissue."

(Order to Show Cause at ¶¶28, 45, 72, 102)



DOS Prothonotary:
Jan 16 2024

26. Cavitation Surgery is not:

   a. A procedure recognized or identified in the professions of dentistry or medicine by this specific terminology or by any other synonymous terms.

   b. Of any therapeutic benefit for any condition or disease.

   (Order to Show Cause at ¶¶29, 46, 73, 103)

27. The procedures that Respondent offered to Patient 42 were clinically unnecessary, invasive, and offered no dental benefit. (Order to Show Cause at ¶30)

28. Respondent departed from, or failed to conform to, the standards of acceptable and prevailing dental practice in treating Patient 42. (Order to Show Cause at ¶14)

29. On May 12, 2017, Respondent commenced a dentist-patient relationship with Patient 41. (Order to Show Cause at ¶33)

30. Patient 41 was a 253 pound 52-year-old male with a history of the following:

   a. Skin cancer,

   b. Multiple traumatic injuries,

   c. Diabetes treated by metformin and glipizide, and

   d. Memory loss.

   (Order to Show Cause at ¶34)

31. Respondent removed a PFM crown on Patient 41's tooth # 8 and replaced it with a non-metallic crown. (Order to Show Cause at ¶36)

32. There was no clinical documentation justifying the removal of the PFM crown on tooth # 8. (Order to Show Cause at ¶37)

33. Respondent extracted Patient 41's previously-endodontically treated tooth # 9. (Order to Show Cause at ¶38)



DOS Prothonotary:
Jan 16 2024

34. There was no clinical documentation justifying the extraction of tooth # 9. (Order to Show Cause at ¶39)

35. Respondent removed dental amalgam on Patient 41's teeth # 2, 3, 19, 31, 32 and replaced with non-amalgam restorations. (Order to Show Cause at ¶40)

36. Respondent noted the presence of decay in the teeth where amalgam was removed. (Order to Show Cause at ¶41)

37. There is no radiographic evidence of decay at teeth # 2, 3, 19, 31, 32. (Order to Show Cause at ¶42)

38. The removal of amalgam was unnecessary. (Order to Show Cause at ¶43)

39. The removal of amalgam was not in the best interests of Patient 41. (Order to Show Cause at ¶44)

40. Respondent performed a "Cavitation Surgery" upon Patient 41 at teeth # 16, 17, and 18. (Order to Show Cause at ¶45)

41. Cavitation Surgery is not:

    a. A procedure recognized or identified in the professions of dentistry or medicine by this specific terminology or by any other synonymous terms.

    b. Of any therapeutic benefit for any condition or disease.

(Order to Show Cause at ¶46)

42. On July 11, 2017, Patient 41 was sedated prior to treatment. (Order to Show Cause at ¶47)

43. Respondent noted that the patient was "not a great breather" and "had to increase $0_2$ to 3 liters". (Order to Show Cause at ¶48)

44. On July 25, 2017, Patient 41 was administered eight and one-half (8.5) carpules of carbocaine, a local anesthetic. (Order to Show Cause at ¶49)



DOS Prothonotary:
Jan 16 2024

45. Eight and one-half (8.5) carpules of carbocaine for Patient 41 exceeds the recommended dose for local anesthesia for a single sitting. (Order to Show Cause at ¶50)

46. On July 25, 2017, Respondent administered the first dose of anesthesia to Patient 41 at 10:20 A.M. and treatment was not finished until 3:55 P.M. that same day. (Order to Show Cause at ¶51)

47. This extended treatment duration placed Patient 41 at risk of venous stasis. (Order to Show Cause at ¶52)

48. With a history of excess weight, diabetes, and difficulty breathing, Patient 41 was a poor candidate for in-office intravenous sedation. (Order to Show Cause at ¶53)

49. With a history of excess weight, diabetes, and difficulty breathing, Patient 41 was at higher risk for mortality. (Order to Show Cause at ¶54)

50. Patient 41 was not adequately monitored while under sedation for:

    a. Continuous respiration, and

    b. Proper heart function by Electrocardiogram (ECG or EKG).

(Order to Show Cause at ¶55)

51. Respondent departed from, or failed to conform to, the standards of acceptable and prevailing dental practice in treating Patient 41. (Order to Show Cause at ¶35)

52. On February 6, 2017, Respondent commenced a dentist-patient relationship with Patient 40. (Order to Show Cause at ¶58)

53. Patient 40 was a 56-year-old male with a history of the following:

    a. Last exam by a physician occurring over 5 years prior his visit with Respondent,

    b. "Unexplained lump on chest, had cancer in chest 5 years ago…did alternative healing and cured himself. Still has lump. A lot smaller."



DOS Prothonotary:
Jan 16 2024

c. Small spots of skin cancer,

d. "Feels Brain Fog", and

e. Occasional chest pains and occasional tachycardia.

(Order to Show Cause at ¶59)

54. Extensive serologic testing was performed on Patient 40, and Respondent marked abnormalities on the testing results. (Order to Show Cause at ¶61)

55. No referral to a physician was made pursuant to Respondent's assessment of the serologic results. (Order to Show Cause at ¶62)

56. Hair toxicity testing was conducted on Patient 40. (Order to Show Cause at ¶63)

57. Hair toxicity testing is unrelated to the practice of dentistry, and thus constitutes an unnecessary procedure. (Order to Show Cause at ¶64)

58. Mercury vapor testing was conducted on Patient 40. (Order to Show Cause at ¶65)

59. Mercury vapor testing is unrelated to the practice of dentistry, and thus constitutes an unnecessary procedure. (Order to Show Cause at ¶66)

60. Respondent removed dental amalgam on Patient 40's teeth # 3, 4, 5, 12, 14, 18, 19, 30, and 31 and replaced with non-amalgam restorations and an onlay in the area of tooth # 30. (Order to Show Cause at ¶67)

61. Respondent noted the presence of decay in Patient 40's teeth where amalgam was removed. (Order to Show Cause at ¶68)

62. There is no radiographic evidence of decay at Patient 40's teeth # 3, 4, 5, 12, 14, 18, 19, 30, and 31. (Order to Show Cause at ¶69)

63. The removal of Patient 40's amalgam was not necessary. (Order to Show Cause at ¶70)



DOS Prothonotary:
Jan 16 2024

64. The removal of amalgam was not in the best interests of Patient 40. (Order to Show Cause at ¶71)

65. Respondent performed a "Cavitation Surgery" upon Patient 40 at teeth # 1, 16, 17 and 32. (Order to Show Cause at ¶72)

66. Respondent excised a radiopacity in the area of Patient 40's tooth # 32 but did not submit a sample of the excised tissue for pathologic examination or refer the patient to an oral and maxillofacial surgeon. (Order to Show Cause at ¶74)

67. On February 20, 2017, Patient 40 was administered nine (9) carpules of carbocaine, a local anesthetic, and 9mg of Midazolam. (Order to Show Cause at ¶75)

68. Respondent administered local anesthetic to Patient 40 in an amount that exceeded the total recommended dosage to be used in a single sitting. (Order to Show Cause at ¶76)

69. On February 20, 2017, Respondent administered the first dose of Versed to Patient 40 at approximately 10:00 A.M. and treatment was not finished until 5:10 P.M. that same day. (Order to Show Cause at ¶77)

70. This extended treatment duration placed Patient 40 at risk of venous stasis. (Order to Show Cause at ¶78)

71. Patient 40 was not adequately monitored while under sedation for:

    a. Continuous respiration, and

    b. Proper Heart function by Electrocardiogram (ECG or EKG).

    (Order to Show Cause at ¶79)

72. Respondent departed from, or failed to conform to, the standards of acceptable and prevailing dental practice in treating Patient 40. (Order to Show Cause at ¶60)



DOS Prothonotary:
Jan 16 2024

73. On May 13, 2017, Respondent commenced a dentist-patient relationship with Patient 28. (Order to Show Cause at ¶82)

74. Patient 28 was a 57-year-old female with a history of the following:

    a. Chronic Lyme disease,

    b. Daily regimen of IV Clindamycin for the management of Lyme Disease,

    c. "Carotid issues",

    d. Chest Pain,

    e. Irregular heartbeat, "off/ on",

    f. Abnormal EKG (Electrocardiogram) results, and

    g. Endocarditis (inflammation of the inner lining of the heart's chambers and valves).

(Order to Show Cause at ¶83)

75. Respondent removed a four-unit bridge in the area of Patient 28's teeth # 2-5 without clinical justification. (Order to Show Cause at ¶85)

76. Removal of the four-unit bridge and the cavitation procedures exposed Patient 28 to the risks of bleeding, post-operative infection, and pain. (Order to Show Cause at ¶86)

77. With Patient 28's history of endocarditis, administration of additional antibiotic prophylaxis prior to treatment was required to mitigate the risk of recurrent endocarditis, in the absence of a cardiac consult stating that additional antibiotic prophylaxis was not required. (Order to Show Cause at ¶87)

78. Respondent failed to give Patient 28 additional antibiotic prophylaxis prior to treatment on May 24, 2017. (Order to Show Cause at ¶88)

79. Failure to give additional antibiotic prophylaxis prior to treatment put Patient 28 at risk of a life-threatening complication; recurrent endocarditis. (Order to Show Cause at ¶89)



DOS Prothonotary:
Jan 16 2024

80. On May 24, 2017, Patient 28 was administered seven (7) carpules of carbocaine, a local anesthetic. (Order to Show Cause at ¶90)

81. The IV sedation record for May 24, 2017 lists Patient 28's weight at 106 pounds. (Order to Show Cause at ¶91)

82. Seven (7) carpules of carbocaine for Patient 28, at a weight of 106 pounds, exceeds the recommended dose for local anesthesia for a single sitting. (Order to Show Cause at ¶92)

83. Patient 28 was not adequately monitored while under sedation for:

    a. Continuous respiration, and

    b. Proper Heart function by Electrocardiogram (ECG or EKG).

    (Order to Show Cause at ¶93)

84. Monitoring through electrocardiogram was required for Patient 28 due to Patient 28's history of irregular heartbeat and endocarditis.

    (Order to Show Cause at ¶94)

85. Respondent departed from, or failed to conform to, the standards of acceptable and prevailing dental practice in treating Patient 28. (Order to Show Cause at ¶84)

86. On April 26, 2017, Respondent commenced a dentist-patient relationship with Patient 20.

    (Order to Show Cause at ¶97)

87. Patient 20 was an adult 58-year-old male with a history of the following:

    a. the patient was not currently under the care of a physician,

    b. a diagnosis of head and neck cancer in December 2012,

    c. holistic cancer treatment with no chemotherapy or radiation,

    d. sore or enlarged lymph nodes,



DOS Prothonotary:
Jan 16 2024

e. a height and weight of 6 feet and 130 pounds, equating to a body mass index of 17.6,

f. 7 (seven) to 9 (nine) previous root canals,

g. difficulty speaking and swallowing, and

h. Difficulty breathing through the nose.

(Order to Show Cause at ¶98)

88. On examination, Respondent observed the following:

a. Enlargement of the left tonsillar area,

b. A lesion on the left ventral border of the tongue,

c. Bilateral cervical lymphadenopathy, and

d. Enlargement of the left submandibular gland region.

(Order to Show Cause at ¶99)

89. Patient 20's clinical presentation was consistent with advanced head and neck cancer. (Order to Show Cause at ¶100)

90. Respondent performed "Cavitation Surgery" upon Patient 20 at teeth # 1-4, 13-16, 17, 20, 29-30, and 32. (Order to Show Cause at ¶102)

91. Respondent ordered and obtained multiple tests for health conditions which are unrelated to the practice of dentistry:

a. DNA

b. Hematology.

(Order to Show Cause at ¶104)

92. Respondent extracted Patient 20's teeth # 2, 3, 14, 18, and 31. (Order to Show Cause at ¶105)



DOS Prothonotary:
Jan 16 2024

93. The extractions of teeth # 2, 3, 14, 18, and 31 were not clinically justified. (Order to Show Cause at ¶106)

94. Respondent removed crowns on Patient 20's teeth # 5 and 12. (Order to Show Cause at ¶107)

95. The removal of crowns on teeth # 5 and 12 were not clinically justified. (Order to Show Cause at ¶108)

96. Pus was drained from Patient 20's submandibular glands on May 8, 2017, and on May 10, 2017. (Order to Show Cause at ¶109)

97. Respondent administered intravenous Vitamin C to the patient. (Order to Show Cause at ¶110)

98. Vitamin C is not FDA approved as a cancer therapy. (Order to Show Cause at ¶111)

99. Serious side effects from Vitamin C administration have been reported. (Order to Show Cause at ¶112)

100. Patient 20 died on June 14, 2017, approximately one month after his last appointment with Respondent. (Order to Show Cause at ¶113)

101. Consultation with a physician should have been obtained prior to Respondent's treatment of patient 20. (Order to Show Cause at ¶114)

102. The treatment rendered to Patient 20 by Respondent was elective dental treatment. (Order to Show Cause at ¶115)

103. Patient 20 was not a candidate for elective dental treatment, given the state of his health. (Order to Show Cause at ¶116)

104. Respondent's treatment of Patient 20 risked infection, bleeding, and tumor seeding/ spreading. (Order to Show Cause at ¶117)



DOS Prothonotary:
Jan 16 2024

105. Given Patient 20's health, Respondent's treatment of Patient 20 risked compromising Patient 20's remaining quality of life. (Order to Show Cause at ¶118)

106. Respondent departed from, or failed to conform to, the standards of acceptable and prevailing dental practice in treating Patient 20. (Order to Show Cause at ¶101)

107. For Patients 2, 3, 7, 19, 25, 28, 37, 40, and 41, Respondent ordered extensive blood-based laboratory testing. (Order to Show Cause at ¶121)

108. Respondent's ordering of blood-based laboratory testing was performed to diagnose and/or treat medical conditions or ailments. (Order to Show Cause at ¶123)

109. Respondent's ordering of blood-based laboratory testing is beyond the scope of dental practice in Pennsylvania. (Order to Show Cause at ¶122)

110. As a dentist, Respondent is not qualified to diagnose and/or treat medical conditions or ailments. (Order to Show Cause at ¶124)

111. Respondent noted abnormalities or concerns in the blood testing results for Patients 2, 3, 7, 19, 25, 28, 37, 40, and 41. (Order to Show Cause at ¶125)

112. Respondent did not refer Patients 2, 3, 7, 19, 25, 28, 37, 40, and 41 to medical professionals for medical diagnosis and/or treatment. (Order to Show Cause at ¶126)

113. The standard of care requires that Respondent refer Patients 2, 3, 7, 19, 25, 28, 37, 40, and 41 to medical professionals upon noting abnormalities in their blood testing results. (Order to Show Cause at ¶127)

114. The Commonwealth incurred costs of investigation in this matter in the amount of forty-five thousand, seven hundred twenty-seven dollars and sixty cents ($45,727.60). (Order to Show Cause at ¶8).

115. On December 6, 2022, the Commonwealth filed an Order to Show Cause setting



DOS Prothonotary:
Jan 16 2024

forth the allegations that Respondent engaged in unprofessional conduct. (Board records; Case # 18-46-02952 and 18-46-012074)

116. On December 7, 2022, the Order to Show Cause was sent to, and later served on, Respondent by certified mail, return receipt requested and first-class mail, postage prepaid to 810 Green Ridge Street, Scranton, PA 18509. (Order to Show Cause at Certificate of Service)

117. The Commonwealth prepared and served on Respondent an identity key to the Order to Show Cause which provided the name of each individual identified as a patient. (Order to Show Cause at ¶9, fn. 1)

118. On December 26, 2022, Respondent requested an extension of time in which to respond to the Order to Show Cause. (December 26, 2022 email from Respondent to Department of State Prothonotary's Office; Board records; Case # 18-46-02952 and 18-46-012074)

119. On January 10, 2023, Hearing Examiner Michael Foerster granted Respondent a 30-day extension of time in which to file an Answer, which was due on February 10, 2023. (January 10, 2023 Order Granting Extension of Time to File Answer; Board records; Case # 18-46-02952 and 18-46-012074)

120. On February 10, 2023, Reverend Juan-José: Brookins filed a Private Administrative Trustee Presentment of a Private Bill of Discovery in this matter. (Private Administrative Trustee Presentment of a Private Bill of Discovery filed February 10, 2023; Board records; Case # 18-46-02952 and 18-46-012074)

121. Reverend Brookins is not an attorney. (Board records; Case # 18-46-02952 and 18-46-012074)



DOS Prothonotary:
Jan 16 2024

122. On February 21, 2023, the Commonwealth filed a Motion to Strike Rev. Brookins' Private Bill of Discovery. (Commonwealth's Motion to Strike "Private Administrative Trustee Presentment of Private Bill of Discovery" filed February 21, 2023; Board records; Case # 18-46-02952 and 18-46-012074)

123. On March 9, 2023, Hearing Examiner Michael Foerster granted the Commonwealth's Motion to Strike Rev. Brookins' Private Bill of Discovery and ordered Respondent to file an Answer consistent with the administrative rules within 30 days. (March 9, 2023 Order of Hearing Examiner Michael T. Foerster; Board records; Case # 18-46-02952 and 18-46-012074)

124. On April 6, 2023, Respondent filed a Pre-Trial Discovery and Inspection Pursuant to 234 Pa. Code § 573(a) of the Rules of Criminal Procedure in which Respondent requested an explanation of the Bureau of Professional and Occupational Affairs' (BPOA) jurisdiction in this matter. (Respondent's Pre-Trial Discovery and Inspection Pursuant to 234 Pa. Code § 573(a) filed April 6, 2023; Board records; Case # 18-46-02952 and 18-46-012074)

125. On April 17, 2023, the Commonwealth filed a Motion to Deem Facts Admitted (MDFA) because Respondent did not file an Answer which conforms to the requirements of 1 Pa. Code § 35.37 within 30 days of the hearing examiner's order. (Commonwealth's Motion to Deem Facts Admitted and Enter Default filed April 17, 2023; Board records; Case # 18-46-02952 and 18-46-012074)

126. On May 8, 2023, Respondent filed an Objection to Commonwealth's Motion to Deem Facts Admitted and Enter Default and continued to request an explanation of the BPOA's jurisdiction in this matter. (Respondent's Objection to Motion to Deem Facts



DOS Prothonotary:
Jan 16 2024

Admitted and Enter Default filed May 8, 2023; Board records; Case # 18-46-02952 and 18-46-012074)

127. On May 24, 2023, the Board issued an Order directing Respondent to file an Answer which conforms to the requirements of 1 Pa. Code § 35.37 within 30 days. (May 23, 2023 Order Directing Respondent to File Answer Within 30 Days; Board records; Case # 18-46-02952 and 18-46-012074)

128. The May 24, 2023 Order explained the Board's jurisdiction over licensees of the Board under the Dental Law, 63 P.S. 120-130i. (May 23, 2023 Order Directing Respondent to File Answer Within 30 Days; Board records; Case # 18-46-02952 and 18-46-012074)

129. On June 29, 2023, Respondent's[4] Answer to the Order to Show Cause was filed. (Respondent-in-Error's Answer to Pennsylvania State Board of Dentistry's Order to Show Cause filed June 29, 2023; Board records; Case # 18-46-02952 and 18-46-012074)

130. On June 30, 2023, the Commonwealth filed a Second Motion to Deem Facts Admitted (Second MDFA) because Respondent did not file an Answer that conforms to the requirements of 1 Pa. Code § 35.37 within 30 days. (Commonwealth's Second Motion to Deem Facts Admitted and Enter Default filed June 30, 2023; Board records; Case # 18-46-02952 and 18-46-012074)

131. On July 18, 2023, the Board issued an Order Granting Commonwealth's Second Motion to Deem Facts Admitted and Enter Default. (July 18, 2023 Order Granting Commonwealth's Second Motion to Deem Facts Admitted and Enter Default; Board records; Case # 18-46-02952 and 18-46-012074)

132. On August 14, 2023, Respondent's Objection to State Board of Dentistry's Order

---

[4] In the Answer, Respondent referred to herself as "Respondent-in-Error."



DOS Prothonotary:
Jan 16 2024

Granting Motion to Deem Facts Admitted and Enter Default by Way of Plea in Abatement was filed. (Respondent's Objection to State Board of Dentistry's Order Granting Motion to Deem Facts Admitted and Enter Default by Way of Plea in Abatement filed August 14, 2023; Board records; Case # 18-46-02952 and 18-46-012074)

133. On October 19, 2023, the Board issued an Order Denying Respondent's Motion to Vacate the Order Granting Commonwealth's Second Motion to Deem Facts Admitted and Enter Default (MDFA). (October 19, 2023 Order Denying Respondent's Motion to Vacate the Order Granting Commonwealth's Second Motion to Deem Facts Admitted and Enter Default (MDFA); Board records; Case # 18-46-02952 and 18-46-012074)

134. Despite being given several opportunities to do so, Respondent did not file an Answer to the Order to Show Cause that conformed to the requirements of 1 Pa. Code § 35.37. (Board records, Case Nos. 18-46-02952 and 18-46-012074)



DOS Prothonotary:
Jan 16 2024

## CONCLUSIONS OF LAW

1. The Board has jurisdiction in this matter. (Findings of Fact numbers 1-6)
2. Respondent was afforded reasonable notice of the charges and an opportunity to be heard in accordance with the Administrative Agency Law, 2 Pa. C.S. § 504. (Findings of Fact numbers 7, 115-134)
3. Respondent is subject to discipline under section 4.1(a)(8) of the Dental Law, 63 P.S. § 123.1(a)(8) because she engaged in unprofessional conduct by failing to conform to the standard of acceptable and prevailing dental practice. (Findings of Fact numbers 8-116)
4. Respondent is subject to a civil penalty under section 10.1 of the Dental Law, 63 P.S. § 129.1 and/or 63 P.S. § 3108(b)(4) Section 5(b)(4) for violating sections 4.1(a)(8) of the Dental Law. (Findings of Fact numbers 8-113)
5. Respondent is subject to the costs of investigation under 63 P.S. § 3108(b)(5) because Respondent she violated section 4.1(a)(8) of the Dental Law, 63 P.S. § 123.1(a)(8) by engaging in unprofessional conduct. (Finding of Fact number 8-114)



DOS Prothonotary
Jan 16 2024

**DISCUSSION**

The Commonwealth charged that Respondent is subject to disciplinary action under the Dental Law, Act of May 1, 1933, P.L. 216, No. 76 Cl. 63, *as amended*, 63 P.S. §§ 120 – 130*l*, and/or imposition of a civil penalty under section 10.1 of the Dental Law, 63 P.S. § 129.1 and 63 Pa.C.S. § 3108(b)(4) and/or imposition of the costs of investigation under 63 Pa.C.S. § 3108(b)(5) because Respondent violated section 4.1(a)(8) of the Dental Law, 63 P.S. § 123.1(a)(8) by engaging in unprofessional conduct.

Due process requires that "[p]arties whose rights are to be affected are entitled to be heard and, in order that they may enjoy that right, they must first be notified." *Celane v. Insurance Commissioner*, 415 A.2d 130, 132 (Pa. Cmwlth. 1980) (citation omitted). Service by mail is specifically authorized by the General Rules of Administrative Procedure, as set forth at 1 Pa. Code § 33.31. Notice should be reasonably calculated to inform a respondent of the pending action and to provide the information necessary to present objections. *Celane*, 415 A.2d at 132. Personal receipt is not required where notice has been mailed to the appropriate address. *Kobylski v. Commonwealth Milk Marketing Bd.*, 516 A.2d 75, 77 (Pa. Cmwlth. 1986).

The address that the Board has on file for Respondent is 810 Green Ridge Street, Scranton, PA 18509. On December 7, 2022, the Order to Show Cause was sent to, and later served on, Respondent by certified mail, return receipt requested and first-class mail, postage prepaid to 810 Green Ridge Street, Scranton, PA 18509. The Commonwealth prepared and served on Respondent an identity key which provided the name of each individual identified in the Order to Show Cause as a patient.

The Notice accompanying the Order to Show Cause directs Respondent to file a written answer within thirty (30) days of the date on the Order to Show Cause and sets forth the potential consequences for failure to timely file a written answer. Specifically, the factual allegations in the



DOS Prothonotary:
Jan 16 2024

Order to Show Cause may be deemed admitted and the Board will issue an Order which may impose penalties, as authorized by § 35.37 of the General Rules of Administrative Practice and Procedure, 1 Pa. Code § 35.37[5]. The Order to Show Cause also sets forth with particularity the steps necessary to request an administrative hearing.

After having received the Order to Show Cause, Respondent made a request on December 26, 2022 for an extension of time in which to respond to the Order to Show Cause. On January 10, 2023, Hearing Examiner Michael Foerster granted Respondent a 30-day extension of time in which to file an Answer, which was due on February 10, 2023.

On February 10, 2023, Reverend Juan-José: Brookins filed a Private Administrative Trustee Presentment of a Private Bill of Discovery in this matter. Reverend Brookins claimed to be a trust protector for the Restorative Health Ministries Trust and Ministerial Indigenous Nations Trust (MINT) in Mount Vernon, New York. Reverend Brookins claimed that Respondent was conducting research for the Trust. Rev. Brookins requested discovery of the basis for the Commonwealth's investigation to make sure that the Trust's proprietary property rights and privacy rights were not infringed upon. On February 21, 2023, the Commonwealth filed a Motion to Strike Rev. Brookins' Private Bill of Discovery. On March 9, 2023, Hearing Examiner Michael

---

[5] **§35.37. Answers to order to show cause.**

> A person upon whom an order to show cause has been served under § 35.14 (relating to orders to show cause) shall, if directed so to do, respond to the same by filing within the time specified in the order an answer in writing. The answer shall be drawn as specifically to admit or deny the allegations or charges which may be made in the order, set forth the facts upon which respondent relies and state concisely the matters of law relied upon. Mere general denials of the allegations of an order to show cause which general denials are unsupported by specific facts upon which respondent relies, will not be considered as complying with this section and may be deemed a basis for entry of a final order without hearing, unless otherwise required by statute, on the ground the response has raised no issues requiring a hearing or further proceedings. A respondent failing to file answer within the time allowed shall be deemed in default, and relevant facts stated in the order to show cause may be deemed admitted.

1 Pa. Code § 35.37



DOS Prothonotary:
Jan 16 2024

Foerster granted the Commonwealth's Motion to Strike Rev. Brookins' Private Bill of Discovery noting that the person at issue was Dr. Grube, not the Independent Review Board (IRB). It was also noted that Reverend Brookins was not an attorney. The hearing examiner ordered Respondent to file an Answer consistent with the administrative rules[6], under her signature or that of a licensed attorney, within 30 days.

On April 6, 2023, Respondent filed a Pre-Trial Discovery and Inspection Pursuant to 234 Pa. Code § 573(a) in which Respondent requested an explanation of the Bureau of Professional and Occupational Affairs' (BPOA) jurisdiction in this matter. Respondent claimed that she was involved in private intellectual property research for an Ecclesiastic Indigenous Trust entity that is protected under federally recognized Institutional Review Board (IRB). Title 234 of the Pennsylvania Code contains the Rules of Criminal Procedure. The pretrial discovery and inspection provisions of 234 Pa. Code § 573(a) fall under the Rules of Criminal Procedure. The instant matter, however, is a civil, administrative matter to which the Rules of Criminal Procedure are inapplicable.

On April 17, 2023, the Commonwealth filed a Motion to Deem Facts Admitted (MDFA) because Respondent did not file an Answer which conforms to the requirements of 1 Pa. Code § 35.37 within 30 days of the hearing examiner's order. On May 8, 2023, Respondent filed an Objection to Commonwealth's Motion to Deem Facts Admitted and Enter Default and continued to request an explanation of the BPOA's jurisdiction in this matter. Respondent claimed that she was conducting private intellectual property research at the direction of a private ecclesiastical indigenous Trust Consortium that is federally recognized by the Food and Drug Administration (FDA). On May 24, 2023, the Board issued an Order directing Respondent to file an Answer

---

[6] The hearing examiner's March 9, 2023 Order at footnote 5 provided Respondent with the language of 1 Pa. Code § 35.37 (relating to answers to orders to show cause).



DOS Prothonotary:
Jan 16 2024

which conforms to the requirements of 1 Pa. Code § 35.37 within 30 days. Respondent was to submit an Answer that addressed each specifically numbered allegation in the Commonwealth's Order to Show Cause. The May 24, 2023 Order also explained the Board's jurisdiction over licensees of the Board under the Dental Law, 63 P.S. 120-130i. Specifically, Respondent is a Pennsylvania licensed dentist and the allegations of the Order to Show Cause concerned her practice of dentistry in Pennsylvania.

On June 29, 2023, Respondent-in-Error's Answer to Pennsylvania State Board of Dentistry's Order to Show Cause was filed. On June 30, 2023, the Commonwealth filed a Second Motion to Deem Facts Admitted (Second MDFA) because Respondent did not file an Answer that conforms to the requirements of 1 Pa. Code § 35.37 within 30 days. Respondent-in-Error's Answer to Pennsylvania State Board of Dentistry's Order to Show Cause did not address the specifically numbered allegations in the Order to Show Cause. Consequently, on July 18, 2023, the Board issued an Order Granting Commonwealth's Second Motion to Deem Facts Admitted and Enter Default. On August 14, 2023, Respondent's Objection to State Board of Dentistry's Order Granting Motion to Deem Facts Admitted and Enter Default by Way of Plea in Abatement was filed. On October 19, 2023, the Board issued an Order Denying Respondent's Motion to Vacate the Order Granting Commonwealth's Second Motion to Deem Facts Admitted and Enter Default (MDFA).

The Board deems Respondent to have admitted the allegations in the seven-count Order to Show Cause. The Board is satisfied from this procedural history that Respondent has been afforded adequate notice of the charges and Respondent has been afforded an opportunity to answer the charges in writing and/or through an administrative hearing. Respondent did not avail herself of the opportunity to be heard regarding the charges such that the Board may now proceed



DOS Prothonotary:
Jan 16 2024

to enter a final order in this disciplinary proceeding without a hearing. *See Celane*, 415 A.2d 130.

Counts One through Seven of the Order to Show Cause charge that Respondent is authorized to suspend or revoke, or otherwise restrict Respondent's license under section 4.1(a)(8) of the Dental Law, 63 P.S. 123.1(a)(8), and/or impose a civil penalty under section 10.1 of the Dental Law, 63 P.S. § 129.1 and 63 Pa.C.S. § 3108(b)(4) and/or impose the costs of investigation under 63 Pa.C.S. § 3108(b)(5) because Respondent engaged in unprofessional conduct by failing to conform to the standard of acceptable and prevailing dental practice.

As established by the Findings of Fact, Respondent is a Pennsylvania-licensed dentist who entered into a dentist-patient relationship with forty-two (42) patients, identified as Patients 1-42. Respondent rendered dental services and/or treatment to these patients in the Commonwealth of Pennsylvania. Counts One through Five chronical Respondent's treatment of five specific patients (Patients 42, 41, 40, 28, and 20) who each presented with their own history of medical issues, including cancer, diabetes, Lyme disease, and abnormal EKG. Respondent performed a number of procedures on these patients with no clinical documentation justifying the need for the procedures. For Patients 42 and 41, Respondent removed porcelain fused to metal (PFM) crowns from their teeth and replaced them with non-metallic crowns. For Patients 42 and 41, Respondent extracted endodontically treated teeth. For Patients 41 and 40, Respondent removed dental amalgam with no radiologic evidence of tooth decay. For Patients 41, 40, and 28, Respondent administered local anesthesia at doses that exceeded the recommended dose for a single sitting, placing the patients at risk of venous stasis[7]. Patients 41, 40, and 28 were not adequately monitored while under sedation for continuous respiration and proper heart function (ECG or EKG).

For Patients 42, 41, 40, and 20, Respondent performed what she refers to as "Cavitation

[7] Venous statis is a chronic inflammatory skin disease caused by the pooling of blood in the legs due to poor blood circulation.



DOS Prothonotary:
Jan 16 2024

Surgery," which involves one or more of the following invasive or surgical procedures:

a. Elevation of a flap.

b. Penetration of cortical bone.

c. Removal of tissue that Respondent refers to as "pathological tissue."

Cavitation Surgery is not a procedure recognized or identified in the professions of dentistry or medicine by this specific terminology or by any other synonymous terms. Cavitation surgery is not of any therapeutic benefit for any condition or disease.

Concerning Patient 28, Respondent removed a four-unit bridge in the area of teeth # 2-5 without clinical justification. Removal of the four-unit bridge, as well as the cavitation procedures, exposed Patient 28 to the risks of bleeding, post-operative infection, and pain. With Patient 28's medical history of endocarditis, administration of additional antibiotic prophylaxis prior to treatment was required to mitigate the risk of recurrent endocarditis, in the absence of a cardiac consult stating that additional antibiotic prophylaxis was not required. Respondent failed to give Patient 28 additional antibiotic prophylaxis prior to treatment on May 24, 2017. Failure to give additional antibiotic prophylaxis prior to treatment put Patient 28 at risk of a life-threatening complication, recurrent endocarditis.

Patient 20 had a history of head and neck cancer. Patient 20 had received holistic cancer treatment with no chemotherapy or radiation. Respondent entered into a dentist-patient relationship with Patient 20 on April 26, 2017. Respondent extracted teeth # 2, 3, 14, 18, and 31. The extractions of teeth # 2, 3, 14, 18, and 31 were not clinically justified. Respondent removed crowns on Patient 20's teeth # 5 and 12. The removal of crowns on teeth # 5 and 12 were not clinically justified. Pus was drained from Patient 20's submandibular glands on May 8, 2017 and on May 10, 2017. Respondent administered intravenous Vitamin C to the patient. Vitamin C is



DOS Prothonotary:
Jan 16 2024

not FDA approved as a cancer therapy. Serious side effects from Vitamin C administration have been reported. The treatment Respondent rendered to Patient 20 was elective dental treatment. Patient 20 was not a candidate for elective dental treatment, given the state of his health. For all the above reasons, Counts One through Five of the Order to Show Cause are sustained.

Count Six alleges that Respondent engaged in unprofessional conduct by ordering unnecessary lab tests. For Patients 2, 3, 7, 19, 25, 28, 37, 40, and 41, Respondent ordered extensive blood-based laboratory testing. Respondent's ordering of blood-based laboratory testing was performed to diagnose and/or treat medical conditions or ailments. Respondent's ordering of blood-based laboratory testing is beyond the scope of dental practice in Pennsylvania. As a dentist, Respondent is not qualified to diagnose and/or treat medical conditions or ailments. Count Six, therefore, is sustained.

Count Seven alleges that Respondent engaged in unprofessional conduct by failing to make appropriate medical referrals. Respondent, albeit while acting outside of her scope of practice, noted abnormalities or concerns in the blood testing results for Patients 2, 3, 7, 19, 25, 28, 37, 40, and 41. Respondent did not refer these patients to medical professionals for medical diagnosis and/or treatment. The standard of care requires that Respondent refer Patients 2, 3, 7, 19, 25, 28, 37, 40, and 41 to medical professionals upon noting abnormalities in their blood testing results. Count Seven, therefore, is sustained.

The facts deemed admitted establish the violation and the Board must determine an appropriate sanction. The Board considers the seriousness of the offense and any mitigating evidence when determining a penalty. Respondent did not provide the Board with any mitigating evidence, despite having ample opportunity to do so. Section 4.1(a)(8) of the Dental Law, 63 P.S. § 4.1(a)(8), states that "unprofessional conduct" includes "any departure from, or failure to



DOS Prothonotary:
Jan 16 2024

conform to, the standards of acceptable and prevailing dental or dental hygiene practice… in which proceeding actual injury to the patient need not be established."

In the current matter, Respondent demonstrated a flagrant disregard for carrying out her responsibility to conform to the standards of acceptable and prevailing dental practice. Respondent performed dental procedures on several patients with no clinical documentation justifying the need for the procedures, including the removal of teeth, the removal of PFM crowns, and cavitation surgery. In the case of Patient 42, Respondent removed implants from teeth without clinical justification. During the removal of implants, Patient 42's mental nerve was damaged, resulting in paresthesia (numbness or tingling) of the lower left lip. If removal of implants had been clinically indicated, Patient 42 should have been referred to an oral and maxillofacial surgeon to perform the procedure in order to lessen the likelihood of an adverse outcome. In the absence of a referral to an oral and maxillofacial surgeon, the paresthesia suffered by Patient 42 is likely permanent.

Respondent administered local anesthesia to patients at doses that exceeded the recommended dose for a single sitting, placing the patients at risk of venous stasis. The patients were not adequately monitored while under sedation for continuous respiration and proper heart function (ECG or EKG), which placed their health at risk. In addition, Respondent ordered unnecessary lab tests and failed to make appropriate medical referrals. In the case of Patient 20, Respondent should have consulted with a physician prior to conducting dental treatment. Patient 20 had a history of head and neck cancer and had received holistic cancer treatment with no chemotherapy or radiation. Respondent extracted five teeth and two crowns from Patient 20 with no clinical justification. Pus was drained from Patient 20's submandibular glands on two occasions. Respondent administered intravenous Vitamin C, which is not an FDA approved cancer



DOS Prothonotary:
Jan 16 2024

therapy as serious side effects have been reported. Respondent's treatment of Patient 20 risked infection, bleeding, and tumor seeding/spreading. Given Patient 20's health, Respondent's treatment of Patient 20 also risked compromising Patient 20's remaining quality of life. Sadly, Patient 20 died on June 14, 2017.

Respondent, as a licensed dentist, was responsible for ensuring that she acted in a professional manner and met the standard of care for the provision of dental services to patients. Respondent's actions posed a significant risk to the health and safety of multiple patients. Therefore, to protect the public and discourage Respondent and others from falling below the standards of acceptable and prevailing dental practice, the Board indefinitely suspends for no less than three years Respondent's dental license and anesthesia permit- restricted I, levies a $10,500 civil penalty ($1,500 for each count of the OSC), and assesses $45,727.60 in the costs of investigation against Respondent. In addition, Respondent is required to complete a minimum of four (4) hours of remedial continuing education in each of the following areas of concern, as revealed by Respondent's conduct: anesthesia, dental ethics, diagnosis, and oral surgery.

Wherefore, the Board issues the following Order:



DOS Prothonotary:
Jan 16 2024

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**
**BEFORE THE STATE BOARD OF DENTISTRY**

| | | |
|---|---|---|
| **Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs** | : | |
| | : | **Case Nos. 18-46-02952** |
| **v.** | : | **18-46-012074** |
| | : | |
| **Blanche Durand Grube, D.M.D., Respondent** | : | |

**FINAL ORDER**

**AND NOW**, this 16th day of January, 2024, the State Board of Dentistry, having duly met and considered the entire record and based upon the foregoing Findings of Fact, Conclusions of Law and Discussion, hereby **INDEFINITELY SUSPENDS,** for a period of **NO LESS THAN THREE YEARS,** the dentist license and anesthesia permit- restricted I of Respondent, Blanche Durand Grube, D.M.D., license number DS023621L and permit number DP023621A, levies a **CIVIL PENALTY** in the amount of **TEN THOUSAND, FIVE HUNDRED DOLLARS ($10,500),** and assesses the **COSTS OF INVESTIGATION** in the amount of **FORTY-FIVE THOUSAND, SEVEN HUNDRED TWENTY-SEVEN DOLLARS AND SIXTY CENTS ($45,727.60)** on Respondent. Respondent must complete a minimum of four (4) hours of remedial continuing education in each of the following areas: anesthesia, dental ethics, diagnosis, and oral surgery

Respondent shall **IMMEDIATELY CEASE AND DESIST** from engaging in the practice of dentistry in Pennsylvania. Respondent shall surrender her dentist license (bearing issuance date of August 26, 1983) and current license documents to the Board.

Respondent shall pay the civil penalty and costs of investigation in the form of a certified



DOS Prothonotary:
Jan 16 2024

check, cashier's check, money order, or attorney's draft payable to "Commonwealth of Pennsylvania." The full amount of the civil penalty as well as the licensure documents, including dentist license, wall certificate, and wallet card, shall be delivered to:

Board Counsel
State Board of Dentistry
P.O. Box 69523
Harrisburg, PA 17106-9523

If Respondent fails to pay the civil penalty and costs of investigation, the Board will refer the matter to the Office of Attorney General for appropriate action. The Board will not reinstate Respondent's license if the civil penalty and costs of investigation have not been paid in full.

Respondent may petition the Board for reinstatement of his license to non-suspended, expired status. Along with the petition, Respondent shall submit a verification that she has paid the civil penalty and costs of investigation in full, completed a minimum of four (4) hours of continuing education in each subject of anesthesia, dental ethics, diagnosis, and oral surgery, and has not practiced in the Commonwealth of Pennsylvania in violation of this order. After the scheduling of a hearing pursuant to said petition, Respondent shall appear before the Board, or its designee, and establish her fitness to resume practice as a dentist.

This Order is effective immediately. The sanction imposed is effective February 15, 2024 (30 days after the mailing of this Order).

**BY ORDER:**

**BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS**

Arion R. Claggett

**ARION R. CLAGGETT**
**ACTING COMMISSIONER**

**STATE BOARD OF DENTISTRY**

**JENNIFER UNIS SULLIVAN, DMD, JD**
**CHAIRPERSON**



DOS Prothonotary:
Jan 16 2024

| | |
|---|---|
| Respondent:<br>Tracking # 9489 0090 0027 6582 3570 88 | Blanche Durand Grube, D.M.D.<br>810 Green Ridge Street<br>Scranton, PA 18509 |
| Commonwealth's Attorney: | Gregory S. Liero, Esquire |
| Board Counsel: | Ronald K. Rouse, Esquire |
| Date of Mailing: | January 16, 2024 |



DOS Prothonotary:
Jan 16 2024

# NOTICE

The attached Final Order represents the final agency decision in this matter. It may be appealed to the Commonwealth Court of Pennsylvania by the filing of a Petition for Review with that Court within 30 days after the entry of the order in accordance with the Pennsylvania Rules of Appellate Procedure. See Chapter 15 of the Pennsylvania Rules of Appellate Procedure entitled "Judicial Review of Governmental Determinations," Pa. R.A.P 1501 – 1561. Please note: An order is entered on the date it is mailed. If you take an appeal to the Commonwealth Court, you must serve the Board with a copy of your Petition for Review. The agency contact for receiving service of such an appeal is:

Board Counsel
P.O. Box 69523
Harrisburg, PA 17106-9523

The name of the individual Board Counsel is identified on the Final Order.

DOS Prothonotary:
Jan 16 2024

# EXHIBIT N

**Dr. Grube's Civil Penalty Letter**

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

**Ronald K. Rouse**
**Assistant Counsel**

**rorouse@pa.gov**
**Counsel Division**

February 16, 2024

***Via First-Class Mail***
Blanche Durand Grube, D.M.D
810 Green Ridge Street
Scranton, PA 18509

**In Re: <u>Civil Penalty and Costs of Investigation</u>**
**Case No. 18-46-02952 & 18-46-012074**

Dear Dr. Grube:

On January 16, 2024, the State Board of Dentistry issued a Final Adjudication and Order assessing a civil penalty and costs of investigation totaling $56,227.60. To date no payment has been received by this office.

Please remit the full amount of the penalty within 30 days of the date of this letter. Failure to pay within 30 days of the date of this letter will result in your file being turned over to the Attorney General's Office for collection.

Please note that the Board requires that the penalty be paid by **certified check, cashier's check, attorney's check or U.S. Postal money order**, payable to the "Commonwealth of Pennsylvania" and mailed to:

Board Counsel
State Board of Dentistry
P.O. Box 69523
Harrisburg, PA 17106-9523

If you have questions, please contact me at (717) 783-7200.

Sincerely,

Ronald K. Rouse, Counsel
State Board of Dentistry

RKR/twr

cc: James Abels, Board Administrator
State Board of Dentistry

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Blanche Durand Grube, D.M.D, and Reverend Juan-Jose`: Brookins,

Plaintiffs,

-against-

Commonwealth of Pennsylvania, Bureau of Professional and, Occupational Affairs; Al Schmidt, Acting Secretary of State; Ronald K. Rouse, D.M.D., J.D.; Jennifer Unis Sullivan, D.M.D., J.D.; Shawn Casey, D.M.D.; Christina Townley, State Board Administrator; Gregory S. Leiro, Esq.,

Defendants.

Civil Case No._________________

AFFIDAVIT OF
Dr. Blanche Durand Grube, D.M.D.
IN SUPPORT OF
COMPLAINT FOR JUDICIAL REVIEW UNDER 5 U.S.C. §§ 702 & 704 FOR RELIEF PENDING REVIEW AND DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §§ 2201 & 2202 AND F.R.C.P. RULE 57

**VERIFICATION**

Pennsylvania State }
}ss:
Lackawanna County }

I, Dr. Blanche Durand Grube, hereby make the following statement under penalty of perjury:

I, Blanche Durand Grube, am of the age of majority with full use of all my mental, physical, and emotional faculties. I have personal firsthand knowledge of the statements elucidated upon with specificity in the foregoing Complaint for Administrative Judicial Review and Declaratory Judgment. I unequivocally affirm that those statements are true, correct, and complete to the best of my knowledge and belief, so help me God.

Thus, Further Affiant Sayeth Not.

Respectfully submitted,

Blanche Durand Grube DMD

Blanche Durand Grube, D.M.D.

Notary Acknowledgement

On the 15th day of April 2024, before me, personally appeared Dr. Blanche Durand Grube, D.M.D., whose name is subscribed upon this instrument and has acknowledged to me that she will execute the same in her authorized capacity. I certify under PENALTY OF PERJURY under the laws of the United States that the foregoing paragraph is true and correct.

Rosalee Guerrero
Notary

My Commission Expires 03/22/2025

NOTARY PUBLIC STATE OF FLORIDA
ROSALEE GUERRERO
MY COMMISSION # HH 107301
EXPIRES: March 22, 2025

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Dr, Blanche Durand Grube, D.M.D, and
Reverend Juan-Jose`: Brookins,

Plaintiffs,

-against-

Commonwealth of Pennsylvania,
Bureau of Professional and,
Occupational Affairs; Al Schmidt, Acting
Secretary of State; Ronald K. Rouse, D.M.D.,
J.D.; Jennifer Unis Sullivan, D.M.D., J.D.;
Shawn Casey, D.M.D.; Christina Townley, State
Board Administrator; Gregory S. Leiro, Esq.,

Defendants.

Civil Case No.________________

AFFIDAVIT OF
Reverend Juan-Jose`: Brookins
IN SUPPORT OF
COMPLAINT FOR JUDICIAL REVIEW
UNDER 5 U.S.C. §§ 702 & 704 FOR RELIEF
PENDING REVIEW AND DECLARATORY
JUDGMENT PURSUANT TO 28 U.S.C. §§
2201 & 2202 AND F.R.C.P. RULE 57

**VERIFICATION**

Pennsylvania State }
}ss:
Philadelphia County }

I, Reverend Juan-Jose`: Brookins, hereby make the following statement under penalty of perjury:

I, Reverend Juan-Jose`: Brookins, am of the age of majority with full use of all my mental, physical, and emotional faculties. I have personal firsthand knowledge of the statements being made herein. I verifiably assert my right to address the equitable interests of the Intertribal Ecclesiastic Indigenous Trust Consortium that Dr. Grube has contracted with to perform private intellectual property research because I am an enrolled member of the Deep South Keetoowah Cherokee Tribe who holds the Office of Solicitor General and Tribal Court Judge. I am also a Commissioner of Tribal Comity Affairs and High Council Member of the International Indigenous Affairs (IIA) that is part and parcel of the League of Indian Nations of North America which is comprised within the Ecclesiastic Tribal Trust Consortium being adversely

impacted by the Defendant State Agency actors. (See Attached Copies of my Native Indigenous Accreditation Documents Certifying the proper legal status I have as an Indigenous American and the religious affiliation he holds as an Ordained Reverend).

I affirm that on several occasions over the course of several months that I served the Defendants with Notice that our Tribal Government has an equitable interest in the outcome of the adverse Agency action being taken against Dr. Grube who is one our plenipotentiary research Administrators in one of our satellite research facilities on the Northeast Coast. We have several of these facilities all over the United States and Canada and we are branching out as we seek to do God's Work in accordance with our cultural customs, traditions and religion. It is our resolute opinion and belief that the adverse Agency action that the Defendants have taken against one of our beloved spiritual research contractors has instigated an egregious chilling effect upon our whole intertribal community. Particularly when we have not been given any explanation of authority the Defendants are assuming to disrupt and discredit one of our most respected and professional plenipotentiary Administrators with an adverse Agency action that does not fall within the purview of the State's legislated statutes and codes and the misdirected outcome of the Agency's final judgment has an enormous effect on our divine mission to heal our collective community. It is for this reason that we co-sign with Dr. Grube this Declaratory Judgment Complaint for Agency Review with the hope and expectation that justice will prevail in light of the truth.

Thus, Further Affiant Sayeth Not.

Verily, I Am

Rev. Juan-Jose': Brookins

Reverend Juan-Jose`: Brookins

Notary Acknowledgement

On the 17th day of April 2024, before me, personally appeared Reverend Juan-Jose`: Brookins, whose name is subscribed upon this instrument and has acknowledged to me that he will execute the same in his authorized capacity. I certify under PENALTY OF PERJURY under the laws of the United States that the foregoing paragraph is true and correct.

Notary

My Commission Expires 8/31/21

MYLENA V. TEIXEIRA
My Commission Expires
NOTARY
PUBLIC
08-31-26
CONNECTICUT

# ATTACHMENT

FILED
2024 APR -5 A 11:51
CLERK, U.S. BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
FILINGS DROP BOX

# CORPORATE RESOLUTION OF THE INTERNATIONAL INDIGENOUS AFFAIRS HIGH COUNCIL ™

***WHEREAS***, the ***International Indigenous Affairs High Council*** (Hereinafter referred to as ***"the Council")*** is committed to the Inherent protection and Promotion of the Rights and Dignities of Indigenous Peoples Worldwide; including Tribal Elders, and Interprofessional Alliances, with Educational institutions;

***WHEREAS***, ***the Council*** recognizes the importance of International Legal Protection frameworks in safeguarding the status and rights of its Members and Instrumentalities; without Prejudice.

***WHEREAS***, ***Title 18, U.S.C., sec. 112***, provides for the protection of foreign officials, official guests, and internationally protected persons, which includes members of the Council; a Tribal Organization ®, upholding Full Legal Protections under the Laws of the United States of America, as a Tribal Constitutional Trust Organization ***113316970 Fed. Res. Rpt., CANADA NUANS ®.***

WHEREAS, the ***Universal Declaration of Human Rights (UDHR) sets forth fundamental human rights to be universally protected, and the Council endorses these rights for all its members under the status rights reserved; Title 34 U.S.C., Sec. 12291(a) at subsection (38).***

***WHEREAS***, the ***Montevideo Convention on the Rights and Duties of States*** outlines the rights and duties of statehood, and the Council seeks ***Mutual Recognition under this convention; Inclusivity of Federal Municipal Corporations, and Political subdivisions of the United States***; under New York State Laws, ***"Comity of Nations"*** doctrine ***permits recognition of foreign proceedings to the extent that such proceedings are determined to be orderly***, fair, and ***not detrimental to another nation's interests.***

***IN CONSIDERATIONS***, Unlike enforcement of arbitrary judgments and New Jersey Statute §40:42-1 defines a municipal corporation as a "'city', 'town', 'township', 'village', 'borough', and any municipality governed by a board of commissioners, or improvement commission."

In Re: New Jersey Statute §40:48-1 sets for the general powers possessed by municipal corporations.

**WHEREAS**, the Jay Treaty establishes principles of amity, commerce, and navigation, which the Council acknowledges and upholds for the benefit of its members;

**NOW, THEREFORE, BE IT RESOLVED**, that ***the International Indigenous Affairs High Council:***

1. Endorses the ***Title 18, U.S.C., sec. 112, Protected Persons status for all its High Council Members and Instrumentalities. UDHR, Permanent Indigenous peoples Rights Reserved; including Articles (2),et al.***

2. Affirms its commitment to the principles and rights set forth in the ***Universal Declaration of Human Rights and reserves these rights for all its members, Title 5 U.S.C. 1501(1) ; (III) & Article 4, Sec.4), rights to political sovereignty.***

3. Seeks international mutual recognition in accordance with the ***Montevideo Convention on the Rights and Duties of States.***

4. ***Upholds the principles of the Jay Treaty and commits to fostering relations of amity, commerce, and navigation in accordance with its provisions.***

***BE IT FURTHER RESOLVED***, that this Resolution shall be ***Communicated*** to relevant **parties** and ***International bodies*** to affirm the Council's position and Comity commitments, to Diversity and Inclusion into the ***United States Jurisprudence(s).***

ADOPTED this **20th** Day of March, **2024**, by **the Secretary of the International Indigenous Affairs High Council**.

) Title ***25 U.S.C.*** Ch.***(38)***, Subsections ***(3)(4)(7)***.

)Rev. Dr. J.J. Brookings, PhD., Attorney-In-Fact.

)

X Rev. Juan-José: Brookings

) All Rights Reserved without Prejudice.

) ***Commissioner of Tribal Affairs, at Large.***

) ***IIA Office of Juridical Comity of Nations***.

) ***Public Law 103-176***, Subsections (3) ***(1993)***.

IIA High Council
Tribal Council
113316970
2014 A.D.
Tribal Justice Official
CANADA

THEAR CHHUM REYES
Notary Public, State of Connecticut
My Commission Expires March 31, 2028

***UN DECLARATION OF HUMAN RIGHTS***

***ARTICLE 2***

***Everyone is entitled to all the rights and freedoms*** *set forth in this Declaration,* ***without distinction*** *of any kind, such as* ***race****, color, sex, language,* ***religion****,* ***political or other opinion****, national or social origin,* ***property****, birth* ***or other status****. Furthermore, no distinction shall be made on the* ***basis of the political, jurisdictional or international status of the country or territory to which a person belongs, whether it be independent, trust, non-self-governing or under any other limitation of sovereignty.***

— Enclosures and Affirmative Citations of Law: Most-Favored-Nation (MFN) clauses link investment agreements by ensuring that the parties to one treaty provide treatment no

less favorable than the treatment they provide under other treaties in areas covered by the clause C.U.S.A. Article 4, Sec.4., and Related Statutory Rights.

Source: Legal Citations and Points of Authority provided hereunder is not a substitute for legal advice,and shall be deemed Actual and Constructive Notice, and All Rights Reserved.

(1) ***Tribal Organization Corporate resolution***: tribal organization (38) Tribal organization The term "tribal organization" means— (A) ***the governing body of any Indian tribe***; (B) any legally established ***organization of Indians which is controlled, sanctioned, or chartered by such governing body of a tribe*** or tribes to be served, or which is democratically elected by the adult members of the Indian community to be served by such organization and which includes the maximum participation of Indians in all phases of its ***activities***; or (C) ***any tribal nonprofit***.

(2) In New York, the Civil Practice Law and Rules Article 54 covers the enforcement of judgments entitled to full faith and credit. This includes the following:

- Definition
- Filing and Status of Foreign Judgments
- Notice of Filing
- Stay
- Fees
- Optional Procedure
- Uniformity of Interpretation
- Citation

(3) Understanding Corporate Resolution: UpCounsel. https://www.upcounsel.com/

(4) The Full Faith and Credit clause is a requirement that state courts respect the laws and judgments of other states.

(5)It is derived from Article IV, Section 1 of the Constitution. The clause aims to prevent conflict between states and ensure the dependability of judgments across the country.

(6) ***18 U.S. Code § 112*** - Protection of foreign officials, official guests .... https://www.law.cornell.edu/uscode/text/18/112.

(7) ***18 USC 112***: Protection of foreign officials, official guests, and ....
https://uscode.house.gov/view.xhtml?req=Aliens+and+Nationality&f=treesort&num=309.

(8) ***Title 18*** - Crimes and Criminal Procedure - Justia Law.
https://law.justia.com/codes/us/2011/title-18/part-i/chapter-7/section-112/.

(9) ***18 USC 112*** **-** Protection of foreign officials, official guests, and ....
https://www.govregs.com/uscode/expand/title18_partI_chapter7_section112.

(10) **Jay Treaty** - Wikipedia. https://en.wikipedia.org/wiki/Jay_Treaty.

(11) ***Jay Treaty*** | History, Rights, & Facts | Britannica. https://www.britannica.com/event/Jay-Treaty.

(12) ***Jay Treaty***, Summary, Facts, Significance, APUSH - American History Central.
https://www.americanhistorycentral.com/entries/jay-treaty/.

(13) Jay's Treaty | The Canadian Encyclopedia.
https://www.thecanadianencyclopedia.ca/en/article/jays-treaty.

(14) ***Universal Declaration of Human Righ***ts | United Nations.
https://www.un.org/en/about-us/universal-declaration-of-human-rights.

(15) ***OHCHR | Universal Declaration of Human Rights - English***.
https://www.ohchr.org/en/human-rights/universal-declaration/translations/english.

(16) Universal Declaration of Human Rights - Wikipedia.
https://en.wikipedia.org/wiki/Universal_Declaration_of_Human_Rights.

(17) ***UN Human Rights Documentation - United Nations.***
https://research.un.org/en/docs/humanrights/undhr.

(18) ***Universal Declaration of Human Rights - Office of the United Nations*** ....
http://romena.ohchr.org/sites/default/files/2019-04/UDHR%202017%20text%20E%20P.PDF.

(19) Montevideo Convention - Wikipedia. https://en.wikipedia.org/wiki/Montevideo_Convention.

(20) ***Montevideo Convention on Rights and Duties of States*** | International ....
https://www.cambridge.org/highereducation/books/international-law-documents/F22E3069FFF343688B8A0D5755BC795A/montevideo-convention-on-rights-and-duties-of-states/7B2A2374C17D2ED5DC2ACF409704F308.

(21) ***Statehood in International Law***: The Montevideo Convention.
https://www.legalserviceindia.com/legal/article-12638-statehood-in-international-law-the-montevideo-convention-.html.

(22) ***Sovereignty and International Recognition***: Exploring the ... - Springer.
https://link.springer.com/chapter/10.1007/978-3-030-95342-3_1.

(23) undefined. https://doi.org/10.1017/9781316577226.005.

(24) undefined. https://doi.org/10.1017/9781316577226.

(25) Most-Favored-Nation (MFN) clauses link investment agreements by ensuring that the parties to one treaty provide treatment no less favorable than the treatment they provide under other treaties in areas covered by the clause.

(26) Title 5 U.S.C 1501 (1) & (III), Public Law, 112-230, Sec. 3(a) (2012).

# Memorandum

IIA HIGH COUNCIL SOVEREIGN Trust and Holdings, UIA. ®

COUNCIL SOVEREIGN Trust & Holdings, IIA HIGH ★
Co. Reg. No.
113316970

***Fiduciary Duties Committee Meeting Agenda***

1. **Unincorporated Associations**:

- ***An unincorporated association is a group of individuals who come together for a common purpose or goal.***

Unincorporated Associations lacks a separate legal existence apart from its members, affiliated organizations and other proprietary ***IIA HIGH COUNCIL SOVEREIGN Trust & Holdings services***.

- These affiliated organizations and associations are flexible and cost-effective to Manage, but they have drawbacks, including ***personal liability for members and governance challenges***.

- ***IIA HIGH COUNCIL SOVEREIGN TRUST & HOLDINGS, UIA***.®; Best Practice**: Consider incorporating to provide legal protection and establish clear governance structures[1].

While not mandatory for continuity, IIA Logo © and other proprietary intellectual property rights are Reserved under Copyright laws and the Berne Convention of 177 Countries.

***Membership Association Benefits***, and Immunities under UIA, Professional Associations and other collective interests in Membership integrity.

2. **Fiduciary Duties of Directors**:

- ***Directors*** of any organization, whether incorporated or ***unincorporated***, have fiduciary duties.

These include the ***duty of care, loyalty, acting in good faith, and disclosing relevant information.***

- When using AI tools for decision-making, directors must ensure compliance with their duties. ***Legal Requirements and other ethical implications, below mentioned.***

- **Best Practice**: Understand the outputs provided by AI tools and make informed decisions while considering governance and fiduciary committee responsibilities[12].

3. **AI-Assisted Decision Making by Directors**:

- The use of ***AI by directors*** is a growing trend. However, legal questions arise regarding whether AI can be appointed as a director.

- ***IIA HIGH COUNCIL*** ®; Best Practice: While there is no express law in Internet Law, specifically regulating ***AI use by directors, consider the impact on fiduciary duties and compliance with existing laws[1].***

4. IIA HIGH COUNCIL SOVEREIGN TRUST & HOLDINGS, UIA. ®; ***Global Internal Audit Standards:***

- ***The Institute of Internal Auditors (IIA) has released new Global Internal Audit Standards, effective from January 9, 2025.***

- These standards guide ***internal audit practices worldwide and emphasize principles for effective auditing.***

- **Best Practice**: Familiarize yourself with these standards to enhance ***autonomously dynamic governance and decision-making[4]***.

5. ***IIA HIGH COUNCIL SOVEREIGN TRUST & HOLDINGS, UIA.***©; ***By-Law Best Practices***:

- A well-drafted by-law or constitution facilitates governance within an organization.

- Define membership, decision-making processes, and Committee roles clearly.

- Committee Best Practice: ***IIA HIGH COUNCIL SOVEREIGN TRUST & HOLDINGS, UIA.*** ® ADOPTED OUR robust written constitution to avoid pitfalls associated with unincorporated associations[2].

Source: ***IIA HIGH COUNCIL SOVEREIGN TRUST & HOLDINGS, UIA.® Virtual Business Advisory, by Electronic Proxy protocols. All Rights Reserved without Prejudice.***

(1) Up the Creek Without a Paddle:

The Law Relating to Unincorporated ....
https://www.oba.org/Sections/Charity-and-Not-for-Profit-Law/Articles/Articles-2020/November-2020/Up-the-Creek-Without-a-Paddle-The-Law-Relating-to.

(2) Governance considerations for unincorporated associations that will pay ....
https://millerthomson.com/en/communiques/social-impact-newsletter/governance-considerations-for-unincorporated-associations-that-will-pay-off-in-the-long-run/.

(3) Global Internal Audit Standards - The Institute of Internal Auditors or ....
https://www.theiia.org/en/standards/2024-standards/global-internal-audit-standards/.

(4) 5 Best Practices for Equitable and Inclusive Data Collection.
https://www.schusterman.org/article/5-best-practices-for-equitable-and-inclusive-data-collection.

(5) Global Guidance - The Institute of Internal Auditors or The IIA.
https://www.theiia.org/en/standards/2024-standards/global-guidance/.

(6) Get to Know the New Global Internal Audit Standards.
https://www.theiia.org/en/learning/online/webinars/rapid-response-webinar/Webinar-playback/get-to-know-the-new-global-internal-audit-standards/.

(7) "The Fiduciary Duty Dilemma: Exploring the Legality of AI-Assisted ....
https://chambers.com/articles/the-fiduciary-duty-dilemma-exploring-the-legality-of-ai-assisted-decision-making-by-directors.

(8) AI Comes to the Board Room in a Black Box: Are the Personal Assets of ....
https://jolt.law.harvard.edu/digest/ai-comes-to-the-board-room-in-a-black-box.

(9) Could SEC's AI Rule "Weaken" Advisors' Fiduciary Duty? | Wealth Management.
https://www.wealthmanagement.com/regulation-compliance/sec-s-ai-rule-could-weaken-advisors-fiduciary-duty-iaa-attorney-argues.

IIA HIGH COUNCIL SOVEREIGN Trust & Holding's
Co. Reg. No.
113316970

*All Rights Reserved without Prejudice.*

IIA HIGH COUNCIL SOVEREIGN Trust & Holdings, ★

Co. Reg. No. 113316970

*All Rights Reserved without Prejudice.*

*The IIA HIGH COUNCIL SOVEREIGN TRUST & HOLDINGS, UIA.* ®, et al.

## *Unincorporated Association Trust Ratified Constitution*

1. Name of the Association:

- The name of the unincorporated association shall be ***IIA HIGH COUNCIL SOVEREIGN TRUST & HOLDINGS, UIA***, ® et al.

2. Mission Objectives of the Association**:

- The purposes of the association are as follows:

-The IIA HIGH COUNCIL SOVEREIGN TRUST & HOLDINGS, UIA. ©.; ***Tribal Business Charters and Professional Association's main purposes or objectives of the trust,*** shall be primarily managing assets, promoting equitable practices, ***Membership integrity*** and other statutory rights reserved under International Indigenous Affairs Association.

3. ** IIA HIGH COUNCIL SOVEREIGN TRUST & HOLDINGS, UIA. ® FIDUCIARY Duties**:

- ***The Trustee's Committee*** (members of the association) shall have the power to:

- Raise General Funds, Receive Grants, and Donations, Real Estate, and Contractual rights;

- Apply Donated, and Trust Enterprises funds to carry out the work of the association, under *Trust Management Fiscal Reports*.

Fiduciary responsibilities to the ***IIA HIGH COUNCIL SOVEREIGN TRUST & HOLDINGS, UIA.,*** et al.

- Cooperate with and support other affiliated organizations with similar charitable purposes.

- ***Take any lawful actions necessary to achieve the association's purposes.***

Under Parent ***IIA HIGH COUNCIL SOVEREIGN TRUST & HOLDINGS, UIA***.®, et al.

4. ***IIA HIGH COUNCIL SOVEREIGN TRUST & HOLDINGS, UIA.©*** ,Approved *Trustee's Committee*:

- ***The IIA HIGH COUNCIL SOVEREIGN TRUST & HOLDINGS, UIA***. ® Unincorporated association shall be managed by a ***Committee of Trustees***.

- The following ***Directors & Officers*** are required:

- ***Chairperson's Executive Committee***

- ***Secretaries of Regional Affiliates Entities***

- ***Treasurer of the IIA HIGH COUNCIL General Assembly, membership Dues, and Contributions.***

- ***Trustees must be members of the association or nominated representatives of member organizations.***

- ***No trustee may appoint someone to act on their behalf at trustee meetings or reports.***

- Disqualification and removal criteria for trustees should be defined, ***Letters of Term Resignation and Affidavit of Non-disclosure,*** under Penalty of Perjury, without the United State as Mandatory and Non-dischargeable.

5. IIA HIGH COUNCIL SOVEREIGN TRUST & HOLDINGS, UIA. Membership Eligibility:

- General Membership of the association shall be open to: Donors, Chartered Entities, and Individuals;

- Individuals over the age of 18 interested in furthering the ***IIA HIGH COUNCIL SOVEREIGN TRUST & HOLDINGS, UIA.*** and strategically allianced Affiliated ***association's perpetual mission objectives.***

- ***Statutory***, voluntary, community, or ***corporate bodies interested in furthering the association's work.***

- Each member shall have(1) One Vote, per ***General Assembly Committee*** Meeting Agenda Itemized Action Items, for **Committee Review**.

- The ***Executive Committee*** may terminate any ***Individual*** or *Affiliated Entities* membership for valid reasons, with the right to be heard before a final decision, via a Petition to Appeal Membership Termination, within (30) Thirty Business days of the proposed Termination.

All Membership Benefits are Revocable and subject to other terms and applicable, non-transferable conditions, not disclosed to the general public.

Source: ***IIA HIGH COUNCIL SOVEREIGN TRUST & HOLDINGS, UIA. Virtual Business Advisory, by Electronic Proxy protocols. All Rights Reserved.***

(1) Global Internal Audit Standards - The Institute of Internal Auditors or ....
https://www.theiia.org/en/standards/2024-standards/global-internal-audit-standards/.

(2) Get to Know the New Global Internal Audit Standards.
https://www.theiia.org/en/learning/online/webinars/rapid-response-webinar/Webinar-playback/get-to-know-the-new-global-internal-audit-standards/.

(3) Global Guidance - The Institute of Internal Auditors or The IIA.
https://www.theiia.org/en/standards/2024-standards/global-guidance/.

(4) Model constitution for small unincorporated associations.
https://eanifunding.org.uk/wp-content/uploads/2020/08/Charty-Commission-Model-constitution-for-small-unincorporated-associations.pdf

(5) Model Constitution Template: Unincorporated Community Group.
https://www.crawleycommunityaction.org/wp-content/uploads/2020/02/Model-Template-Unincorporated-Constitution.pdf.

(6) Charitable Associations: Model Constitution - GOV.UK.
https://assets.publishing.service.gov.uk/government/uploads/system/uploads/attachment_data/file/806434/GD3.pdf.

(7) Setting up a charity: model governing documents - GOV.UK.
https://www.gov.uk/government/publications/setting-up-a-charity-model-governing-documents.

IIA HIGH COUNCIL SOVEREIGN Trust & Holdings, ★
Co. Reg. No.
113316970

All Rights Reserved without Prejudice.

## COPYRIGHT 00088051-1

| | |
|---|---|
| First name | ***** |
| Last name | ***** |
| Pseudonym | The High Council IIA |
| City | ***** |
| Country | United States of America |

Manage services 14

Copyright number

00088051-1

**Received on**

2024-03-24 18:13:33

**Sole Author**

Yes

**Category**

Communication > Business communication

**Title**

IIA HIGH COUNCIL

**Description**

IIA HIGH COUNCIL SOVEREIGN Trust

Copyright valid in 177 countries of the Berne Convention

IRS DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI OH 45999-0023

Date of this notice: 03-29-2024

Employer Identification Number:
99-2223349

Form: SS-4

Number of this notice: CP 575 E

IIA HIGH COUNCIL SOVEREIGN TRUST &
HOLDINGS UIA
IIA HIGH COUNCIL
% OFFICE OF THE TRUSTEE
7901 4TH ST N STE 300
ST PETERSBURG, FL 33702

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN). We assigned you EIN 99-2223349. This EIN will identify your entity, accounts, tax returns, and documents, even if you have no employees. Please keep this notice in your permanent records.

Taxpayers request an EIN for business and tax purposes. Some taxpayers receive CP575 notices when another person has stolen their identity and are operating using their information. If you did **not** apply for this EIN, please contact us at the phone number or address listed on the top of this notice.

When filing tax documents, making payments, or replying to any related correspondence, it is very important that you use your EIN and complete name and address exactly as shown above. Any variation may cause a delay in processing, result in incorrect information in your account, or even cause you to be assigned more than one EIN. If the information is not correct as shown above, please make the correction using the attached tear-off stub and return it to us.

When you submitted your application for an EIN, you checked the box indicating you are a non-profit organization. Assigning an EIN does not grant tax-exempt status to non-profit organizations. Publication 557, Tax-Exempt Status for Your organization, has details on the application process, as well as information on returns you may need to file. To apply for recognition of tax-exempt status, organizations must complete an application on one of the following forms: Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code; Form 1023-EZ, Streamlined Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code; Form 1024, Application for Recognition Under Section 501(a); or Form 1024-A, Application for Recognition of Exemption Under Section 501(c)(4) of the Internal Revenue Code.

Nearly all organizations claiming tax-exempt status must file a Form 990-series annual information return (Form 990, 990-EZ, or 990-PF) or notice (Form 990-N) beginning with the year they legally form, even if they have not yet applied for or received recognition of tax-exempt status.

If you become tax-exempt, you will lose tax-exempt status if you fail to file a required return or notice for three consecutive years, unless a filing exception applies to you (search www.irs.gov for Annual Exempt Organization Return: Who Must File). We start calculating this three-year period from the tax year we assigned the EIN to you. If that first tax year isn't a full twelve months, you're still responsible for submitting a return for that year. If you didn't legally form in the same tax year in which you obtained your EIN, contact us at the phone number or address listed at the top of this letter. For the most current information on your filing requirements and other important information, visit www.irs.gov/charities.

(IRS USE ONLY) 575E 03-29-2024 IIAH O 9999999999 SS-4

**IMPORTANT REMINDERS:**

* Keep a copy of this notice in your permanent records. This notice is issued only one time and the IRS will not be able to generate a duplicate copy for you. You may give a copy of this document to anyone asking for proof of your EIN.

* Use this EIN and your name exactly as they appear at the top of this notice on all your federal tax forms.

* Refer to this EIN on your tax-related correspondence and documents.

* Provide future officers of your organization with a copy of this notice.

Your name control associated with this EIN is IIAH. You will need to provide this information along with your EIN, if you file your returns electronically.

Safeguard your EIN by referring to Publication 4557, Safeguarding Taxpayer Data: A Guide for Your Business.

You can get any of the forms or publications mentioned in this letter by visiting our website at www.irs.gov/forms-pubs or by calling 800-TAX-FORM (800-829-3676).

If you have questions about your EIN, you can contact us at the phone number or address listed at the top of this notice. If you write, please tear off the stub at the bottom of this notice and include it with your letter.

Thank you for your cooperation.

Keep this part for your records. CP 575 E (Rev. 7-2007)

---

Return this part with any correspondence so we may identify your account. Please correct any errors in your name or address.

CP 575 E

9999999999

Your Telephone Number ( ) - ____________ Best Time to Call ____________

DATE OF THIS NOTICE: 03-29-2024
EMPLOYER IDENTIFICATION NUMBER: 99-2223349
FORM: SS-4 NOBOD

INTERNAL REVENUE SERVICE
CINCINNATI OH 45999-0023

IIA HIGH COUNCIL SOVEREIGN TRUST &
HOLDINGS UIA
IIA HIGH COUNCIL
% OFFICE OF THE TRUSTEE
7901 4TH ST N STE 300
ST PETERSBURG, FL 33702

IRS DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI OH 45999-0023

Date of this notice: 03-20-2023

Employer Identification Number:
92-3019397

Form: SS-4

Number of this notice: CP 575 G

ATTORNEY-IN-FACT LAND TRUST &
EQUITY HOLDINGS LLC
AL MECCA A MUHAMMAD BEY SOLE MBR
7200 SOMERSET BLVD UNIT 982
PARAMOUNT, CA 90723

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN). We assigned you EIN 92-3019397. This EIN will identify you, your business accounts, tax returns, and documents, even if you have no employees. Please keep this notice in your permanent records.

Taxpayers request an EIN for their business. Some taxpayers receive CP575 notices when another person has stolen their identity and are opening a business using their information. If you did **not** apply for this EIN, please contact us at the phone number or address listed on the top of this notice.

When filing tax documents, making payments, or replying to any related correspondence, it is very important that you use your EIN and complete name and address exactly as shown above. Any variation may cause a delay in processing, result in incorrect information in your account, or even cause you to be assigned more than one EIN. If the information is not correct as shown above, please make the correction using the attached tear-off stub and return it to us.

A limited liability company (LLC) may file Form 8832, *Entity Classification Election*, and elect to be classified as an association taxable as a corporation. If the LLC is eligible to be treated as a corporation that meets certain tests and it will be electing S corporation status, it must timely file Form 2553, *Election by a Small Business Corporation*. The LLC will be treated as a corporation as of the effective date of the S corporation election and does not need to file Form 8832.

To obtain tax forms and publications, including those referenced in this notice, visit our Web site at www.irs.gov. If you do not have access to the Internet, call 1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

(IRS USE ONLY) 575G 03-20-2023 ATTO O 9999999999 SS-4

**IMPORTANT REMINDERS:**

* Keep a copy of this notice in your permanent records. This notice is issued only one time and the IRS will not be able to generate a duplicate copy for you. You may give a copy of this document to anyone asking for proof of your EIN.

* Use this EIN and your name exactly as they appear at the top of this notice on all your federal tax forms.

* Refer to this EIN on your tax-related correspondence and documents.

* Provide future officers of your organization with a copy of this notice.

Your name control associated with this EIN is ATTO. You will need to provide this information along with your EIN, if you file your returns electronically.

Safeguard your EIN by referring to Publication 4557, Safeguarding Taxpayer Data: A Guide for Your Business.

You can get any of the forms or publications mentioned in this letter by visiting our website at www.irs.gov/forms-pubs or by calling 800-TAX-FORM (800-829-3676).

If you have questions about your EIN, you can contact us at the phone number or address listed at the top of this notice. If you write, please tear off the stub at the bottom of this notice and include it with your letter.

Thank you for your cooperation.

Keep this part for your records. CP 575 G (Rev. 7-2007)

---

Return this part with any correspondence so we may identify your account. Please correct any errors in your name or address.

CP 575 G

9999999999

Your Telephone Number ( ) - ______

Best Time to Call ______

DATE OF THIS NOTICE: 03-20-2023
EMPLOYER IDENTIFICATION NUMBER: 92-3019397
FORM: SS-4 NOBOD

INTERNAL REVENUE SERVICE
CINCINNATI OH 45999-0023

ATTORNEY-IN-FACT LAND TRUST &
EQUITY HOLDINGS LLC
AL MECCA A MUHAMMAD BEY SOLE MBR
7200 SOMERSET BLVD UNIT 982
PARAMOUNT, CA 90723

IRS DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI OH 45999-0023

Date of this notice: 03-20-2023

Employer Identification Number:
92-3019397

Form: SS-4

Number of this notice: CP 575 G

ATTORNEY-IN-FACT LAND TRUST &
EQUITY HOLDINGS LLC
AL MECCA A MUHAMMAD BEY SOLE MBR
7200 SOMERSET BLVD UNIT 982
PARAMOUNT, CA 90723

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN). We assigned you EIN 92-3019397. This EIN will identify you, your business accounts, tax returns, and documents, even if you have no employees. Please keep this notice in your permanent records.

Taxpayers request an EIN for their business. Some taxpayers receive CP575 notices when another person has stolen their identity and are opening a business using their information. If you did **not** apply for this EIN, please contact us at the phone number or address listed on the top of this notice.

When filing tax documents, making payments, or replying to any related correspondence, it is very important that you use your EIN and complete name and address exactly as shown above. Any variation may cause a delay in processing, result in incorrect information in your account, or even cause you to be assigned more than one EIN. If the information is not correct as shown above, please make the correction using the attached tear-off stub and return it to us.

A limited liability company (LLC) may file Form 8832, *Entity Classification Election*, and elect to be classified as an association taxable as a corporation. If the LLC is eligible to be treated as a corporation that meets certain tests and it will be electing S corporation status, it must timely file Form 2553, *Election by a Small Business Corporation*. The LLC will be treated as a corporation as of the effective date of the S corporation election and does not need to file Form 8832.

To obtain tax forms and publications, including those referenced in this notice, visit our Web site at www.irs.gov. If you do not have access to the Internet, call 1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

(IRS USE ONLY) 575G 03-20-2023 ATTO O 9999999999 SS-4

**IMPORTANT REMINDERS:**

* Keep a copy of this notice in your permanent records. This notice is issued only one time and the IRS will not be able to generate a duplicate copy for you. You may give a copy of this document to anyone asking for proof of your EIN.

* Use this EIN and your name exactly as they appear at the top of this notice on all your federal tax forms.

* Refer to this EIN on your tax-related correspondence and documents.

* Provide future officers of your organization with a copy of this notice.

Your name control associated with this EIN is ATTO. You will need to provide this information along with your EIN, if you file your returns electronically.

Safeguard your EIN by referring to Publication 4557, Safeguarding Taxpayer Data: A Guide for Your Business.

You can get any of the forms or publications mentioned in this letter by visiting our website at www.irs.gov/forms-pubs or by calling 800-TAX-FORM (800-829-3676).

If you have questions about your EIN, you can contact us at the phone number or address listed at the top of this notice. If you write, please tear off the stub at the bottom of this notice and include it with your letter.

Thank you for your cooperation.

Keep this part for your records. CP 575 G (Rev. 7-2007)

---

Return this part with any correspondence so we may identify your account. Please correct any errors in your name or address.

CP 575 G

9999999999

Your Telephone Number ( ) -

Best Time to Call

DATE OF THIS NOTICE: 03-20-2023
EMPLOYER IDENTIFICATION NUMBER: 92-3019397
FORM: SS-4 NOBOD

INTERNAL REVENUE SERVICE
CINCINNATI OH 45999-0023

ATTORNEY-IN-FACT LAND TRUST &
EQUITY HOLDINGS LLC
AL MECCA A MUHAMMAD BEY SOLE MBR
7200 SOMERSET BLVD UNIT 982
PARAMOUNT, CA 90723

The Alliance of Divine Love

# Certificate of Ordination

## Juan Jose` Brookins

The Alliance of Divine Love approves and acknowledges that the above named student has been chosen by The Creator to enter Divine Service as a Minister. Thus, through faith and benevolence, Love shall be carried to All through teaching, counseling, healing and giving comfort.

Issued by the Board of Trustees of The Alliance of Divine Love this Twentieth day of April, 2021 CE.



Alliance of Divine Love

Dr. Barbara S. Selwa

Dr. Barbara Selwa

The Alliance of Divine Love

# Certificate of Charter

## Juan Jose` Brookins

The Alliance of Divine Love hereby grants Charter to the Chapel herein affixed.

We affirm that the purpose of this Church shall be giving, receiving and expanding Divine Love. Its aim shall be the promotion of Peace and the bringing of Hope and Joy. As light dispels darkness, so shall Divine Love shine forth from this Church to dispel doubt and its likeness.

Alliance of Divine Love, Chapel 2159 is hereby granted this Twentieth day of April, 2021 CE.



ADL
Alliance of Divine Love

Dr. Barbara S. Selwa

Dr. Barbara Selwa

LEAGUE OF INDIAN NATION OF NORTH AMERICA
LIGUE DES NATIONS INDIENNE DE L'AMERIQUE DU NORD
GOVERNMENT OFFICE - NORTH BAY, ONTARIO - CANADA

INTERNATIONAL PARLIAMENT

July 23, 2015

International Indigenous Affairs High Council

Please accept this letter of acknowledgment that INTERNATIONAL INDIGENOUS AFFAIRS HIGH COUNCIL has joined forces with the League of Indian Nations of North America.

We have established great working relationships with chief and council has granted partnership to work in harmony with all Nations of North America. (CBCA)-Form 1, Articles of Incorporation (Section 8) 28-10-2014.

The achievements of LINNA respective development objective depends on pragmatic measures and partnerships founded in respect of our inherent rights, as well as our equal right as people to self-determination in our traditional territories.

Both parties will share office space at 1399 Hammond St., North Bay, ON., P1B 2J2.

Respectfully,

Most Honorable Grand Chief
Dr. Patrick Sarrazin

**PARTIES TO BE SERVED**

1. Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs
   2525 N. 7th Street
   Harrisburg, PA 17110

2. Al Schmidt
   Acting Secretary of State
   302 North Office Building
   401 North Street, Harrisburg, PA 17120

3. Arion R. Claggett
   Acting Commissioner
   102 Bamboo Way, Middletown, PA 17057

4. Ronald K. Rouse, D.M.D., J.D.,
   948 East Ellet Street
   Philadelphia, PA 19150

5. Jennifer Unis Sullivan, D.M.D., J.D,
   2072 Brodhead Road
   Aliquippa, PA 15001

6. Shawn Casey, D.M.D.
   1073 Pittston
   PA 18640

7. Christina Townley
   State Board Administrator
   2971 N. 7th Street
   Harrisburg, PA 11710

8. Gregory S. Leiro, Esq,
   Trial Deputy Prosecutor Pennsylvania Department of State
   2601 N. 3rd Street, Harrisburg, PA 17105

Received – USCFC
APR 2 4 2024

**PARTIES TO BE SERVED**

1. Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs
   2525 N. 7th Street
   Harrisburg, PA 17110

2. Al Schmidt
   Acting Secretary of State
   302 North Office Building
   401 North Street, Harrisburg, PA 17120

3. Arion R. Claggett
   Acting Commissioner
   102 Bamboo Way, Middletown, PA 17057

4. Ronald K. Rouse, D.M.D., J.D.,
   948 East Ellet Street
   Philadelphia, PA 19150

5. Jennifer Unis Sullivan, D.M.D., J.D,
   2072 Brodhead Road
   Aliquippa, PA 15001

6. Shawn Casey, D.M.D.
   1073 Pittston
   PA 18640

7. Christina Townley
   State Board Administrator
   2971 N. 7th Street
   Harrisburg, PA 11710

8. Gregory S. Leiro, Esq,
   Trial Deputy Prosecutor Pennsylvania Department of State
   2601 N. 3rd Street, Harrisburg, PA 17105